Morris E. Cohen
Law Office of Morris E. Cohen, P.C.
One Penn Plaza, Suite 2527
New York, New York 10119
212-244-4111 x226 (phone)
212-563-7108 (fax)
mcohen@ipcases.com (email)

Joe D. Guerriero (Bar No. 06391)
Luv n' care, Ltd.
3030 Aurora Avenue
Monroe, Louisiana 71201
318-338-3603 (phone)
318-388-5892 (fax)
joed@luvncare.com (email)
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LUV N' CARE, LTD. and ADMAR INTERNATIONAL, INC. | CIVIL ACTION NO. |
| Plaintiffs, | |
| v. | |
| ROYAL KING BABY PRODUCT CO. LTD. | JURY TRIAL DEMANDED |
| Defendant. | |

## **COMPLAINT**

Plaintiffs Luv n' care, Ltd. and Admar International, Inc. (hereinafter "Plaintiffs") by their

attorneys, hereby complain of Defendant Royal King Baby Product Co. Ltd. ("Defendant" or "RK")

as follows:

-1-

## JURISDICTION AND VENUE

1.      This is an action for federal unfair competition, trademark infringement, trademark dilution, and misrepresentation under Section 43 of the Lanham Act, 15 U.S.C. §1125; and for unfair competition, deceptive and unfair business practices, and tortious interference with existing and prospective contractual and business relations under the common law and the law of the State of Texas.  This Court has jurisdiction over the federal claims of this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1338, and 15 U.S.C. 1121, and has jurisdiction over the state claims pursuant to its supplemental jurisdiction under 28 U.S.C. §1367.

2.      This action arises from Defendant's manufacture, offer for sale, sale, and distribution of products which are deceptive copies of Plaintiffs' product designs, product packaging, and trademarks, and from Defendant's misrepresentations, false claims, unfair and deceptive business practices, and its tortious interference with Plaintiff's existing and prospective contractual and business relations.

3.      This Court has personal jurisdiction over Defendant since Defendant has engaged in acts constituting doing business in this State, and has intentionally directed its tortious activities toward Texas.  Defendant has delivered its infringing products into the stream of commerce with the expectation that they will be purchased by consumers in this State.  Defendant has also attended the Juvenile Products Manufacturers Association (JPMA) trade show in Dallas, Texas, and repeatedly offered for sale and sold products at that trade show, including, upon information and belief, products which are the subject of the present suit.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) - (c) and 28 U.S.C. §1400(a).

## THE PARTIES

5.    Plaintiff Luv n' care, Ltd. ("Luv n' care" or "LNC") is a corporation of the State of Louisiana having a principal place of business at 3030 Aurora Avenue, Monroe, Louisiana 71201.

6.    Plaintiff Admar International, Inc. ("Admar") is a corporation of the State of Delaware having a principal place of business at 3030 Aurora Avenue, Monroe, Louisiana 71201. Admar is an affiliate of Luv n' care.

7.    Defendant Royal King Baby Product Co. Ltd. ("RK") is a corporation of Thailand having a principal place of business at No.933, 11th Floor, Ruam Danu Thai Building, Mahachai Road, Wangburaphapirom, Pranakorn, Bangkok - 10200, Thailand.

## FACTS

### THE NUBY® TRADEMARK AND ASSOCIATED INTELLECTUAL PROPERTY

8.    Plaintiff Luv n' care is one of the leading baby product companies in the world today.  It is internationally known for its designs of popular products for babies and young children.

9.    Luv n' care's products are sold throughout the United States and worldwide.  It enjoys a widespread reputation throughout the United States and foreign countries for the products it has designed, introduced, and popularized in interstate and international commerce.

10.    On March 28, 2000, United States Trademark Registration No. 2,335,700 for the trademark NUBY® was duly and lawfully issued by the United States Patent and Trademark Office ("the '700 registration").  A copy of the '700 registration for the NUBY® trademark is attached as Exhibit G hereto.

11.   The '700 registration remains in fully good standing and effect, with a Statement of Use under Section 8 and a Declaration of Incontestability under Section 15 having been timely filed with the U.S. Patent and Trademark Office.  Admar's filing was found to meet the requirements of Section 8 of the Trademark Act, 15 U.S.C. Sec. 1058, and to meet the requirements of Section 15 of the Trademark Act, 15 U.S.C. Sec. 1065.  A copy of the Notices of Acceptance and Acknowledgement from the U.S. Patent and Trademark Office are attached as Exhibit G hereto.

12.   Admar is the owner of the '700 registration, with the lawful right to institute suit based thereon.  Luv n' care sells goods under the NUBY mark throughout the United States under exclusive rights from Admar.

13.   Plaintiffs' NUBY mark is a distinctive symbol which serves as a trademark of Luv n' care's products in interstate commerce.

14.   As a result of their use in interstate commerce, Plaintiffs have also generated and accrued common law rights in the NUBY trademark.

15.   Plaintiffs have used the NUBY trademark on a wide variety of children's and infants' products sold in interstate commerce, including, but not limited to, infant pacifiers, baby bottles, children's no-spill drinking cups, and so forth.

16.   Since commencing use of the NUBY trademark, Plaintiffs have generated hundreds of millions of dollars in revenue from the sale of goods under their NUBY mark.

17.   Significant time, funds, and effort were also expended in designing and developing esthetically appealing and attractive product designs and packaging for Plaintiffs' NUBY brand goods.

18.    Significant sums of money, time, and effort were expended in promoting and popularizing Plaintiffs' NUBY brand goods.

19.    As a result of Plaintiffs' design efforts and promotional activities, Plaintiffs' products, packaging, and trademarks have all become widely known throughout the United States and worldwide, and associated with Plaintiffs. Plaintiffs' products are among the most popular and well known products in their industry, and their line of products is famous throughout the country and the world.

20.    The appearance of Plaintiffs' products, packaging and trademarks are distinctive symbols which serve as trademarks of Luv n' care's products in interstate commerce, both in the United States and worldwide.

21.    The NUBY mark, the appearance of Luv n' care's associated products, and their associated packaging have all become very well known, have accrued secondary meaning, and are recognized as identifying Plaintiffs' high-quality products and services.

22.    The NUBY mark, products, packaging, and their associated goodwill, are all valuable assets of Plaintiffs.

## DEFENDANT'S ILLEGAL ACTIVITIES

23.    Defendant is a company located in Thailand which has engaged in regular and repeated copying and piracy of intellectual property.

24.    Defendant has taken the products, packaging, and trademarks of Plaintiffs, copied and imitated them without authorization, and then offered for sale, sold, and distributed those false, unauthorized, copies throughout the United States.

25.   Defendant's bad faith activities have caused deception in the marketplace and extensive damage to Luv n' care, its business and its reputation.

26.   Defendant has adopted trademarks that confusingly imitate Luv n' care's trademarks, and has adopted product designs and packaging that confusingly imitate the appearance of the products and packaging of Luv n'care.

27.   Defendant has further interfered with Plaintiffs' business and contractual relations, spread false claims regarding Plaintiffs throughout the industry, and spread false claims regarding the origin of its own products.

**DEFENDANT'S INFRINGEMENT
OF PLAINTIFFS' PRODUCT DESIGNS,
PACKAGING AND TRADEMARKS**

28.   Illustrations of Defendant's unlawful acts are attached as Exhibits A-F hereto.  The original LNC product and packaging are shown on the right and Defendant's copies are shown on the left.

29.   As an example, attached as Exhibit A are images of a Luv n' care product, namely, an original LNC no-spill drinking cup product and packaging, next to images of Defendant's illegal copy thereof.

30.   As shown therein, Defendant has illegally copied the appearance of Luv n' care's product.

31.   Defendant has also illegally copied the appearance of Luv n' care's packaging.

32.   Defendant has also copied the configuration of circular iconic symbols ("icons") around the rim of Luv n' care's product.

33.  The icons are circular symbols developed by Plaintiffs to serve as trademarks of Luv n' care's products in interstate commerce, and which are placed in a distinctive configuration around the rim of Luv n' care's cup.

34.  Defendant's acts of copying are all meant to deceptively imitate Luv n' care intellectual property and to confuse the public.

35.  As a further example, attached as Exhibit B are images of a further Luv n' care product, namely, another no-spill drinking product of Luv n' care, next to images of Defendant's illegal copy thereof.

36.  As shown therein, Defendant has deceptively imitated Luv n' care's product and packaging.

37.  As yet a further example, attached as Exhibit C is an image of a further Luv n' care product, namely, another no-spill drinking product of Luv n' care, next to an image of Defendant's illegal copy thereof.

38.  As shown therein, Defendant has deceptively imitated Luv n' care's product.

39.  As yet a further example, attached as Exhibit D is an image of a further Luv n' care product, Luv n' care's no-spill drinking product with the "flip-it cover", next to an image of Defendant's illegal copy thereof.

40.  As shown therein, Defendant has deceptively imitated Luv n' care's product.

41.  As yet a further example, attached as Exhibit E are images of a further Luv n' care product, its comb and brush set, next to images of Defendant's illegal copies thereof.

42.  As shown therein, Defendant has deceptively imitated Luv n' care's product.

43.  As yet a further example, attached as Exhibit F are images of a further Luv n' care product, its oscillating pacifier, next to images of Defendant's illegal copy thereof.

44.  As shown therein, Defendant has deceptively imitated Luv n' care's product.

45.  In addition, as set forth above, Plaintiffs own the rights to the trademark NUBY® for childrens' products throughout the United States.

46.  To further confuse the public, Defendant has also manufactured, sold, and exported goods to the United States under the name NOVI for childrens' products.

47.  NOVI is a deceptive imitation of Plaintiffs' NUBY® trademark.

48.  The NOVI trademark is designed to be confused with the NUBY trademark.

49.  Defendant adopted a mark closely related to Plaintiffs' trademark and applied it to the same goods, so that confusion would occur between those marks and goods.

50.  Examples of Defendant's infringing mark and goods, followed by the original Luv n' care goods that Defendant copied, are shown in Exhibits I through N hereto.

51.  Defendant's infringing NOVI mark so resembles Plaintiffs' mark previously registered in the Office and used by Plaintiffs throughout the United States, as to be likely to cause confusion, and to cause mistake, and to deceive, when used on or in connection with the Defendant's goods.  Defendants mark is deliberately designed to cause confusion among consumers.

52.  The appearance of Defendant's products and line is likewise designed to imitate the overall appearance of Plaintiff's products and line, to yet further confuse and mislead the public.

53.  The trade and purchasing public are likely to be misled into believing that goods marketed and sold by Defendants originate with or are otherwise authorized by, sponsored by, licensed by, or associated with Plaintiffs.

54.  Defendant is intentionally using Plaintiffs' marks, product designs and packaging to trade off of Plaintiffs' reputation and goodwill and to create deception in the marketplace.

-8-

55.   Defendants' actions also dilute and tarnishes the distinctive quality of Plaintiffs' famous product designs, packaging and marks.

56.   Furthermore, serious safety issues regarding Defendant's products are likely to cause, and have caused, the public alarm over Plaintiff's products, due to confusion between Plaintiffs' products and Defendant's infringing copies.

57.   For example, ABC News recently displayed tests of Defendant's products on national television as part of an investigation on the safety of children's products.

58.   A copy of an article from ABC News referring to the investigation is annexed as Exhibit O hereto.

59.   In its investigation, ABC News had Defendant's sports sipper products analyzed by an independent outside laboratory.

60.   Those tests indicated that Defendant's sports sipper products have <u>lead</u> in them.

61.   Those lead-containing products are provided for use by <u>babies</u>.

62.   Those lead-containing products are highly similar in appearance and packaging to <u>Luv n' care's</u> products.  In fact, as shown in Exhibit A, those products are <u>copies</u> of Plaintiffs' products.

63.   Defendant has even admitted to members of the industry that its products are similar to Plaintiff's products.

64.   The public is highly concerned and alarmed by the presence of lead in products provided for babies.

65.   Because of the similarity between Defendant's confusingly similar copies and Plaintiff's original products, Plaintiffs' reputation is likely to be injured, and has been injured.

66.     By selling false unauthorized, lead-containing, copies of Plaintiffs' products, Defendant has caused, is causing, and is likely to further cause, irreparable damage to Plaintiff's business and reputation.

## DEFENDANT'S FALSE CLAIMS
## REGARDING PLAINTIFFS' PRODUCTS

67.     Defendant has further damaged Luv n' care's reputation by making false claims regarding the safety of Luv n' care products.

68.     Defendant has represented that Luv n' care's sippy cups were recalled in July 2007 due to a choking hazard.

69.     Those claims are completely false.

70.     Those claims were made to damage Luv n' care's reputation and to divert business and contracts from Luv n' care to Defendant.

## DEFENDANT'S FALSE CLAIMS
## REGARDING THE ORIGIN OF ITS PRODUCTS

71.     Defendant has also misled the industry regarding the origin of the designs for its products.

72.     Defendant has misled members of the children's products industry into believing that Defendant owned the rights to product designs which were actually designed by Luv n' care.

73.     Exhibit D shows a unique cap design for a flip-it cap for a drinking cup.  As shown on the right side, that cap was designed by Luv n' care.

74.     At no time did Luv n' care authorize or permit Defendant to use Luv n' care's original design.

75.     As shown on the left side of Exhibit D, Defendant's product, and the cap thereof, is a confusingly similar copy of Luv n' care's product and cap.

76.     In discussions with the children's product company Insta-mix, Inc. and its affiliates ("Insta-mix") Defendant misled Insta-mix into believing that Defendant designed and owned the rights to that cap.

77.     Defendant full well knew that the cap was designed by Luv n' care, and in fact, that it copied Luv n'care's cap.

78.     Defendant did not inform Insta-mix that the cap was a Luv n' care design, and sold Insta-mix that cap under the pretense that Defendant owned the rights to it.

### DEFENDANT'S REPEATED AND<br>CONSISTENT PATTERN OF BAD FAITH CONDUCT

79.     As shown in Exhibits A-O, Defendant's products, packaging, and trademarks have been repeatedly designed to resemble those of Plaintiffs, to cause confusion, mistake, and deception in the marketplace.

80.     Both the copying of Plaintiff's individual products and packaging, and the copying of the overall appearance of Plaintiff's line of products, has been calculated to illegally trade off of Plaintiff's reputation and good will.

81.     Defendant's activities mislead the trade and purchasing public into believing that goods marketed and sold by Defendant originate with or are otherwise authorized by, sponsored by, licensed by, or associated with Plaintiffs.

82.     They also dilute and tarnish the distinctive quality of Plaintiffs' famous products and packaging.

83.     Defendant's false claims and misrepresentations have been yet further calculated to harm Plaintiffs.

84.    Defendant's activities have been deliberate, willful, and malicious.

85.    They have caused and are causing irreparable damage to Plaintiffs, their business, and their reputation.

86.    Plaintiffs have been extensively damaged by Defendant's malicious, bad faith activities and will continue to be so damaged unless Defendant is restrained and restrained and enjoined by this Court.

**FIRST CAUSE OF ACTION:**
**FEDERAL TRADEMARK INFRINGEMENT**
**AND UNFAIR COMPETITION IN VIOLATION OF**
**SECTION 43(A) OF THE LANHAM ACT**

87.    Plaintiff Luv n' care repeats and reallege each and every allegation contained in paragraphs 1 through 86 as if fully set forth herein.

88.    By manufacturing, selling, offering for sale, distributing, and exporting merchandise to the United States which confusingly imitates and copies Plaintiffs' NUBY® trademark, Plaintiff's product designs, and Plaintiff's packaging, Defendant's actions constitute trademark infringement, unfair competition, false designation of origin, and false description and representations, in violation of the Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

89.    Plaintiff Luv n' care has no adequate remedy at law.  As a result of the aforesaid acts of Defendant, Plaintiff is suffering irreparable harm, and will continue to do so, unless Defendant are restrained and enjoined by this Court from continuing to commit the aforesaid acts.

90.    Defendant's acts of infringement were and are willful and deliberate.

91.    Defendant has profited from its infringing activities.

-12-

92.     Plaintiff has suffered, and continues to suffer, substantial damages as a result of Defendant's

bad faith activities, in an amount not yet ascertained.

## SECOND CAUSE OF ACTION:
## MISREPRESENTATION IN VIOLATION OF
## SECTION 43(A) OF THE LANHAM ACT

93.     Plaintiff Luv n' care repeats and reallege each and every allegation contained in  paragraphs

1 through 92 as if fully set forth herein.

94.     Defendant has engaged in false descriptions and representations regarding its products.

95.     Defendant has further engaged in false descriptions and representations regarding Plaintiffs'

products.

96.     In connection with their goods, Defendant has used false or misleading description of fact,

or false or misleading representation of fact, in commerce, which, in commercial advertising

or promotion, has misrepresented the nature, characteristics, and qualities of their goods and

services, and commercial activities.

97.     In connection with Plaintiffs' goods, Defendant has used false or misleading description of

fact, or false or misleading representation of fact, in commerce, which, in commercial

advertising or promotion, has misrepresented the nature, characteristics, and qualities of

Plaintiffs' person's goods and services, and commercial activities.

98.     Plaintiffs have been, and are likely to continue to be, damaged by Defendants' illegal actions.

## THIRD CAUSE OF ACTION:
## FEDERAL TRADEMARK DILUTION

99.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 98

as if fully set forth herein.

100. The appearance of Plaintiffs' products and packaging and symbols thereon, including, the NUBY® mark, are famous trademarks of Plaintiffs.

101. Plaintiffs trademarks qualify as famous trademarks under the meaning of the Federal Trademark Dilution Act of 1995, Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

102. Defendant's actions in using Plaintiffs' famous marks in commerce are causing, and continue to cause, actual dilution of the distinctive quality of Plaintiffs' mark, including blurring and tarnishment of Plaintiffs' mark.

103. Defendant has willfully intended to trade on Plaintiffs' reputation and to cause dilution of Plaintiffs' mark.

104. By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained and is entitled to the remedies provided for in the Lanham Act, 15 U.S.C. § 1114, et seq.

## FOURTH CAUSE OF ACTION:
## UNFAIR COMPETITION UNDER TEXAS LAW

105. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 104 as if fully set forth herein.

106. Plaintiffs have created their products, packaging, and marks through extensive time, labor, skill and money.

107. Defendant has used Plaintiffs' products, packaging and marks in competition with Plaintiff, gaining a special advantage because Defendant bore little or no burden of expense of development.

108. Defendant's use of Plaintiffs' products, packaging, and marks, has caused commercial damage to Plaintiff.

-14-

109.    Defendant has engaged in business conduct which is thoroughly contrary to honest practice in industrial or commercial matters.

110.    By reason of the foregoing, Plaintiff has been injured by Defendant's illegal actions and is entitled to the remedies provided under Texas law.

### FIFTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS

111.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 110 as if fully set forth herein.

112.    Plaintiffs have had numerous valid contracts and purchase orders for sales of its products with retailers throughout the United States.

113.    Defendant's activities have deliberately interfered with those contracts to cause customers, including, U.S. retailers, to reduce or eliminate their purchases from Plaintiffs.

114.    Defendant has engaged in unfair market practices, unauthorized copying of Plaintiffs products, packaging, and trademark, including, unfair competition, trademark and trade dress infringement to induce customers to divert their purchases from Plaintiffs to Defendants.

115.    Defendant has further spread false claims regarding Plaintiffs and their products and regarding the origin of its own products, and has engaged in disparagement of Plaintiffs and their products, to also divert those purchases from Plaintiffs.

116.    Defendant's acts of interference were willful, intentional, and malicious, and were a proximate cause of damage to Plaintiffs.

117.    Those acts constitute tortious interference with Plaintiffs' existing contractual relations.

118.    Plaintiffs have suffered actual damages and loss due to Defendant's illegal actions.

-15-

## SIXTH CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH
## PROSPECTIVE CONTRACTUAL RELATIONS

119.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 118 as if fully set forth herein.

120.    Plaintiffs have had numerous contracts and purchase orders for sales of its products with customers such as retailers throughout the United States, and there is a reasonable probability that Plaintiffs would have entered into additional contractual relationships with those and other parties.

121.    Defendant has engaged in unfair market practices, unauthorized copying of Plaintiffs products, packaging, and trademark, including, unfair competition, trademark and trade dress infringement to induce customers to divert their purchases from Plaintiffs to Defendants.

122.    Defendant has further spread false claims regarding Plaintiffs and their products and regarding the origin of its own products, and has engaged in disparagement of Plaintiffs and their products, to also divert those purchases from Plaintiffs.

123.    Those intentional and malicious acts have prevented Plaintiffs' additional contractual relationships from occurring, with the purpose of harming Plaintiffs.

124.    Defendant lacked lawful privilege or justification to engage in its wrongful acts.

125.    Defendant's actions constitute tortious interference with Plaintiffs' existing contractual relations.

126.    Plaintiffs have suffered actual and significant damage and loss due to Defendants' illegal actions.

-16-

## SEVENTH CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH
## EXISTING BUSINESS RELATIONS

127.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 126 as if fully set forth herein.

128.   As a result of their design and business efforts, Plaintiffs have enjoyed a successful business in sales of their products with retailers throughout the United States.

129.   Defendant has deliberately interfered with that business to cause customers, including, U.S. retailers, to reduce or eliminate their purchases from Plaintiffs.

130.   Defendant has engaged in unfair market practices, unauthorized copying of Plaintiffs products, packaging, and trademark, including, unfair competition, trademark and trade dress infringement to induce customers to divert their purchases from Plaintiffs to Defendants.

131.   Defendant has further spread false claims regarding Plaintiffs and their products and regarding the origin of its own products, and has engaged in disparagement of Plaintiffs and their products, to also divert those purchases from Plaintiffs.

132.   Defendant's acts of interference were willful, intentional, and malicious.

133.   Such intentional malicious acts were a proximate cause of damage to Plaintiffs.

134.   Defendant's actions constitute tortious interference with Plaintiffs' existing business relations.

135.   Plaintiffs have suffered actual damages and loss due to Defendant's illegal actions.

## EIGHTH CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH
## PROSPECTIVE BUSINESS RELATIONS

136.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 135 as if fully set forth herein.

137.    As a result of their design and business efforts, Plaintiffs have enjoyed a successful business in sales of its products with retailers throughout the United States, and there is a reasonable probability that Plaintiffs would have entered into further business in sales of those products with those, and other parties.

138.    Defendant has engaged in unfair market practices, unauthorized copying of Plaintiffs products, packaging, and trademark, including, unfair competition, trademark and trade dress infringement to induce customers to divert their purchases from Plaintiffs to Defendants.

139.    Defendant has further spread false claims regarding Plaintiffs and their products and regarding the origin of its own products, and has engaged in disparagement of Plaintiffs and their products, to also divert those purchases from Plaintiffs.

140.    Defendant's intentional and malicious acts have prevented those relationships from occurring, with the purpose of harming Plaintiffs.

141.    Defendant lacked lawful privilege or justification to engage in their wrongful acts.

142.    Defendant's actions constitute tortious interference with Plaintiffs' prospective business contractual relations.

143.    Plaintiffs have suffered actual and significant damage and loss due to Defendants' illegal actions.

-18-

## DAMAGES

144.  Plaintiffs have been extensively damaged by Defendant's illegal actions in an amount to be determined by this Court.

145.  In view of the extensive, malicious, and bad faith nature of Defendant's activities, Plaintiffs further request an award of punitive damaged for Defendant's tortious acts, in an amount not less than one hundred million dollars.

146.  Plaintiffs further request that this honorable Court assess damages against Defendant in the fullest amount available by law, in view of the egregious, malicious, and extensive nature of Defendant's bad faith activities complained of herein.

## JURY TRIAL DEMAND

147.  Pursuant to Rule 38 of the Federal Rules of Civil Procedure and all applicable law, Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests a judgment of this Court:

(a)  That Defendant has engaged in federal unfair competition, trademark infringement, trademark dilution, and misrepresentation under Section 43 of the Lanham Act, 15 U.S.C. §1125; and engaged in unfair competition, deceptive and unfair business practices, and tortious interference with existing and prospective contractual and business relations under the common law and the law of the State of Texas;

(b)  That Defendant, its officers, agents, servants, employees, representatives, distributors and all persons in concert or participation with Defendant be preliminarily and permanently enjoined from engaging in any activities which infringe Plaintiffs Luv n' care's rights in its products,

-19-

packaging or advertising materials, including Plaintiffs' rights in its trademarks and trade dress;

(c)     That Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be preliminarily and permanently enjoined from making, using, importing, offering for sale and selling any products or packaging which infringe Plaintiffs' trademarks or trade dress;

(d)     That Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be preliminarily and permanently enjoined from selling or marketing merchandise in any way that tends to deceive, mislead or confuse the public into believing that Defendant's merchandise in any way originates with, is sanctioned by, or affiliated with Plaintiffs Luv n' care;

(e)     That Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be preliminarily and permanently enjoined from otherwise competing unfairly with Plaintiff;

(f)     That Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be preliminarily and permanently enjoined from diluting the distinctive qualities of Plaintiffs' products;

(g)     That Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be preliminarily and permanently enjoined from engaging in further acts of misrepresentation regarding Plaintiffs and Plaintiffs' products;

-20-

(h)     That Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be preliminarily and permanently enjoined from engaging in further deceptive and unfair business practice with respect to Plaintiffs;

(i)     That Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be preliminarily and permanently enjoined from engaging in further acts of tortious interference with Plaintiffs' existing and prospective contractual and business relations;

(j)     That Defendant be directed to file with this Court and serve on Plaintiffs within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which the Defendant has complied with the injunction;

(k)     That Defendant be required to account for and pay over to Plaintiffs any and all profits derived by them and all damages sustained by Plaintiffs by reason of the acts complained of in this Complaint, including an assessment of interest on the damages so computed, and that the damages be trebled pursuant to 35 U.S.C. § 284, and Section 35 of the Lanham Act, 15 U.S.C. §1117, and all applicable law;

(l)     That Defendant be required to account for and pay over to Plaintiffs such actual damages as Plaintiffs have sustained as a consequence of Defendant's infringement of Plaintiffs' trademarks and trade dress, and to account for and pay to Plaintiffs all of Defendant's gains, profits and advantages attributable to or derived by Defendant's infringement of Plaintiffs' federal, state and common law rights;

(m)     That Defendant be required to account for and pay over to Plaintiffs such damages as the Court deems proper under Defendants' violations of the state and common law of the State of Texas;

(n)     That each such award of damages be enhanced to the maximum available for each infringement in view of Defendant's willful infringement of Plaintiffs' rights;

(o)     That Defendant be required to deliver up for impoundment during the pendency of this action, and for destruction thereafter, all copies of the infringing materials in its possession or under its control and all materials, including molds and master models, used for making same;

(p)     That Plaintiffs be awarded punitive damages because of the egregious, malicious, and tortious conduct of Defendant complained of herein;

(q)     That Plaintiffs recover the costs of this action including its expenses and reasonable attorney's fees pursuant to 15 U.S.C. §1117 and all further applicable law, because of the deliberate and willful nature of the infringing activities of Defendant sought to be enjoined hereby, which make this an exceptional case warranting such award;

(r)     That Plaintiffs obtain all further relief permitted under the laws of the United States and the State of Texas; and,

(s)     That Plaintiffs obtain all such other and further relief as the Court may deem just and equitable.

Dated: April 17, 2008                    Respectfully submitted,

                                         */Morris E. Cohen/*
                                         _____
                                         Morris E. Cohen
                                         Law Office of Morris E. Cohen, P.C.
                                         One Penn Plaza, Suite 2527
                                         New York, New York 10119
                                         212-244-4111 x226 (phone)
                                         212-563-7108 (fax)
                                         mcohen@ipcases.com (email)

                                         Joe D. Guerriero (Bar No. 06391)
                                         Luv n' care, Ltd.
                                         3030 Aurora Avenue
                                         Monroe, Louisiana 71201
                                         318-338-3603 (phone)
                                         318-388-5892 (fax)

                                         Attorneys for Plaintiff
                                         LUV N' CARE, LTD.



# EXHIBIT A
# (Fig. 1)



**EXHIBIT A
(Fig. 2)**



# EXHIBIT A
# (Fig. 3)



# EXHIBIT A
# (Fig. 4)



# EXHIBIT B
# (Fig. 1)



**EXHIBIT B**
**(Fig. 2)**



# EXHIBIT B
# (Fig. 3)



**EXHIBIT B**
**(Fig. 4)**



# EXHIBIT C



# EXHIBIT D



# EXHIBIT E
# (Fig. 1)



# EXHIBIT E
# (Fig. 2)



# EXHIBIT F

Int. Cl.: 10

Prior U.S. Cls.: 26, 39 and 44

**United States Patent and Trademark Office**

Reg. No. 2,335,700

Registered Mar. 28, 2000

## TRADEMARK
### PRINCIPAL REGISTER

## NUBY

HAKIM, NOURI E. (UNITED STATES CITIZEN)
3030 AURORA AVE., STE. 213
MONROE, LA 71201

FOR: INFANT PACIFIER(S), IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 1–1–1998; IN COMMERCE 1–1–1998.

SER. NO. 75–687,481, FILED 4–20–1999.

HOWARD B. LEVINE, EXAMINING ATTORNEY



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA  22313-1451
www.uspto.gov

REGISTRATION NO:  2335700     SERIAL NO:  75/687481     MAILING DATE:  02/20/2007
REGISTRATION DATE:  03/28/2000
MARK:  NUBY
REGISTRATION OWNER:  ADMAR INTERNATIONAL, INC.

**CORRESPONDENCE ADDRESS:**
MORRIS E. COHEN
LAW OFFICE OF MORRIS E. COHEN, P.C.
1122 CONEY ISLAND AVENUE
SUITE 216-217
BROOKLYN, NY 11230

# NOTICE OF ACCEPTANCE

15  U.S.C.  Sec.  1058(a)(1)

THE COMBINED AFFIDAVIT FILED FOR THE ABOVE-IDENTIFIED REGISTRATION MEETS THE REQUIREMENTS OF SECTION 8 OF THE TRADEMARK ACT, 15 U.S.C. Sec. 1058.

**ACCORDINGLY, THE SECTION 8 AFFIDAVIT IS ACCEPTED.**

****************************************************

# NOTICE OF ACKNOWLEDGEMENT

15  U.S.C.  Sec.  1065

THE AFFIDAVIT FILED FOR THE ABOVE-IDENTIFIED REGISTRATION MEETS THE REQUIREMENTS OF SECTION 15 OF THE TRADEMARK ACT, 15 U.S.C. Sec. 1065.

**ACCORDINGLY, THE SECTION 15 AFFIDAVIT IS ACKNOWLEDGED.**

****************************************************

**THE REGISTRATION WILL REMAIN IN FORCE FOR CLASS(ES):**
010.

MA, MACY L
PARALEGAL SPECIALIST
POST-REGISTRATION DIVISION
571-272-9500

**PLEASE SEE THE REVERSE SIDE OF THIS NOTICE FOR INFORMATION**
**CONCERNING REQUIREMENTS FOR MAINTAINING THIS REGISTRATION**
ORIGINAL

**REQUIREMENTS FOR MAINTAINING A FEDERAL TRADEMARK REGISTRATION**

**I) SECTION 8: AFFIDAVIT OF CONTINUED USE**

The registration shall remain in force for 10 years, except that the registration shall be canceled for failure to file an Affidavit of Continued Use under Section 8 of the Trademark Act, 15 U.S.C. Sec. 1058, at the end of each successive 10-year period following the date of registration.

**Failure to file the Section 8 Affidavit will result in the cancellation of the registration.**

**II) SECTION 9: APPLICATION FOR RENEWAL**

The registration shall remain in force for 10 years, subject to the provisions of Section 8, except that the registration shall expire for failure to file an Application for Renewal under Section 9 of the Trademark Act, 15 U.S.C. Sec. 1059, at the end of each successive 10-year period following the date of registration.

**Failure to file the Application for Renewal will result in the expiration of the registration.**

**NO FURTHER NOTICE OR REMINDER OF THESE REQUIREMENTS WILL BE SENT TO THE REGISTRANT BY THE PATENT AND TRADEMARK OFFICE.  IT IS RECOMMENDED THAT THE REGISTRANT CONTACT THE PATENT AND TRADEMARK OFFICE APPROXIMATELY ONE YEAR BEFORE THE EXPIRATION OF THE TIME PERIODS SHOWN ABOVE TO DETERMINE APPROPRIATE REQUIREMENTS AND FEES.**





EXHIBIT I
Novi product picture recovered 03/26/08 www.4sgm.com



EXHIBIT I
Nuby Products



EXHIBIT J
Novi product picture recovered 03/26/08 www.4sgm.com



EXHIBIT J
Nuby Products







EXHIBIT K
Novi product picture recovered 03/26/08 www.4sgm.com





EXHIBIT K
Nuby Products







EXHIBIT L
Novi product picture recovered 03/26/08 www.4sgm.com



EXHIBIT L
Nuby Products





EXHIBIT M
Novi product picture recovered 03/26/08 www.4sgm.com



EXHIBIT M
Nuby/Luv n' Care Products





EXHIBIT N
Novi product picture recovered 03/26/08 www.4sgm.com





EXHIBIT N
Nuby Products



# ABC Tests 100 Children's Products and Finds 10 With Lead

**Government Tests Can Miss or Understate Lead Content**

**Nov. 1, 2007 —**

As children across the country begin to compile their holiday toy lists, their parents are facing a major predicament. At at time when millions of toys have been recalled due to lead contamination, just how safe are the current selection of toys?

In a quest for answers, ABC News bought 100 popular children's products from 10 different stores and tested them for lead. The verdict? Good news, and some not very good news.

We'll start with the good. Out of the 100 toys tested, 90 were lead-free, certain to be a comfort to parents.

But 10 of the items tested did contain lead. Plus, the investigation found the Consumer Product Safety Commission's own test methods may be missing or understating lead in children's products.

ABC consulted a licensed lead risk assessor who used a Niton X-ray device made by Thermo Fisher Scientific to quickly screen all 100 children's products for lead. The products with the highest lead levels were then submitted to another laboratory to verify the results.

First, ABC found lead in a set of lotions and potions for girls made by Tween brands -- a pearl on the packaging contained lead. Getting an exact reading on such a tiny painted specimen is difficult. Lab tests found 500 parts per million, but the Niton X-ray device detected 2,000 parts per million. Lead paint over 600 parts per million is illegal.

Next up was a sport sipper bottle. Babies are meant to drink from it, yet we found it contained 300 parts per million of lead. The Food and Drug Administration has jurisdiction here and said it could take action if lead in a food-contact product can contaminate food.

"It's more than I want to see," said Bill Radosevich of Thermo Fisher Scientific.

A plastic duck, purchased at Cost Plus World Market, contained 800 parts per million of lead. Another plastic culprit: a saddle -- part of a Kmart set -- contained 1,600 parts per million.

Like the bottle and the duck, the lead was embedded in the plastic rather than in surface paint. But believe it or not, there is no set legal limit for lead in plastic toys.

Radosevich would like to see an outright ban. "Absolutely," he said. "There's no reason for lead to be in a lot of products so it shouldn't be there."

Some manufacturers argue that the total lead content of a product is not important. They say what matters is whether that lead is accessible to children.

In the past, the Consumer Product Safety Commission has argued that lead can't leach out of plastics, but that has recently changed. The agency issued its first recall due to lead found in a plastic toy, citing "a risk of lead exposure to young children." The commission declined to comments about ABC's lead findings.

"The CPSC has a battery of tests that we've used for a number of years," said Nancy Nord, acting chair of the commission. "They are viewed as the scientific level of excellence for dealing with this particular problem. So, without having our own set of tests, I really can't respond to yours."

So is the Consumer Product Safety Commission's battery of tests top notch? ABC hired yet another lab that uses the commission's methods.

Those tests didn't detect lead in the bottle, the duck or the saddle -- levels that two other techniques consistently identified.

Sandy Roda, who studied lead hazards for 34 years at the University of Cincinnati, wasn't surprised.

"The analytical methods that are being recommended by the CPSC today are not sufficient or adequate methods 100 percent of the time, not even 50 percent of the time to give us an accurate total led assessment of a child's item," said Roda, analytical laboratory director for the university.

The commission's lab method is most often used to analyze children's jewelry. It detected 800 parts per million of lead in a pendant from Claire's Boutiques, but the laboratory method we used -- one developed by another federal agency -- found 900 parts per million.

The findings raises the question: Could the commission be missing lead in other children's products that ought to be recalled?

Regarding the pearl on the Tween brand's lotions set, Tween said it removed the packaging in question as soon as the results were brought to the company's attention and then reported the pearl to the commission, which lead to a formal recall Wednesday.

Cost Plus World Market said it conducted its own tests on the ducks and also found lead in them, but the manufacturer believes that lead is trapped in the plastic. Nevertheless, World Market said it destroyed its remaining ducks and is offering concerned consumers a refund.

The bottle and saddle are both sold exclusively at Kmart. Kmart said both products passed the company's own internal tests and meet federal standards. Kmart said because of the rash of recalls of Chinese-made products, it has started doing random testing of its private label toys sold here in the United States.

Claire's Boutiques said the necklace we tested is meant for teenagers and young women rather than children and that the product passed its own lab tests.

So what did the Consumer Product Safety Commission have to say about ABC's tests of the commission's own methods?

Julie Vallese, a spokeswoman for the commission, said its lead-testing protocols "are sound and often used by U.S. companies to test the safety of children's products." She added that the commission's attention to the issue has led to 19 toy recalls so far this year.

The agency also recently purchased several X-ray devices after a member of Congress questioned why it wasn't using such devices.

Copyright © 2007 ABC News Internet Ventures