Law Office of Morris E. Cohen, P.C.
_____

1 Penn Plaza, Suite 2527 • New York, New York 10119 • 212-244-4111 x205 (phone) • 212-563-7108 (fax)

March 27, 2009

BY HAND DELIVERY

The Honorable Denny Chin
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street, Room 1020
New York, New York 10007-1312

    Re:    *Luv n' care, Ltd. et al. v. Walgreen Co. et al.*
            Civil Action No. 08 CIV 4457

Dear Judge Chin:

    We are attorneys for Plaintiffs Luv n' care, Ltd. and Admar International, Inc. in the above-captioned matter (collectively "Luv n' care"). We are writing in response to the letters of Defendant Walgreen ("Walgreens") dated March 13, 2009[1] and March 25, 2009[2]. We understand that the Court has scheduled a pre-motion conference for March 30, 2009, and respectfully request a short adjournment. Lead counsel for Luv n' care is away from the office traveling for depositions and the undersigned co-counsel is suffering from a severe flu. (Opposing counsel has declined to accommodate this request). In addition, Luv n' care submits that Defendant's proposed motion is without merit, as further discussed below.

    In its letters, Defendant Walgreens requests a pre-motion conference to discuss filing a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) and a motion to dismiss the Complaint under Rule 12(b)(6). Walgreens' effort to obtain judgment and dismissal on the

---

[1] Luv n' care's lead intellectual property counsel has been out of town in connection with litigation matters in the period since the letter was forwarded. The letter was sent to him listing the name of "Atico" in the subject line, and was sent at approximately the same time as emails from colleagues in Florida regarding a new Atico matter in Florida that had not yet been served. Due to these factors, a temporary delay in responding was occasioned as a result.

[2] In its letter, Walgreens informs the Court that it and its agent, Atico, recently filed a second-filed action against Luv n' care in Florida. According to the letter, the action seeks disposition of, *inter alia,* the claims against Walgreens pending before this Court. That second-filed action violates the fundamental first-filed rule and Luv n' care intends to move the Court in Florida to dismiss the later case. According to the Eleventh Circuit, [i]n the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide it." *Merryl Lynch v. Haydum,* 675 F.2d 1169, 1174 (11th Cir. 1982); *see also Supreme International Corp. v. Anheuser-Busch, Inc.,* 972 F. Supp. 604 (S.D. Fla. 1997)(granting motion to dismiss trademark infringement action under the first-filed rule).

ground that the trade dress in Luv n' care's baby products is functional is premature, misplaced, and belied by its own admissions.

Luv n' care is one of the leading baby product companies in the world today. Along with its predecessors, this family-owned business has been in the baby products industry for well over forty years. It is dedicated to providing high quality, innovative products that are inspired by nature, and that make the lives of babies and parents easier, simpler, and more fun. As a result, Luv n' care's innovative designs have achieved tremendous domestic and international success. To date, its Nuby brand products have been distributed globally in over 150 countries.

In the Complaint, Luv n' care set forth various causes of action against Walgreens for Defendant's unauthorized and damaging copying of Luv n' care's products. These include violations of Luv n' care's trade dress rights in its original designs for the distinctive look of its products, their packaging, and the trademarks associated therewith. Color photographs clearly showing Luv n' care's designs and marks, and the infringing copies, are attached as Exhibits A to E in the Complaint. Walgreens has not challenged the distinctiveness of such trade dress in its letters to the Court.

Rather, Walgreens seeks judgment and dismissal on the ground that the trade dress at issue is "functional." Deciding whether the trade dress is functional at the pleading stage, however, is premature. Functionality is an issue of fact for the jury to consider. *See Innovative Networks, Inc. v. Satellite Airlines Ticketing Centers, Inc.*, 871 F. Supp. 709 (S.D.N.Y. 1995) (denying motion for summary judgment). Walgreens offers no case law supporting such an early determination of the claims here.

Moreover, Walgreens' rationale for its functionality defense is entirely misplaced. Simply put, Walgreens argues that because Luv n' care has identified its goods with terms like "drinking cup" and "comb and brush," this means that every aspect of the goods' aesthetic appearance is necessarily and automatically functional. This is simply not logical.

Indeed, Walgreens' claim that Luv n' care's trade dress is functional is belied by the fact that there are numerous other baby product designs on the market for the same types of products. Evidence of such alternative designs contradicts any claim of functionality. *See, e.g., Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1002 (2d. Cir. 1997) ("[The district court] identified viable alternatives to the plastic blister bowl cover and the tie-in. Because [defendant] failed to prove that it would be placed at a significant competitive disadvantage if not allowed to use this particular open-style box design, plastic blister and tie-in, the district court determined that the features of the [product's] packaging are nonfunctional.").

Walgreens itself even admits to the existence of such third party designs and to their differing looks. In its Complaint filed in Florida, Walgreens states at paragraph 34 that "[o]ther competing products, like Munchkin, Babies R' Us, Gerber, Playtex and Avent, look different from [Luv n' care's] asserted trade dress even if they may have certain similar functional

{4738/6029-000/00019245.1}

features." Its own admission that numerous competitive products have similar functional features -- while maintaining their own different appearances -- confirms the flaws in Walgreens' position. A copy of the Florida 2nd filed action is attached for the Court's reference.

Furthermore, where the asserted trade dress extends to the "overall look" of the combination of features comprising a product or a product line, the Court must evaluate functionality of those features taken together and not in isolation. *See LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 76 (2d Cir. 1985) (recognizing trade dress for "particular combination and arrangement of design elements" of a sports bag). Thus, the fact that Luv n' care's products serve useful purposes does not bar trade dress protection for their overall appearance, its product line, or its products' associated packaging and trademarks. In *Jolly Good Industries, Inc. v. Elegra Inc.*, 690 F. Supp. 227 (S.D.N.Y. 1988), for example, the Court granted a preliminary injunction barring defendants from selling any goods which appeared similar to plaintiffs' beverage dispenser. Luv n' care's sippy cups are likewise containers for beverages, just like the beverage dispensers whose trade dress the Court protected in *Jolly Good*.

In its letter, Walgreens also argues that it has insufficient notice of Luv n' care's allegations. However, as stated above, Luv n' care has provided visual evidence of its trade dress in the exhibits appended to the Complaint. In *Imagineering, Inc. v. Van Klassens, Inc.*, 851 F. Supp. 532, 542 (S.D.N.Y.1994), the Court stated that "[t]o require that [a plaintiff] describe its trade dress only in prose would run the risk, first, that the description might not adequately describe this 'image,' and, second, that defendants' would be provided numerous opportunities to seek to evade the injunction's proscription by, for example, changing one aspect of a multi-faceted 'image' and claiming that the trade dress, as defined, was not being infringed." The exhibits to the Complaint clearly show the identical and piratical copying by Walgreens. It should not be heard to now complain that it lacks notice of Luv n' care's claims.

Additionally, Walgreens asserts that Luv n' care's state law claims should be adjudicated against it because they derive solely from the allegations related to violations of federal law. However, the claims are not the same. For example, Luv n' care has pleaded a cause of action for unfair competition under New York law. "The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another." *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); *see also Findlay v. Findlay*, 18 N.Y.2d 12, 19-20 (1966), *cert. denied*, 385 U.S. 930 (1966), *modified*, 18 N.Y.2d 676 (1966) ("[N]o man can sell his goods as those of another. 'He may not through unfairness, artifice, misrepresentation or fraud, injure the business of another, or induce the public to believe his product is the product of that other.'"). In the instant case, Luv n' care spent a considerable amount of time and resources in developing its high quality baby care products. Walgreens sold those goods and, in the process, consumers came to associate the design of those goods with safety and reliability. Once the reputation of the goods had been established in the minds of consumers, Walgreens stopped purchasing them from Luv n' care and started buying "knock-offs" from lower cost suppliers. This is a classic bait and switch. Consumers expect that

The Honorable Denny Chin
Page 4 of 4

the product to be the same because the goods look identical. However, they are receiving inferior items with real safety concerns.

As an illustration, most (if not all) of the baby products at issue are manufactured for Walgreens by a Thailand copyist named Royal King. In an investigation by ABC News, one of the Walgreens/Royal King copies accused in the present case was displayed on television, tested, and shown to contain lead. This in turn caused consumer concern regarding Luv n' care's baby products due to the confusing similarity between the appearance of the knock-off and Luv n' care's original. Such deceptive trade practices are exactly the kinds of activities that the state unfair competition law are meant to protect against.

As a result, Luv n' care firmly believes that it has pleaded viable causes of action under federal and state law, such that Defendant's motion would be misplaced at this time. In the alternative, Luv n' care would request leave to amend its Complaint to replead.[3] It is well-settled that "dismissals for insufficient pleadings are ordinarily with leave to replead." *Stern v. General Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991); *see also Porat v. Lincoln Towers Community Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6).").

Accordingly, a brief adjournment of the pre-motion conference to and a denial of Defendant's requests for dismissal and judgment based on the pleadings are respectfully requested.

Respectfully submitted,

Rochelle R. Weisburg

cc: Alan Weisberg, Esq. (via email)
    Jason Burratti, Esq. (via email)
    Scott Daniels Esq. (via email)
    Ralph Wood, Esq. (via email)

---

[3] In order to avoid burdening the Court with the instant motion counsel offered to replead the trade dress claims with greater specificity, which was declined.

{4738/6029-000/00019245.1}

FILED by **MB** D.C.
ELECTRONIC

Mar. 13, 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: **09-60397-Civ-COHN/SELTZER**

ATICO INTERNATIONAL USA, INC., a
Delaware corporation, and WALGREEN CO.,
an Illinois corporation,

      Plaintiffs,

v.

LUV N' CARE, LTD., a Louisiana corporation,
and ADMAR INTERNATIONAL, INC., a
Delaware corporation,

      Defendants.
_____/

**COMPLAINT FOR DECLARATORY
JUDGMENT AND
STATE LAW VIOLATIONS**

**JURY DEMAND**

## COMPLAINT

Plaintiffs ATICO International USA, Inc. (Atico) and Walgreen Co. (Walgreens), collectively "plaintiffs," allege for their Complaint seeking declaratory judgments against defendants Luv N' Care, Ltd. and Admar International, Inc. (collectively, "defendants"):

### PARTIES

1. Atico is a Delaware corporation having a principal place of business at 501 South Andrews Avenue in Fort Lauderdale, Florida.

2. Walgreens is an Illinois corporation having a principal place of business at 200 Wilmot Road in Deerfield, Illinois.

3. Defendant Luv N' Care, Ltd. is a Louisiana corporation having a principal place of business at 3030 Aurora Avenue in Monroe, Louisiana.

4. Defendant Admar International, Inc. (Admar) is a Delaware corporation having a principal place of business at 3030 Aurora Avenue in Monroe, Louisiana.

## JURISDICTION AND VENUE

5. Atico and Walgreens bring this action under 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202 for declaratory judgment based on United States trademark law, including Section 43 of the Lanham Act (15 U.S.C. § 1125), and Florida state law, including unfair competition and unfair and deceptive trade practices laws.

6. Defendants sued plaintiffs in the United States District Court for the Southern District of New York, Civil Action No. 08-4457 (the New York suit), alleging infringement of alleged unregistered trade dress and violations of state law based on those claims. A true and correct copy of the Complaint and Exhibits from the New York suit is attached as Exhibit A.

7. Defendant Luv N' Care holds itself out as "one of the leading baby product companies in the world today. It enjoys a widespread reputation throughout the United States...as a result of the popular products that it has ...commercialized in interstate...commerce for use by babies and young children." Ex. A at ¶ 9. It is subject to personal jurisdiction in Florida.

8. On information and belief, defendant Admar "is the owner of United States Trademark Registration No. 2,335,700 for the trademark NUBY®" that defendant Luv N' Care uses to sell the interstate-commercialized products described in Paragraph 9. Ex. A at ¶¶ 10-12.

9. In the New York suit, both defendants claim to have designed, promoted and commercialized products, including the products at suit in this Complaint and the New York suit, throughout the United States. *E.g.* Ex. A at ¶¶ 14-18. They necessarily must have done so in

2

Florida, directing their accused conduct into this forum, seeking Floridians as customers, and availing themselves of Florida law.

10. Since this conduct includes the use of unregistered trade dress that defendants improperly assert as intellectual property against residents of this and other jurisdictions, they have also committed specific torts within Florida. Specifically, they have at least improperly claimed trade dress protection throughout the United States and by abusing process in other states that affects the rights of Florida residents.

11. This Court has specific and general personal jurisdiction over defendants, including under Florida's long arm statute, F.S. 48.193.

12. The amount in controversy exceeds $75,000.00.

13. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, 1338(a), 2201 and 2202 for declaratory judgment based on United States trademark law, including Section 43 of the Lanham Act (15 U.S.C. § 1125).

14. This Court has jurisdiction over the claims based on state law under 28 U.S.C. § 1367.

15. Venue is proper in this district under 28 U.S.C. §§ 1391(a) and (b).

## FACTUAL BACKGROUND

16. Atico sells, offers for sale and distributes high-quality, popular products for use by babies and young children and their parents. These products include at least two of the products accused in the New York suit (see Ex. A at ¶¶ 38-49).

17. Both of those products may be generically referred to as "sippy cups."

18. Atico supplies Walgreens with these two products.

19. Atico's products compete with defendants' products.

3

20. Atico is Walgreens' second largest supplier of baby products.

21. Walgreens purchases sippy cups from Atico's competitors, including Gerber, Playtex and Avent, just not plaintiff Luv N' Care's sippy cups.

22. Walgreens chose Atico's competing products because they offer consumers better value than other products available on the market and believes Atico's products to be at least as good as competing products.

23. Walgreens' believes its privately-branded products to be of at least comparable quality to nationally-branded, similar products.

24. Atico's competing products that Walgreens sells offer consumers better value than defendants' competing products.

25. On information and belief, Atico's competing products are also of superior quality to other products available on the market, including plaintiffs' products.

26. For example, a teething child will quickly cause defendants' asserted products to leak, while Atico's products do not suffer such commercial defects.

27. Prudent business practices include selecting products of superior quality that offer consumers better value for selling on shelves at retail.

28. This is especially true for retail sales of semi-disposable items like products for children.

29. Walgreens conducts prudent business practices.

30. Walgreens' sales of Atico's products have been more successful than its attempts to sell defendants' products.

31. Walgreens attributes this success to at least the better consumer value associated with Atico's products that look different from defendants' products.

32. That is, Walgreens made a successful, prudent business decision by buying products from Atico.

33. Atico's competing products also look different from defendants' competing products.

34. Other competing products, like Munchkin, Babies R' Us, Gerber, Playtex and Avent, look different from defendants' asserted trade dress even if they may have certain similar functional features.

35. Defendants sued Walgreens in the New York suit because they were unhappy with Walgreens' and Atico's successful and proper competition.

36. Defendants sued Walgreens in the New York suit because they are unable to compete with Atico's products that have superior quality and better consumer value.

37. On information and belief, defendants do not sell any products that Atico sells.

38. In the New York suit, defendants claim defendant Walgreens sells a "cheap knockoff" of defendants' products acquired from a company in Thailand. Ex. A at ¶ 22.

39. Walgreens does not sell cheap knockoffs.

40. Rather, Atico's products are superior in quality and a better value than defendants' asserted products.

41. On information and belief, defendants knew that Atico supplied Walgreens with the products accused in the New York suit.

42. In the New York suit, defendants claim their products and designs are entitled to unregistered trade dress protection, that their trade dress has acquired secondary meaning, that plaintiffs' products are confusing consumers as to their source, that defendants' trade dress is being diluted and tarnished, that plaintiffs are willfully infringing the improperly asserted and

nonexistent trade dress, and that plaintiffs have engaged in Federal unfair competition. Ex. A at ¶¶ 17-18, 62-66, 75-94.

43. On information and belief, defendants' assert no Federally-registered trade dress. See <www.uspto.gov> (visited March 10, 2009).

44. The trade dress asserted in the New York suit is unregistered.

45. Defendants' alleged trade dress has not attained secondary meaning.

46. Defendants cite no evidence in their Complaint in the New York suit that their unregistered trade dress has secondary meaning.

47. Other market participants besides Walgreens and Atico have sold competing products so similar to defendants' that the average consumer would not know the source of any particular product that competes with defendants' products.

48. In the New York suit, defendants do not claim their products are non-functional. See generally Ex. A.

49. Two out of three components of our Federal Government, the Supreme Court precedent and the Congress, require a plaintiff claiming trade dress infringement to demonstrate the alleged trade dress is non-functional. *See, e.g., Traffix Devices, Inc. v. Marketing Displays, Inc.* 532 U.S. 23, 28-29 (2001); 15 U.S.C. §§ 1125(a)(3) and (c)(4).

50. Defendants did not plead in their Complaint in the New York suit that their alleged trade dress is non-functional.

51. Defendants pled in the New York suit allegations describing their products with functional language. See, *e.g.*, Ex. A at ¶¶ 31, 40, 45, 50, 54.

52. On information and belief, defendants have marked their asserted products in the New York suit with U.S. or foreign patent numbers.

6

53. On information and belief, defendants believe one or more U.S. or foreign patents cover attributes of their asserted products in the New York suit with U.S. or foreign patent numbers.

54. Defendants know their alleged trade dress to be functional.

55. Each Exhibit attached to Ex. A has functional components.

56. Defendants do not have protectable trade dress in their products or designs.

57. Defendants intentionally filed a Complaint in New York improperly asserting that their products or designs are protected trade dress.

58. On information and belief, defendants filed the New York suit intending that it would damage the business relationship between Walgreens and Atico.

59. Atico's products supplied to Walgreens that are accused in the New York suit do not and cannot infringe any alleged trade dress asserted in the New York suit.

60. Atico is offering to Walgreens a new product design shown in Ex. B.

61. The products shown in Ex. B do not and cannot infringe any alleged trade dress asserted in the New York suit.

## COUNT I – DECLARATORY JUDGMENT

62. Atico incorporates paragraphs 1-61.

63. Plaintiffs are under direct threat of suit and Walgreens has been sued.

64. An actual and justiciable case and controversy exists between plaintiffs and defendants as to whether defendants have any trade dress in the products identified in the New York action.

65. Declaratory judgment that no trade dress exists in or on the products asserted in the New York suit is appropriate.

66. An actual and justiciable case and controversy exists between plaintiffs and defendants as to whether any alleged but unregistered trade dress asserted in the New York suit has acquired secondary meaning.

67. Declaratory judgment that the alleged but unregistered trade dress asserted in the New York suit has not acquired secondary meaning is appropriate.

68. An actual and justiciable case and controversy exists between plaintiffs and defendants as to whether defendants' alleged but unregistered trade dress asserted in the products identified in the New York suit is functional.

69. Declaratory judgment that any alleged but unregistered trade dress asserted in the New York suit is functional is appropriate.

70. An actual and justiciable case and controversy exists between plaintiffs and defendants as to whether Atico's products cause consumer confusion with defendants alleged but unregistered trade dress asserted in the products identified in the New York suit.

71. Declaratory judgment that no consumer confusion exists between Atico's products supplied to Walgreens and any alleged but unregistered trade dress asserted in the New York suit is appropriate.

72. An actual and justiciable case and controversy exists between plaintiffs and defendants as to whether Atico's products dilute defendants' alleged but unregistered trade dress asserted in the products identified in the New York suit.

73. Declaratory judgment that no dilution results from Atico's supply of products to Walgreens or Walgreens' sales of same is appropriate.

74. An actual and justiciable case and controversy exists between plaintiffs and defendants as to whether Atico's products tarnish defendants' alleged but unregistered trade

dress asserted in the products identified in the New York suit, if trade dress tarnishment is even a viable cause of action.

75. Declaratory judgment that no tarnishment results from Atico's supply of products to Walgreens or Walgreens' sales of same is appropriate.

76. An actual and justiciable case and controversy exists between plaintiffs and defendants as to whether Walgreens has unfairly competed under Federal law with defendants.

77. Declaratory judgment that plaintiffs have not unfairly competed under Federal law with defendants is appropriate.

78. An actual and justiciable case and controversy exists between plaintiffs and defendants as to whether any of plaintiffs' alleged conduct constitutes willful infringement of any rights of defendants that are pled in the New York suit.

79. Declaratory judgment that plaintiffs have not willfully infringed any right asserted (albeit improperly) in the New York suit.

80. Plaintiffs have been and continue to be injured and damaged at least by defendants' claiming that Walgreens infringed and infringes nonexistent trade dress asserted by defendants in the New York suit.

81. Absent a declaration of nonexistence, invalidity, unenforceability, noninfringement, no confusion, no dilution, no tarnishment, and no Federal unfair competition, plaintiffs will continue to be damaged.

82. Damage to plaintiffs will continue to accrue unless or until defendants' improper conduct is enjoined.

### COUNT II – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

83. Plaintiffs incorporate paragraphs 1-82.

84. Atico and Walgreens have an existing business relationship.

85. On information and belief, defendants know of the relationship between Atico and Walgreens.

86. By filing the New York Suit, defendants have intentionally and unjustifiably interfered with the business relationship between Atico and Walgreens.

87. Plaintiffs have suffered damages as a result of defendants' intentional interference with the relationship between Atico and Walgreens.

88. Defendants' conduct constitutes intentional interference with a business relationship. *See Gossard v. Adia Servs.*, 723 So. 2d 182, 185 (Fla. 1998).

89. Damage to plaintiffs will continue to accrue unless or until defendants' improper conduct is enjoined.

## COUNT III – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. §§501.201 TO 501.213)

90. Plaintiffs incorporate paragraphs 1-89.

91. Defendants' action of filing the New York suit constitutes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Florida Statute §501.204.

92. Defendants willfully filed the New York suit and knew or should have known that this action was unlawful and would damage Walgreens.

93. Plaintiffs have been damaged directly and proximately by defendants' unlawful actions.

94. Plaintiffs are entitled to recover actual damages, plus reasonable attorneys' fees and costs for defendants' violation of the Florida Deceptive and Unfair Trade Practices Act.

95. Damage to plaintiffs will continue to accrue unless or until defendants' improper conduct is enjoined.

## JURY DEMAND

96. ATICO requests trial by a jury for all issues so triable.

## PRAYER FOR RELIEF

Plaintiffs request the Court enter one or more orders:

A. Under 15 U.S.C. §1116, enjoining defendants, their agents and employees, and all persons acting in concert with them, from attempting to preclude plaintiffs' importing, making, distributing, using, selling, offering to sell, or marketing of any of the alleged infringing products through litigation or other means;

B. Awarding plaintiffs their costs of suit, including reasonable attorneys' fees, under the Lanham Act and all other applicable laws;

C. Awarding plaintiffs damages for defendants' deceptive and unfair trade practice, including all costs and fees to Atico associated with defending the New York suit as well as the present suit;

D. Awarding plaintiffs damages for defendants' tortious interference with plaintiffs' business relationship, including all costs and fees to Atico associated with defending the New York suit as well as the present suit;

E. Awarding plaintiffs prejudgment interest;

F. Awarding plaintiffs postjudgment interest;

G. Requiring defendants to give any applicable postjudgment equitable accounting for the period of damages established at trial;

H. Declaring plaintiffs' officers vicariously liable for plaintiffs' improper conduct alleged in this Complaint;

I. Granting such other relief consistent with the requests made in this Complaint; and

J. Granting such further relief as this Court deems appropriate.

Dated: March 13, 2009

Respectfully Submitted,

Jeffrey H. Kamenetsky, Esq.
jkamenetsky@cwiplaw.com
Florida Bar No. 044179
CHRISTOPHER & WEISBERG, P.A.
200 East Las Olas Boulevard, Suite 2040
Fort Lauderdale, Florida 33301
(954) 828-1488 (Telephone)
(954) 828-9122 (Facsimile)

*Attorneys for Plaintiffs Atico International USA, Inc. and Walgreen Co.*

146126