UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ATICO INTERNATIONAL USA, INC., a
Delaware corporation,

        Plaintiff,

v.

LUV N' CARE, LTD., a Louisiana corporation,
and ADMAR INTERNATIONAL, INC., a
Delaware corporation,

        Defendants.

CASE NO.: 09-60397-CIV-COHN/SELTZER

## AMENDED COMPLAINT

Plaintiff ATICO International USA, Inc. (Atico) amends its Complaint seeking

declaratory judgments against defendants Luv N' Care, Ltd. and Admar International, Inc.

(collectively, "defendants") as follows:

## PARTIES

1.    Atico is a Delaware corporation having a principal place of business at 501 South

Andrews Avenue in Fort Lauderdale, Florida.

2.    Defendant Luv N' Care, Ltd. is a Louisiana corporation having a principal place of

business at 3030 Aurora Avenue in Monroe, Louisiana.

3.    Defendant Admar International, Inc. (Admar) is a Delaware corporation having a

principal place of business at 3030 Aurora Avenue in Monroe, Louisiana.

## JURISDICTION AND VENUE

4.    Atico brings this action under 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202 for

declaratory judgment based on United States trademark law, including Section 43 of the Lanham

Act (15 U.S.C. § 1125) and Florida state law, including unfair competition and unfair and deceptive trade practices laws.

5.      Defendants sued Atico's customer Walgreens in the United States District Court for the Southern District of New York, Civil Action No. 08-4457 ("the New York suit"), alleging infringement of alleged unregistered trade dress and violations of state law based on those claims.  A true and correct copy of the Complaint and Exhibits from the New York suit is attached as Exhibit A to DE 1 (incorporated here as "Ex. A").

6.      Defendants contend Atico is the "real party in interest" in the New York suit.

7.      Defendant Luv N' Care holds itself out as "one of the leading baby product companies in the world today.  It enjoys a widespread reputation throughout the United States…as a result of the popular products that it has …commercialized in interstate…commerce for use by babies and young children."  Ex. A at ¶ 9.  It is subject to personal jurisdiction in Florida.

8.      On information and belief, defendant Admar does not design, manufacture, market, promote, or commercialize products.

9.      On information and belief, defendant Admar "is the owner of United States Trademark Registration No. 2,335,700 for the trademark NUBY®" that defendant Luv N' Care uses to sell the interstate-commercialized products described in Paragraph 9.  Ex. A at ¶¶ 10-12.

10.    On April 30, 2009, defendant Admar's Counsel wrote "Admar's [corporate] deposition [in the New York suit], since it is merely the owner of the trademark NUBY, cannot take 30 minutes."

11.    Defendant Admar is not the owner of any intellectual property rights asserted in the New York suit.

12.   In the New York suit, both defendants claim to have designed, promoted and commercialized products, including the products at suit in this Complaint and the New York suit, throughout the United States. *E.g.* Ex. A at ¶¶ 14-18.  They necessarily must have done so in Florida, directing their accused conduct into this forum, seeking Floridians as customers, and availing themselves of Florida law.

13.   Since this conduct includes the use of unregistered trade dress that defendants improperly assert as intellectual property against residents of this and other jurisdictions, they have also committed specific torts within Florida.  Specifically, they have at least improperly claimed trade dress protection throughout the United States and by abusing process in other states that affects the rights of Florida residents.

14.   This Court has specific and general personal jurisdiction over defendants, including under Florida's long arm statute, F.S. 48.193.

15.   The amount in controversy exceeds $75,000.00.

16.   This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, 1338(a), 2201 and 2202 for declaratory judgment based on United States trademark law, including Section 43 of the Lanham Act (15 U.S.C. § 1125).

17.   This Court has jurisdiction over the claims based on state law under 28 U.S.C. § 1367.

18.   Venue is proper in this district under 28 U.S.C. §§ 1391(a) and (b).

## FACTUAL BACKGROUND

19.   Atico sells, offers for sale and distributes high-quality, popular products for use by babies and young children and their parents.  These products include at least two of the products accused in the New York suit (see Ex. A at ¶¶ 38-49).

20. Both of those products may be generically referred to as "sippy cups."

21. Atico supplies Walgreens with the accused products from the New York suit.

22. Atico's products compete with defendants' products.

23. Atico is Walgreens' second largest supplier of baby products.

24. Walgreens purchases sippy cups from Atico's competitors, including Gerber, Playtex and Avent, just not plaintiff Luv N' Care's sippy cups.

25. Walgreens chose Atico's competing products because they offer consumers better value than other products available on the market and believes Atico's products to be at least as good as competing products.

26. Walgreens believes its privately-branded products to be of at least comparable quality to nationally-branded, similar products.

27. Atico's competing products that Walgreens sells offer consumers better value than defendants' competing products.

28. On information and belief, Atico's competing products are also of superior quality to other products available on the market, including defendants' products.

29. For example, a teething child will quickly cause defendants' asserted products to leak, while Atico's products do not suffer such commercial defects.

30. Prudent business practices include selecting products of superior quality that offer consumers better value for selling on shelves at retail.

31. This is especially true for retail sales of semi-disposable items like products for children.

32. Walgreens conducts prudent business practices.

33.   Walgreens' sales of Atico's products have been more successful than its attempts to sell defendants' products.

34.   Walgreens attributes this success to at least the better consumer value associated with Atico's products that look different from defendants' products.

35.   That is, Walgreens made a successful, prudent business decision by buying products from Atico.

36.   Atico's competing products also look different from defendants' competing products.

37.   Other competing products, like Munchkin, Babies R' Us, Gerber, Playtex and Avent, look different from defendants' asserted trade dress even if they may have certain similar functional features.

38.   On information and belief, defendants mark their asserted products in the New York suit with U.S. or foreign patent numbers.

39.   On July 18, 2006, defendants sent a letter to Walgreens alleging that their asserted products are covered by one or more U.S. or foreign patents.  Ex. A at Ex. F (July 18, 2006 letter).

40.   Defendants have not filed a patent lawsuit against Atico or Walgreens.

41.   In the July 18, 2006 letter, defendants expressly accused Walgreens of carrying "cheap copies" of defendants' products.

42.   Walgreens does not sell cheap copies.

43.   Since at least as early 2004, defendants have engaged in a campaign of sending letters to business entities in the sippy cup market or submarkets threatening suit for violation of alleged patents and other intellectual property rights.

44.  On May 4, 2004 defendants sent such a letter to Regent Babies Products Corp.

45.  On May 5, 2004 defendants sent such a letter to Royal King Infants Products Co. Ltd.

46.  On October 11, 2007 defendants sent such a letter to The Walt Disney Company.

47.  On November 2, 2007 defendants sent such a letter to Fisher-Price, Inc.

48.  On November 8, 2007 defendants sent such a letter to Dollar King Corp.

49.  On information and belief, defendants know that when they sent their July 18, 2006 letter that they had no legitimate basis to assert patent infringement or other claims.

50.  Defendants' letter campaign described here is part of an improper attempt to use inapplicable and nonexistent intellectual property rights in an attempt to monopolize the relevant sippy cup market or relevant submarkets for sippy cups.

51.  Defendants sued Walgreens in the New York suit because they were unhappy with Walgreens' and Atico's successful and proper competition.

52.  Defendants sued Walgreens in the New York suit because they are unable to compete with Atico's products that have superior quality and better consumer value.

53.  Defendants did not assert patent rights in the New York suit.

54.  Defendants did not assert any registered trademark in the New York suit against Atico.

55.  On information and belief, defendants do not sell any of the same products that Atico sells.

56.  In the New York suit, defendants claim defendant Walgreens sells a "cheap knockoff" of defendants' products acquired from a company in Thailand.  Ex. A at ¶ 22.

57.  Walgreens does not sell cheap knockoffs.

58.    Rather, Atico's products are superior in quality and a better value than defendants' asserted products.

59.    On information and belief, defendants knew that Atico supplied Walgreens with the products accused in the New York suit.

60.    In the New York suit, defendants claim their products and designs are entitled to unregistered trade dress protection, that their trade dress has acquired secondary meaning, that Atico' products are confusing consumers as to their source, that defendants' trade dress is being diluted and tarnished, that Atico is willfully infringing the improperly asserted and nonexistent trade dress, and that Atico's customers have engaged in Federal unfair competition and violated state laws regarding unfair competition.  Ex. A at ¶¶ 17-18, 62-66, 75-94.

61.    On information and belief, defendants have no Federally-registered trade dress. See <www.uspto.gov> (visited March 10, 2009).

62.    The alleged trade dress asserted in the New York suit is unregistered.

63.    Defendants' alleged trade dress has not acquired secondary meaning.

64.    Defendants cite no evidence in their Complaint in the New York suit that their unregistered trade dress has acquired secondary meaning.

65.    Other market participants besides Walgreens and Atico have sold competing products so similar to defendants' that the average consumer would not know the source of any particular product that competes with defendants' products.

66.    In the New York suit, defendants do not plead their products are non-functional. See generally Ex. A.

67. Supreme Court precedent, and the Congress, require a plaintiff claiming trade dress infringement to demonstrate the alleged trade dress is non-functional. *See, e.g.*, *Traffix Devices, Inc. v. Marketing Displays, Inc.* 532 U.S. 23, 28-29 (2001); 15 U.S.C. §§ 1125(a)(3) and (c)(4).

68. In the New York suit, Defendants pled allegations describing their products with functional language. See, *e.g.*, Ex. A at ¶¶ 31, 40, 45, 50, 54.

69. On information and belief, defendants have marked their asserted products in the New York suit with U.S. or foreign patent numbers.

70. On information and belief, defendants know their alleged trade dress to be functional.

71. Each Exhibit attached to Ex. A has functional components.

72. Defendants do not have protectable trade dress in their products or designs.

73. Defendants intentionally filed a Complaint in New York improperly asserting that their products or designs are protected trade dress.

74. On information and belief, defendants filed the New York suit intending that it would damage the business relationship between Walgreens and Atico.

75. On information and belief, the New York suit is baseless.

76. Atico's products supplied to Walgreens that are accused in the New York suit do not and cannot infringe any alleged trade dress asserted in the New York suit.

77. Atico is offering and has sold or is selling to Walgreens product designs shown in DE 1 at Exs. A & B.

78. The products identified in paragraph 77 do not and cannot infringe any alleged trade dress asserted by defendants.

79.    Atico is under direct threat of suit. Absent a declaration of nonexistence, invalidity, unenforceability, non-infringement, no confusion, no dilution, no tarnishment, and no Federal unfair competition, Atico will continue to be damaged.

80.    Damage to Atico will continue to accrue unless or until defendants' improper conduct is enjoined.

## COUNT I – (Original Count I) DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF ACCUSED PRODUCTS

81.    Atico incorporates paragraphs 1-42 and 52-80.

82.    An actual and justiciable case and controversy exists between Atico and defendants as to whether Atico's products infringe defendants alleged but unregistered trade dress asserted in defendants' products.  See Ex. A at ¶¶ 34-48, 82-88 & Ex. A at Exs. B & C.

83.    Declaratory judgment should be granted that Atico's products identified in this Count do not infringe any of defendants' alleged but unregistered trade dress.

## COUNT II – DECLARATORY JUDGMENT OF NO TRADE DRESS

84.    Atico incorporates paragraphs 1-42 and 52-80.

85.    Atico has been and continues to be injured and damaged at least by defendants' claiming that Walgreens infringed and infringes nonexistent trade dress asserted by defendants in the New York suit or related to Ex. B to the original Complaint, DE 1.

86.    An actual and justiciable case and controversy exists between Atico and defendants as to whether Atico's products infringe defendants asserted but unregistered trade dress.  See Ex. A at ¶¶ 34-48, 82-88 & Ex. A at Exs. B & C.

87.    Declaratory judgment that no trade dress exists in or on the products that can be asserted against those products at issue in this Amended Complaint.

## COUNT III – DECLARATORY JUDGMENT OF NO SECONDARY MEANING

88.  Atico incorporates paragraphs 1-42, 52-80 and 85-87.

89.  An actual and justiciable case and controversy exists between Atico and defendants as to whether defendants' alleged but unregistered trade dress has acquired secondary meaning.

90.  Declaratory judgment that the alleged but unregistered trade dress of paragraph 89 has not acquired secondary meaning is appropriate.

## COUNT IV – DECLARATORY JUDGMENT OF FUNCTIONALITY

91.  Atico incorporates paragraphs 1-42, 52-80 and 85-87.

92.  An actual and justiciable case and controversy exists between Atico and defendants as to whether defendants' asserted but unregistered trade dress is functional.

93.  An actual and justiciable case and controversy exists between Atico and defendants as to whether defendants' asserted but unregistered trade dress is not "not functional" under applicable trade dress law.

94.  Declaratory judgment is appropriated that the alleged but unregistered trade dress is functional.

95.  Declaratory judgment is appropriate that the alleged but unregistered trade dress is not "not functional" under applicable trade dress law.

## COUNT V – DECLARATORY JUDGMENT OF NO DILUTION

96.  Atico incorporates paragraphs 1-42, 52-80 and 85-87.

97.  In the New York suit, defendants state a cause of action that alleged but unregistered trade dress at issue in that case has been diluted by Atico's products at issue here.

98.  An actual and justiciable case and controversy exists between Atico and defendants as to whether Atico's products dilute defendants' asserted but unregistered trade dress.

99.   Declaratory judgment that no dilution results from Atico's supply of paragraph 99 products to Walgreens or Walgreens' sales of same is appropriate.

## COUNT VI – DECLARATORY JUDGMENT OF NO FEDERAL UNFAIR COMPETITION

100.   Atico incorporates paragraphs 1-42, 52-80 and 85-87.

101.   In the New York suit, defendants state a cause of action that alleged but unregistered trade dress at issue in that case renders Walgreens liable for Federal unfair competition under Section 43(a) of the Lanham Act.

102.   An actual and justiciable case and controversy exists between Atico and defendants as to whether Atico's products dilute defendants' asserted but unregistered trade dress.

103.   Declaratory judgment that no dilution results from Atico's supply of paragraph 103 products to Walgreens or Walgreens' sales of same is appropriate.

## COUNT VII – (Original Count II) TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

104.   Atico incorporate paragraphs 1-80.

105.   Atico and Walgreens have an existing business relationship.

106.   On information and belief, defendants know of the relationship between Atico and Walgreens.

107.   Defendants have intentionally and unjustifiably interfered with the business and economic relationships between Atico and Walgreens.

108.   Atico has suffered damages as a result of defendants' intentional interference with the relationships between Atico and Walgreens.

109.   Defendants' conduct constitutes intentional interference with business relationships. *See Gossard v. Adia Servs.,* 723 So. 2d 182, 185 (Fla. 1998).

11

110. Damage to Atico will continue to accrue unless or until defendants' improper conduct is enjoined.

### COUNT VIII– (Original Count III) FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. §§501.201 TO 501.213)

111. Atico incorporate paragraphs 1-80.

112. Defendants' actions constitutes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Florida Statute §501.204.

113. Defendants knew or should have known that their actions were unlawful and would damage Walgreens.

114. Atico has been damaged directly and proximately by defendants' unlawful actions.

115. Atico is entitled to recover actual damages, plus reasonable attorneys' fees and costs for defendants' violation of the Florida Deceptive and Unfair Trade Practices Act.

116. Damage to Atico will continue to accrue unless or until defendants' improper conduct is enjoined.

### JURY DEMAND

117. ATICO requests trial by a jury for all issues so triable.

### PRAYER FOR RELIEF

Atico request the Court enter one or more orders:

A.   Under 15 U.S.C. §1116, enjoining defendants, their agents and employees, and all persons acting in concert with them, from attempting to preclude Atico from importing, making, distributing, using, selling, offering to sell, or marketing of any of the alleged infringing products identified in this Amended Complaint through litigation or other means;

12

B.   Awarding Atico its costs of suit, including reasonable attorneys' fees, under the Lanham Act and all other applicable laws;

C.   Awarding Atico damages for defendants' deceptive and unfair trade practice, including all costs and fees to Atico associated with defending against asserted but unregistered trade dress;

D.   Awarding Atico damages for defendants' tortious interference with Atico' business relationship, including all costs and fees to Atico associated with defending against defendants' allegations;

E.   Awarding Atico prejudgment interest;

F.   Awarding Atico postjudgment interest;

G.   Requiring defendants to give any applicable postjudgment equitable accounting for the period of damages established at trial;

H.   Declaring defendants' officers vicariously liable for defendants' improper conduct alleged in this Complaint;

I.   Granting such other relief consistent with the requests made in this Complaint; and

J.   Granting such further relief as this Court deems appropriate.

Dated:  May 4, 2009                    Respectfully Submitted,


                                       s/ Jeffrey H. Kamenetsky
                                       Jeffrey H. Kamenetsky, Esq.
                                       jkamenetsky@cwiplaw.com
                                       Florida Bar No. 044179
                                       Alan M. Weisberg, Esq.
                                       Florida Bar Number 479,349
                                       CHRISTOPHER & WEISBERG, P.A.
                                       200 East Las Olas Boulevard, Suite 2040
                                       Fort Lauderdale, Florida 33301
                                       (954) 828-1488 (Telephone)
                                       (954) 828-9122 (Facsimile)

                                       *Attorneys for Atico International USA, Inc.*

154244