UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-60397-CIV-COHN/SELTZER

**ATICO INTERNATIONAL USA, INC.,**
a Delaware corporation,

   **Plaintiff,**

vs.

**LUV N' CARE, LTD.,** a Louisiana corporation,
and **ADMAR INTERNATIONAL, INC.,** a
Delaware corporation,

   **Defendants.**

_____/

### DEFENDANTS' MOTION TO DISMISS COUNTS VII AND VIII OF PLAINTIFF'S AMENDED COMPLAINT

   Defendants, Luv n' care, Ltd. ("Luv n' care") and Admar International, Inc. ("Admar"), (collectively, the "Defendants"), by and through their undersigned counsel, hereby move for dismissal, with prejudice, of Counts VII and VIII of Plaintiff's Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6), and in support thereof, respectfully state as follows:

### I. INTRODUCTION

   Counts VII and VIII of the Amended Complaint [D.E. #31] filed by Atico International USA, Inc. (hereinafter, "Atico") fail to state a claim against Defendants upon which relief can be granted because: (1) Defendants are immune from liability for any harm associated with their filing of the New York suit and any conduct related thereto pursuant to the doctrine of litigation immunity; (2) Plaintiff has not alleged any fact showing that Defendant caused any actual, actionable damages, or that Plaintiff has even suffered cognizable damage; (3) Plaintiff has made only conclusory, speculative allegations and has not alleged, and cannot allege, any objective fact making it plausible that it could meet the remaining essential elements of its claims; and (4) the documents attached to Plaintiff's Amended Complaint undermine Plaintiff's claims by showing that Defendants did not know about Atico, or its business relationships with anyone, when

they filed the New York suit. Under such circumstances, Atico's claim for tortious interference with a business relationship and its claim under Florida's Deceptive and Unfair Trade Practices Act should be dismissed with prejudice.

## II.    BACKGROUND RELEVANT TO DISMISSAL

### A. Plaintiff's Complaint—Counts VII and VIII.

Plaintiff's Amended Complaint alleges eight (8) causes of action against the Defendants. In sum, the first six counts are claims for declaratory judgment that Atico has not infringed, diluted and/or tarnished Defendants' trade dress and for declaratory judgment that it has not unfairly competed with Defendants. Am. Compl., Counts I thru VI, at ¶¶81-103. Defendants have addressed Plaintiff's declaratory judgment claims in their Answer and Affirmative Defenses filed concurrently herewith.

At issue in this motion, are Plaintiff's Counts VII and VIII (which were counts II and III in the original complaint). Plaintiff's Count VII is a claim for tortious interference with a business relationship. Am. Compl., Count VII, at ¶¶104-110. On the other hand, Plaintiff's Count VIII is a claim under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.213, (hereinafter "FDUTPA"). Am. Compl., Count VIII, at ¶¶111-116.

To support Counts VII and VIII, Plaintiff, in conclusory fashion and *on mere information and belief*, alleges that Defendants "know" and at some unspecified time "knew" that Atico supplied Walgreens with the products accused in the New York suit.[1] Am. Compl., at ¶¶59, 106. However, Plaintiff failed to allege any fact upon which such belief is based, or when Defendants allegedly acquired such information. Similarly, Plaintiff set forth its mere speculative belief that the Defendants "filed the New York suit intending that it would damage the business relationship between Walgreens and Atico."[2]

---

[1]  The action being referred to as the "New York suit" is case no. 08-civ-4457, styled *Luv N' Care, Ltd. and Admar Int'l, Inc. v. Walgreen Co. and Kmart Corp*. *See* Am. Compl., Exhibit A.

[2]  Due to its reliance on the New York suit throughout its Amended Complaint, the Plaintiff attached a copy of the prior New York suit to the Complaint as Exhibit "A."

Am. Compl., at ¶74.  However, again, Plaintiff failed to provide any factual support for that belief.

Other than its unsupported, subjective beliefs of knowledge and intent relating to Defendants' filing of the New York suit, Plaintiff's only other alleged grounds for its claim that Defendants tortiously interfered with its business relationship with Walgreen and violated FDUTPA are: one letter written, on July 18, 2006, by Luv n' care's attorney to Walgreen;[3] two letters that Luv n' care sent to third-parties in May 2004; and three letters that Luv n' care sent to third parties between October and November of 2007.  *See* Am. Compl., at ¶¶39-50, Ex. A at p. 39.  Plaintiff describes such letters as "threatening suit for violation of alleged patents and other intellectual property rights."  Am. Compl., at ¶43.  However, the letters speak for themselves and make no reference to Atico, and Plaintiff alleged no nexus between those letters and any alleged injury.  Moreover, Plaintiff failed to allege any fact that would provide a plausible reason to believe that Defendants had any knowledge of a relationship, if any, between Atico and the recipients of those letters.

Additionally, despite its reliance on the 2004 and 2007 letters to various third parties, Plaintiff also failed to allege even a single fact describing or showing: (i) that the Plaintiff has or had any contractual or business relationship with the third parties to whom the 2004 and 2007 were addressed; (ii) whether those letters caused damage to Plaintiff; (iii) how those letters to third parties caused damage to Plaintiff; and (iv) what type of damage they caused.[4]  Plaintiff even failed to allege that Plaintiff itself had knowledge of those letters prior to commencing *this* action.[5]  Furthermore, Plaintiff failed

---

[3]  Plaintiff attached this letter to its Amended Complaint, D.E.# 31 at page 39 of 43.
[4]  Plaintiff failed to attach any of Luv n' care's 2004 and 2007 letters to third parties to the Amended Complaint.
[5]  Plaintiff failed to make any mention of the 2004 and 2007 letters in its original complaint; thus, it seems that Plaintiff had no knowledge of them when it commenced this action on March 13,2009.  Even if Plaintiff did know of the letters prior to commencing this action, its failure to allege their existence in the original complaint indicates that Plaintiff views them as inconsequential (*i.e.*, non-damaging).

to allege that it had or has any relationship with the third parties to whom the 2004 and 2007 letters were addressed.

On the other hand, Plaintiff does admit that it has an existing business relationship with Walgreen under which it successfully sells the products at issue to Walgreen. Am. Compl., at ¶¶77, 105; *see* ¶¶ 21, 23, 33, 51 and 59. Accordingly, it appears that Luv n' care's July 18, 2006 letter to Walgreen did not cause any damage.

Nor is there any basis to properly infer any damage. As readily apparent at page 39 of the Am. Compl. (D.E.#31), in its letter to Walgreen, Luv n' care never mentioned Atico and never made an accusation of infringement. Am. Compl., at p. 39. Instead, Luv n' care merely notified Walgreen of its intellectual property rights and addressed its concern over news it had received that Walgreen intended to stop selling Defendants' products and that Walgreen had expressed a willingness to disregard Luv n' care's rights. Am. Compl., at p. 39. Thus, it is clear as a matter of law that Luv n' care's letter was merely intended to protect Luv n' care's rights and interests and was not aimed at harming anyone.

### III.   LEGAL STANDARD FOR DISMISSAL

Dismissal is appropriate under Fed.R.Civ.P. 12(b)(6) where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action. *Nietzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827 (1989); *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006); *Marshall Cty Bd. of Educ. v. Marshall Cty Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). Conclusory allegations or legal conclusions masquerading as factual allegations cannot prevent a motion to dismiss. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2nd Cir. 2002); *ECash Technologies, Inc. v. Guagliardo*, 210 F.Supp.2d 1138, 1143 (C.D.Cal. 2001); *Bell v. Harley-Davidson Motor Co.*, 2007 WL 935588 (S.D.Cal. March, 6, 2007) (slip copy). Plaintiff's complaint must set forth a prima facie case "and enough data must be pleaded so that each element of the alleged claim can be properly identified." *Quality Foods*, 711 F.2d at 995.

"Factual allegations must be enough to raise a right to relief above the speculative level. . ." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Plaintiff must state a claim that is plausible not merely possible. *Bell Atlantic*, 127 S.Ct. at 1965-66. Naked assertions merely get the complaint close to stating a claim, "but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Bell Atlantic*, 127 S.Ct. at 1966.

Additionally, a court should not ignore facts plaintiff alleged that undermine the cause of action. *Goerlich v. Davis*, 1991 WL 195772, *1 (N.D.Ill.). A claim need not be obviously unsupportable or based on an outlandish legal theory in order to be dismissed. *Nietzke v. Williams*, 490 U.S. 319, 328, 109 S.Ct. 1827 (1989) ("Nothing in Rule 12(b)(6) confines its sweeps to claims of law that are obviously insupportable."). A court may dismiss a claim even where it presents "a close but ultimately unavailing" legal theory. *Id*.

In determining whether to dismiss an action, a court may consider "facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice." *Bell*, 2007 WL 935588, *1; *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2nd Cir. 1991); *ECash Technologies*, 210 F.Supp.2d at 1144; *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2nd Cir. 1991).

Here, the facts alleged in Atico's Amended Complaint and the documents referenced and relied on by Atico therein, including the New York suit, which it attached as Exhibit A, present clear, dispositive issues of law upon which this Court may dismiss Atico's Count VII and Count VIII pursuant to Fed.R.Civ.P. 12(b)(6).

IV.  ARGUMENT

A.  The Doctrine of Litigation Immunity Bars Plaintiff's Claim for Tortious Interference with a Business Relationship and its Claim for Violation of FDUTPA

In Counts VII and VIII of the Amended Complaint, Plaintiff alleges that the Defendants have tortiously interfered with its business relationship with Walgreen and have violated FDUTPA, Fla. Stat. §§ 501.201-501.213.  Am. Compl., at ¶¶104-110 and ¶¶111-116.  These Counts are barred in their entirety by litigation immunity.

The doctrine of litigation immunity is well-established in Florida and provides that absolute immunity must be afforded to acts occurring during or emanating from litigation, regardless of whether the act involves a defamatory statement or other tortious behavior, such as tortious interference with a business relationship.  *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So.2d 606, 608 (Fla. 1994); *Green Leaf Nursery v. E.I. DuPont de Nemours & Co.,* 341 F.3d 1292, 1302-1303 (11th Cir. 2003) (emphasis added).[6]  Moreover, litigation immunity applies to both statutory and common-law causes of action.  *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole,* 950 So. 2d 380, 384 (Fla. 2007) ("The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin."); *Gaisser v. Portfolio Recovery Associates, LLC*, 571 F. Supp.2d 1273, 1279 (S.D. Fla. 2008).[7]

While it is self-evident that the filing of a lawsuit is an act occurring during the course of a judicial proceeding, the Florida Supreme Court has explained that absolute

---

[6]  Florida's litigation privilege applies to state-law claims adjudicated in federal court. *Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1275 (11th Cir. 2004).

[7]  Although litigation immunity is an affirmative defense, it can be considered on a motion to dismiss when, as in the instant case, it is apparent from the face of the complaint.  *Atlas v. Stolberg,* 694 So. 2d 772, 772 (Fla. 4th DCA 1997) ("We affirm as to all issues. Appellees are immune under the principles of *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Insurance Co.,* 639 So. 2d 606 (Fla. 1994). Appellees may raise this affirmative defense in a motion to dismiss as it appears on the face of the complaint."); *Doe v. America Online, Inc.,* 718 So. 2d 385, 388 (Fla. 4th DCA 1998).

immunity applies so long as the act bears some relation to the proceeding. *Echevarria,* 950 So. 2d at 383 ("Absolute immunity must be afforded to *any act* occurring during the course of a judicial proceeding. . .so long as the act has *some relation* to the proceeding."); *see also Boca Investors Group v. Potash,* 835 So. 2d 273, 274-275 (Fla. 3d DCA 2002) ("all of the acts alleged in support of the tortious interference claim bear a relationship to the proceedings instituted by defendants. The privilege arises upon the doing of any act necessarily preliminary to judicial proceedings. Accordingly, those acts must be afforded absolute immunity.").

This Court recently applied the litigation privilege to bar a tortious interference claim against Microsoft Corp. that was based on its filing of two lawsuits, one against the distributor and the other against the distributor's customer. *Microsoft Corp. v. Big Boy Distribution LLC*, 589 F. Supp.2d 1308, 1322 (S.D. Fla. 2008) ("Big Boys' tortious interference claim is barred by Florida's litigation privilege to the extent this claim is predicated on Microsoft's conduct in pursuing its legal remedies through this lawsuit and another lawsuit filed against eDirect, one of Big Boys' customers/ suppliers, for related activities."). Moreover, the Eleventh Circuit, has applied litigation immunity to repeated threats of litigation, regardless of whether the threats were made with an anti-competitive intent. *McGuire Oil Co. v. Mapco, Inc*., 958 F.2d 1552, 1559-60 (11th Cir. 1992) (applying the federal litigation immunity privilege under the *Noerr-Pennington* doctrine); *see also Marco Island Cable, Inc. v. Comcast Cablevision of the South, Inc*., 2006 WL 1814333, *8, 10 (M.D.Fla.) ("Repeated threats of litigation as a method of creating or maintaining anti-competitive conduct is within the scope of the immunity, and does not fall within the sham exception.").

Here, Plaintiff bases both its tortious interference and FDUTPA claims upon the mere fact that the Defendants filed the New York suit against Walgreen and sent six letters purportedly threatening suit—one letter each to six different third parties—over a span of four years; only one of which went to Walgreens. Am. Compl., at ¶¶39-51 and 74. However, the Plaintiff has not and cannot allege that these activities were anything but actions taken in the course of, or bearing a relation to, a judicial proceeding. To the

contrary Plaintiff itself describes Defendants' conduct as the filing of suit and the threatening of suit. *See e.g.*, Am. Compl., at ¶¶5, 43, 73.

Plaintiff may subjectively view Defendants' conduct as "baseless," Am. Compl., at ¶75; however, that conclusory, subjective statement of opinion alone cannot destroy the privilege.[8] *See Quality Foods*, 711 F.2d at 995 (conclusory allegations cannot prevent a motion to dismiss). Plaintiff may also view Defendants' conduct as anti-competitive, Am. Compl., at ¶50; however, even if it were (which it was not) such a characterization cannot destroy the privilege. *See McGuire Oil*, 958 F.2d at 1559-60; *Marco Island Cable*, 2006 WL 1814333, at *8, 10.

Therefore, the New York suit and the notice letters leading up to the filing of the New York suit are subject to absolute immunity. *See Levin,* 639 So.2d at 608; *Echevarria,* 950 So. 2d at 383; *Microsoft Corp*, 589 F. Supp.2d at 1322; *McGuire Oil*, 958 F.2d at 1559-60. Plaintiff has not asserted and cannot assert any objective fact capable of dissolving such absolute immunity. Accordingly, Plaintiff cannot maintain its claim for tortious interference with a business relationship or its FDUTPA claim and this Court should, as a matter of law, dismiss Counts VII and VIII with prejudice.

### B.  Plaintiff Has Not and Cannot State a Claim for Tortious Interference with a Business Relationship.

To maintain a claim for tortious interference with a business relationship, a plaintiff must prove: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant;[9] and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc*., 647 So.2d 812, 814 (Fla. 1994); *Babbit Electronics, Inc. v. Dynascan Corp*., 38 F.3d 1161, 1177 (11th Cir 1994). Plaintiff has not and cannot set forth facts to establish each of these essential

---

[8]  Defendants' New York suit against Walgreen is still ongoing and has neither been dismissed nor found baseless.

[9]  Application of the litigation immunity doctrine prevents Atico from establishing the third element because any interference is deemed privileged—or justified, rather than unjustified. *See Levin, Middlebrooks*, 639 So.2d at 608.

elements.

First, a mere offer by Atico to supply Walgreen with the products at issue "does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship." *Ethan Allen*, 647 So.2d at 814. Moreover, "no cause of action exists for tortious interference with a business relationship to the community at large." *Id*. at 815. Similarly, the mere hope that past customers will buy again cannot support a tortious interference claim. *Id*. Instead, as a general rule, the plaintiff must show a business relationship evidenced by an actual and identifiable understanding or agreement, which in all probability would have been completed if the defendant had not interfered. *Id*.

Here, although Plaintiff alleges that it currently supplies Walgreen with the products at issue, Am. Compl. ¶¶21, 23, the Plaintiff has failed to allege that it and Walgreen had any actual, identifiable understanding or agreement at the time that Luv n' care sent the letter to Walgreen (July 18, 2006) or to the other third parties (May 2004 and Nov. 2007). Likewise, Plaintiff has failed to allege that it and Walgreen had any actual and identifiable understanding or agreement, at the time that Defendants filed the New York suit that Walgreen would continue to buy the products at issue from Plaintiff.

Second, although Plaintiff alleged in conclusory fashion, and on mere *information and belief*, that the Defendants "know", and at some unspecified time "knew," of the relationship between Walgreen and Plaintiff, Am. Compl., ¶106, this unsupported and conclusory allegation does not rise above the speculative level and prevents plaintiff from stating a claim that is plausible rather than merely possible. *See Twombly*, 127 S.Ct. at 1964-65; *Quality Foods*, 711 F.2d at 995 (conclusory allegations cannot prevent a motion to dismiss). Moreover, facts alleged in the amended Complaint contradict Plaintiff's mere belief of knowledge of the relationship. Indeed, in Luv n' care's July 18, 2006 letter to Walgreen, it expressly states that: "you have refused to provide Luv n' care with the identity of your intended supplier." Am. Compl., at p. 39. This Court should not ignore such undermining and contradictory facts. *Goerlich*, 1991 WL 195772, *1.

Third, Plaintiff made the naked, unsupported allegation, *on information and*

*belief*, that Defendants filed the New York suit "intending that it would damage the business relationship between Walgreens and Atico," Am. Compl., ¶74. However, in the absence of factual support, such speculation does not meet the plausibility requirement of *Twombly*. *See Twombly*, 127 S.Ct. at 1964-66 (factual allegations must be enough to raise the right to relief above the speculative level; Plaintiff must state a claim that is plausible); *Quality Foods*, 711 F.2d at 995 (conclusory allegations cannot prevent a motion to dismiss). Moreover, it is readily apparent that Defendants could not have intended to harm Atico because it did not even know who Walgreen was purportedly doing business with because Walgreen refused to give Luv n' care any information in that regard. *See* Am. Compl., at p. 39 ("you have refused to provide Luv n' care with the identity of your intended supplier."). This Court should not ignore such facts that undermine the essential element of intent. *Goerlich*, 1991 WL 195772, *1.

Additionally, Plaintiffs reliance on Luv n' care's July 18, 2006 letter contradicts its conclusory allegation that Defendants unjustifiably interfered. Am. Compl., ¶107. The letter shows on its face that Luv n' care merely notified Walgreen of its intellectual property rights and addressed its concern over news it had received that Walgreen intended to stop selling Defendants' products and that Walgreen had expressed a willingness to disregard Luv n' care's rights. Am. Compl., at p. 39. Accordingly, it is readily apparent that Luv n' care's letter was merely intended to protect Luv n' care's rights and interests, and not aimed at harming anyone. Therefore, because "a company's actions are justified when undertaken to protect its own business interests," *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F.Supp.2d 1334, 1339 (S.D.Fla. 2007), the July 18, 2006 cannot support Plaintiff's tortious interference claim.

Fourth, and finally, an integral element of a tortious interference claim is proof of damage to the plaintiff as a result of the breach of the relationship. *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994) (remanding for imposition of Rule 11 sanctions). Nominal damages are not sufficient; instead, the plaintiff must show actual damages. *Id*. at 1092. In other words, the interference must be successful because "[u]nsuccessful interference is simply not the kind of interference upon which a tort may

be founded." *Id*. ("Delta continued to do business with Worldwide even after it received the letters"); *American Medical Intern., Inc. v. Scheller*, 462 So.2d 1, 9 (Fla. 4th DCA 1984).

Here, Plaintiff makes only naked, conclusory allegations that it has been and will continue to be damaged by Defendants' purported interference, Am. Compl., at Count VII ¶¶104, 108. However, Plaintiff failed to allege a single fact describing or showing any damage. *See Eclipse Medical, Inc. v. Amer. Hydro-Surgical Instruments, Inc*., 262 F.Supp.2d 1334, 1355-56 (S.D.Fla. 1999) ("Distributors have made no effort to demonstrate that any of the specifically identified acts of interference resulted in any particular damages"); *Kisling v. Wooldridge*, 397 So.2d 747, 748 (Fla. 5th DCA 1981) ("Appellant may have been offended by the letter, but there is no evidence that anything adverse resulted from it….The trial court was justified in finding the action frivolous and awarding the fees."). Moreover, Plaintiff cannot, as a matter of law, show any cognizable damage in light of the fact that it admits that it has an existing business relationship with Walgreen under which it is successfully offering products to Walgreen. Am. Compl., at ¶¶77, 105; *see also* ¶¶ 21, 23, 33, 51 and 59; s*ee Eclipse Medical, Inc.*, 262 F.Supp.2d at 1355-56 ("they have offered no evidence to provide that such an effort was successful, i.e., that any business was lost by the Distributors as a result of such an attempt"); *Amer.Medical Intern.*, 462 So.2d 1, 9 ("the fact that no doctor abandoned or breached the existing relationship with Dr. Schiller was of crucial significance.").

In light of the above, and as a matter of law, Plaintiff cannot maintain a claim for tortious interference with its business relationship with Walgreen. Accordingly, this Court should dismiss Count VII of the Amended Complaint with prejudice.

### C.     Plaintiff Has Not and Cannot State a Claim for Violation of FDUTPA

As mentioned above, Atico alleges, in Count VIII of its Amended Complaint, that Defendants have violated FDUTPA, Fla. Stat. §§ 501.201-501.213. Am. Compl. ¶¶111-116. To maintain a claim under FDUTPA, a plaintiff must prove: (1) a deceptive or unfair practice committed by the defendant; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2nd DCA 2006).

A 'deceptive' practice under FDUTPA "is one that is likely to mislead consumers." *Rollins*, 951 So.2d at 869. On the other hand, an 'unfair' practice "is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id*. (internal quotations and citations omitted); *Hanson Hams, Inc. v. HBH Franchise Co*., 2004 WL 5470401, *6 (S.D.Fla.). Moreover, an action under FDUTPA exists only where the defendant undertakes it "in the conduct of any trade or commerce." Fla.Stat. § 501.204; *see* Fla. Stat. § 501.203(8).

First, Plaintiff bases its FDUTPA claims upon the mere fact that the Defendants filed the New York suit against Walgreen and sent six letters—one letter each to six different third parties—over a span of four years. Am. Compl., at ¶¶39-51 and 74. However, even if such conduct were not protected by the litigation privilege, under no conception of commerce could the filing of a lawsuit and the sending of pre-suit letters be deemed "the conduct of any trade or commerce." *See* Fla. Stat. §501.204(1).

The reach of FDUTPA is not limitless. *Hanson Hams*, 2004 WL 5470401, *6. "Indeed, Florida courts have repeatedly dismissed claims under FDUTPA involving activities that may well be construed as 'unfair' on some level." *Id.* (citing, for example, *Rosa v. Amoco Oil Co.,* 262 F.Supp.2d 1364, 1368-69 (S.D.Fla.2003), which dismissed a FDUTPA claim based on oral misrepresentations to plaintiff made prior to entering into written agreement conflicting with those misrepresentations; *Yachting Promotions, Inc. v. Broward Yachts, Inc.,* 792 So.2d 660, 664 (Fla. 4th DCA 2001); *In re Crown Auto Dealerships, Inc.,* 187 B.R. 1009, 1018 (Bankr.M.D.Fla.1995), which dismissed a FDUTPA claim against car dealership fraudulently selling previously stolen cars as new; and *Chicken Unlimited, Inc. v. Bockover,* 374 So.2d 96, 97 (Fla. 2d DCA 1979), which found that "indisputably misleading, if not false" statements made by franchisor to prospective franchisee was insufficient to support FDUTPA claim).

Furthermore, Plaintiff claims that Defendants' actions are either "unfair or deceptive." Am. Compl., at ¶112. However, Plaintiff fails to allege that Defendants' acts

are likely to mislead consumers.  Therefore, Plaintiff has not met the standard for claiming Defendants' acts are 'deceptive.'  *See Rollins*, 951 So.2d at 869.

Likewise, Plaintiff has not and cannot allege any fact showing that Defendants' filing of a lawsuit and sending of notice letters to third parties offends any established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  *See id*.  Accordingly, Plaintiff has also failed to meet the standard for claiming Defendants' acts are 'unfair.'  *See id*.

As to the second required element, Plaintiff never alleges any fact to show causation.  Indeed, Plaintiff did not make a single non-conclusory, factual allegation showing when and how the Defendants' filing of the New York suit and Defendants' sending of letters caused Plaintiff the undefined damages it alleges to have suffered.  Thus, in the absence of factual support, Plaintiff's inherent speculation as to causation does not meet the plausibility requirement of *Twombly*.  *See Twombly*, 127 S.Ct. at 1964-66 (factual allegations must be enough to raise the right to relief above the speculative level; Plaintiff must state a claim that is plausible); *Quality Foods*, 711 F.2d at 995 (conclusory allegations cannot prevent a motion to dismiss).

Third, and finally, Plaintiff has not alleged and cannot show any cognizable damage under FDUTPA.  FDUTPA expressly excludes claims "for damage to property other than the property that is the subject of the consumer transaction."  Fla. Stat. § 501.212(3).  Under FDUTPA, the plaintiff may recover only "actual damages" (*i.e.,* damages attributable to the diminished value of the goods or services received).  *Eclipse Medical*, 262 F.Supp.2d at 1357 ("'actual damages' under FDUTPA is a term of art, defined by Florida courts as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered.").

FDUTPA does not authorize recovery of consequential damages.  *Schauer v. Morse Operations, Inc*., 2009 WL 18674, *4 (Fla. 4th DCA, Jan. 5, 2009); *Rollins*, 951 So.2d at 869 (recovery afforded under FDUTPA does not include "stigma" damages); *Eclipse Medical*, 262 F.Supp.2d at 1357 ("Florida courts specifically reject the recovery

of consequential damages under FDUTPA."); *see* Fla.Stat. §501.211(2) (allowing recovery of only *actual* damages). Notably, lost profits are the quintessential example of consequential damages. *Nyquist v. Randall*, 819 F.2d 1014, 1018 (11th Cir. 1987); *Eclipse Medical*, 262 F.Supp.2d at 1357.

Here, Plaintiff never describes the purported actual damage it alleges to have suffered.[10] *See Twombly*, 127 S.Ct. at 1966 (naked assertions merely get the complaint close to stating a claim but, without further factual enhancement, it stops short of the line of plausibility for entitlement to relief.); *Quality Foods*, 711 F.2d at 995 (conclusory allegations masquerading as facts cannot prevent a motion to dismiss). Indeed, Plaintiff makes only naked, conclusory allegations that it has been and will continue to be damaged by Defendants' purported interference, Am. Compl., at Count VII ¶¶114, 116. Plaintiff's failure to allege a single fact describing or showing any damage is a "compelling reason" to dismiss its FDUTPA claim. *Hanson Hams*, 2004 WL 5470401, at *8; *see Twombly*, 127 S.Ct. at 1966.

Therefore, because Plaintiff has not alleged and cannot allege any cognizable damage to property resulting from any acts conducted by Defendants in the course of trade or commerce, this Court should dismiss with prejudice Plaintiff's Count VIII claim under FDUTPA and award Defendants their attorneys fees and costs in having to defend against this claim.

## V.  CONCLUSION

Based upon the foregoing, this Court should dismiss Counts VII and VIII of Atico's Amended Complaint with prejudice based on the litigation immunity doctrine and the contours of FDUTPA and tortious interference law, and award Defendants their attorneys fees and costs in having to defend against these claims (including the original Counts II and III).

---

[10]  Plaintiff also nakedly alleges that the Defendants should have known that their actions "would damage **Walgreens.**" Am. Compl., at ¶113. Plaintiff provides no factual basis for this statement and or as to what type of damage, if any, that Walgreen could have been expected to suffer.

Dated: June 18, 2009

Respectfully submitted,
**FELDMAN GALE, P.A.**
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  305-358-5001
Facsimile:  305-358-3309

By:  /s_Susan J. Latham_____
    James A. Gale / 371726
    E-mail: JGale@FeldmanGale.com
    Susan J. Latham / 687391
    E-mail: SLatham@FeldmanGale.com
    *Attorneys for Defendants Luv N' Care, Ltd.  and Admar International, Inc.*


## CERTIFICATE OF SERVICE

I HEREBY certify that on this 18th day of June 2009, I electronically filed the foregoing document with the Clerk of the Court using its CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified either via transmission of Notices of Electronic Filing generated by this Court's CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

                      /s_Susan J. Latham_____
                        SUSAN J. LATHAM

## SERVICE LIST

*Atico International USA, Inc. v. Luv N' Care, Ltd., et al.*
Case No. 09-60397-CIV-COHN/SELTZER
United States District Court, Southern District of Florida

Alan Weisberg
aweisberg@cwiplaw.com
Jeffrey H. Kamenetsky
jkamenetsky@cwiplaw.com
Christopher & Weisberg, P.A.
200 East Las Olas Blvd., Suite 2040
Ft. Lauderdale, FL 33301
Phone: 954-828-1488
Facsimile: 954-828-9122
*Via CM/ECF*.