**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 09-60397-CIV-COHN/SELTZER

**ATICO INTERNATIONAL USA, INC.,**
**a Delaware corporation,**

    **Plaintiff,**

**v.**

**LUV N' CARE, LTD., a Louisiana corporation,**
**and ADMAR INTERNATIONAL, INC., a**
**Delaware corporation,**

    **Defendants.**
_____/

**LUV N' CARE, LTD., a Louisiana corporation,**
**and ADMAR INTERNATIONAL, INC., a**
**Delaware corporation,**

    **Counterclaim and**
    **Third Party Plaintiffs,**

**v.**

**ATICO INTERNATIONAL USA, INC.,**
**a Delaware corporation, Counterclaim Defendant**
**and WALGREEN CO., an Illinois corporation, Third**
**Party Defendant**
_____/

**<u>DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO COUNTS I</u>**
**<u>THRU VI OF PLAINTIFF'S AMENDED COMPLAINT, AND</u>**
**<u>DEFENDANTS' COUNTERCLAIM AND THIRD PARTY COMPLAINT</u>**

   Defendants Luv n' care, Ltd. and Admar International, Inc., (collectively "Defendants")

hereby answer the Amended Complaint of Plaintiff Atico International USA, Inc. ("Atico") as

follows:

## ANSWER TO AMENDED COMPLAINT

### PARTIES

1.      Defendants are without knowledge as to the allegations in Paragraph 1of the Amended Complaint, and therefore, deny same.

2.      Defendants admit the allegations of Paragraph 2 of the Amended Complaint.

3.      Defendants admit the allegations of Paragraph 3 of the Amended Complaint.

### JURISDICTION AND VENUE

4.      Defendants admit that Plaintiff is alleging and asserting certain claims for relief under federal and state law, but deny that Plaintiff is entitled to relief under such laws.  All other allegations of Paragraph 4 of the Amended Complaint are denied.

5.      Defendants admit that they sued Walgreen Co. in the New York suit.  Defendants admit that Exhibit A to Plaintiff's Amended Complaint is a true and correct copy of the Complaint and Exhibits in the New York suit.  All other allegations of Paragraph 5 are denied.

6.      Defendants admit, either in whole or in part, the allegations contained in Paragraph 6 of the Amended Complaint.

7.      Luv n' care admits that it made the quoted statement set forth in Exhibit A.  Luv n' care admits that it is subject to the personal jurisdiction of this Court.  The Defendants deny the remaining allegations of Paragraph 7 of the Amended Complaint.

8.      Defendants deny the allegation contained in Paragraph 8 of the Amended Complaint.

9.      Defendants admit the allegations of Paragraph 9 of the Amended Complaint.

10.      Defendants are without knowledge as to_the allegations in Paragraph 10 of the Amended Complaint and, therefore, deny same.

2

11.     Defendants deny the allegations contained in Paragraph 11 of the Amended Complaint.

12.     Defendants admit that they made the allegations set forth in ¶¶ 14-18 of Exhibit A of the Amended Complaint.  Defendants admit that such allegations relate to products, including the products at suit in this lawsuit and in the New York suit.  Defendants deny all other remaining allegations in Paragraph 12 of the Amended Complaint.

13.     Defendants admit that the trade dress at issue is unregistered.  Defendants deny all other remaining allegations in Paragraph 13 of the Amended Complaint.

14.     Defendants affirmatively state that they are voluntarily submitting to the jurisdiction of this Court over their persons for the purposes of this lawsuit.  However, Defendants deny all other allegations in Paragraph 14 of the Amended Complaint.

15.     Defendants are without knowledge as to the allegations in Paragraph 15 of the Amended Complaint and therefore, deny same.

16.     Defendants deny the allegations in Paragraph 16 of the Amended Complaint.

17.     Defendants deny the allegations in Paragraph 17 of the Amended Complaint.

18.     Defendants deny the allegations in Paragraph 18 of the Amended Complaint; however, Defendants agree to venue in this Court.

## FACTUAL BACKGROUND

19.     Defendants are without knowledge as to the allegations in Paragraph 19 of the Amended Complaint, and therefore, deny same.

20.     Defendants admit that drinking cups made for babies and children, such as those at issue in this lawsuit and in the New York suit, may generally be referred to as "sippy cups." Defendants deny all other remaining allegations in Paragraph 20 of the Amended Complaint.

21.     Defendants admit the allegations in Paragraph 21 of the Amended Complaint.

22.     Defendants admit the allegations in Paragraph 22 of the Amended Complaint.

23.     Defendants are without knowledge as to the allegations in Paragraph 23 of the Amended Complaint, and therefore, deny same.

24.     Defendants are without knowledge as to the allegations in Paragraph 24 of the Complaint, and therefore, deny same.

25.     Defendants are without knowledge as to the allegations in Paragraph 25 of the Amended Complaint, and therefore, deny same.

26.     Defendants are without knowledge as to the allegations in Paragraph 26 of the Amended Complaint, and therefore, deny same.

27.     Defendants are without knowledge as to the allegations in Paragraph 27 of the Amended Complaint, and therefore, deny same.

28.     Defendants are without knowledge as to the allegations in Paragraph 28 of the Amended Complaint, and therefore, deny same.

29.     Defendants are without knowledge as to the allegations in Paragraph 29 of the Amended Complaint, and therefore, deny same.

30.     The allegations in Paragraph 30 lack specificity and are, thus, too vague to formulate a response thereto.  However, said allegation is denied in so far as the products at issue in this suit were "knocked-off" by Atico and Walgreen, making it an imprudent business

decision and business practice.   Defendants are without knowledge as to the remaining allegations in Paragraph 30 of the Amended Complaint and, thus, deny same.

31.     The allegations in Paragraph 31 lack specificity, and do not take into account that Atico knocked-off Defendants successful products, and are, thus, too vague to formulate a response thereto; therefore, Defendants are without knowledge as to the allegations in Paragraph 30 of the Amended Complaint and, thus, deny same.

32.     Defendants deny the allegations in Paragraph 32 of the Amended Complaint.

33.     Defendants are without knowledge as to the allegations in Paragraph 33 of the Amended Complaint, and therefore, deny same.

34.     Defendants are without knowledge as to the allegations in Paragraph 34 of the Amended Complaint, and therefore, deny same.

35.     Defendants deny the allegations in Paragraph 35 of the Amended Complaint.

36.     Defendants deny the allegations in Paragraph 36 of the Amended Complaint.

37.     Defendants admit that other competing products including products from Munchkin, Babies R' Us, Gerber, Playtex and Avent look different than Defendants' trade dress. The remaining allegations lack specificity and are too vague to formulate a response to; therefore, Defendants are without knowledge and deny all other remaining allegations in Paragraph 37 of the Amended Complaint.

38.     Defendants admit that certain *components* of their asserted products, such as an interior valve, are covered by the claims in U.S. or foreign patents.  However, Defendants deny that the claims of such patents cover the entire products and/or the elements of trade dress at

issue in this lawsuit.  Defendants deny all other allegations in Paragraph 38 of the Amended Complaint.

39.     Luv n' care admits that it sent a letter to Jeffrey Kruckman at Walgreen Co. asserting that various no-spill drinking products sold by Luv n' care are subject to various forms of intellectual property protection, such as trademark, trade dress, unfair competition, copyright and patent (including, for example, the listed patent numbers).  Defendants deny all other remaining allegations in Paragraph 39 of the Amended Complaint.

40.     Defendants admit the allegations in Paragraph 40 of the Amended Complaint.

41.     Luv n' care admits that, in the July 18, 2006 letter, it stated that it had "been informed that [Walgreen] **intends to** drop Luv n' care's Gripper Cup, so as to carry cheap copies of them...It is [Luv n' care's] understanding that you have not yet sold, offered for sale or imported any unauthorized products to date; accordingly, I am not accusing you of infringement at the present time. I am, however, expressly cautioning you against taking any action in the future which would constitute intellectual property infringement in violation of law." Defendants deny all other remaining allegations in Paragraph 41 of the Amended Complaint.

42.     Defendants are without knowledge as to all goods and services that Walgreen sells and, therefore, do not have sufficient information to formulate a response to the allegations in Paragraph 42 of the Amended Complaint, and therefore, deny same.

43.     Defendants admit that they have, throughout the years, policed and continue to police their trademarks and trade dress rights and, therefore, when appropriate, occasionally send letters to individual entities selling products or engaging in other activities that pose a threat to Defendants' intellectual property rights so as to place such entities on notice of Defendants'

intellectual property rights.   However, Defendants deny Plaintiff's characterization of those actions and deny all other remaining allegations in Paragraph 43 of the Amended Complaint.

44.    Luv n' care admits that it sent a letter to Regent Baby Products Corp. on or about the stated date in May 2004 to place such entity on notice of Defendants' intellectual property rights.   However, Defendants deny all other allegations in Paragraph 44 of the Amended Complaint.

45.    Luv n' care admits that it sent a letter to Royal King Infants Products Co. Ltd. on or about the stated date in May 2004 to place such entity on notice of Defendants' intellectual property rights.  However, Defendants deny all other allegations in Paragraph 45 of the Amended Complaint.

46.    Luv n' care admits that it sent a letter to The Walt Disney Company on or about the stated date in October 2007 to place such entity on notice of Defendants' intellectual property rights.   However, Defendants deny all other allegations in Paragraph 46 of the Amended Complaint.

47.    Luv n' care admits that it sent a letter to Fisher-Price, Inc. on or about the stated date in November 2007 to place such entity on notice of Defendants' intellectual property rights. However, Defendants deny all other allegations in Paragraph 47 of the Amended Complaint.

48.    Luv n' care admits that it sent a letter to Dollar King Corp. on or about the stated date in November 2007 to place such entity on notice of Defendants' intellectual property rights. However, Defendants deny all other allegations in Paragraph 48 of the Amended Complaint.

49.    Defendants deny the allegations in Paragraph 49 of the Amended Complaint.

50.    Defendants deny the allegations in Paragraph 50 of the Amended Complaint.

51.    Defendants deny the allegation in Paragraph 51 of the Amended Complaint.

52.    Defendants deny the allegation in Paragraph 52 of the Amended Complaint.

53.    Defendants admit the allegations in Paragraph 53 of the Amended Complaint.

54.    Defendants affirmatively state that they asserted the registered trademark NUBY® in the New York suit against Walgreen Co. and Defendants affirmatively state that Atico is the real party in interest in the New York suit.  Defendants deny all other allegations in Paragraph 54 of the Amended Complaint.

55.    To the extent that the allegations of Paragraph 55 of the Amended Complaint are meant to suggest that Atico and the Defendants do not sell competing products, those allegations are denied.  Similarly, to the extent that the allegations of Paragraph 55 of the Amended Complaint are meant to suggest that Atico and the Defendants do not sell products that look the same, those allegations are denied  Defendants are without knowledge as to all other remaining allegations and, therefore, deny same.

56.    Defendants admit the allegations in Paragraph 56 of the Amended Complaint.

57.    Defendants are without knowledge as to all goods and services that Walgreen sells and, therefore, do not have sufficient information to formulate a response to the allegations in Paragraph 57 of the Amended Complaint, and therefore, deny same.

58.    Defendants are without knowledge as to the allegations in Paragraph 58 of the Amended Complaint, and therefore, deny same.

59.    Defendants deny the allegations in Paragraph 59 of the Amended Complaint.

60.    Defendants admit that in the New York suit, they claim that, *inter alia*, their unregistered products and designs are entitled to trade dress protection and have acquired

secondary meaning, and other claims as set forth in Exhibit A to the Complaint.  Defendants admit that they allege in the New York suit that certain Walgreen products are causing confusion among consumers as to their source and causing dilution and tarnishing of Defendants' product designs and packaging trade dress; that Walgreen is engaging in such infringing activity willfully; and that Walgreen is engaging in unfair competition in violation of federal and state law.  Defendants admit that Walgreen is Atico's customer and that Atico is the real party in interest to the New York suit.  Defendants deny the allegation that the subject trade dress has been improperly asserted or that it is non-existent.  Defendants deny all other remaining allegations in Paragraph 60 of the Amended Complaint.

61.     Defendants admit that they have not asserted federally-registered trade dress in the New York suit; however, Defendants admit that they have asserted a federally registered trademark (NUBY®) in the New York suit.  Defendants deny all other allegations in Paragraph 61 of the Amended Complaint.

62.     Defendants admit that the product design and packaging trade dress asserted in the New York suit is unregistered.

63.     Defendants deny the allegations in Paragraph 63 of the Amended Complaint and affirmatively state that Defendants' packaging trade dress is also inherently distinctive.

64.     Defendants deny the allegations in Paragraph 64 of the Amended Complaint.

65.     Defendants are without knowledge as to the identities of the so-called "other market participants" and what products they sell and, therefore, do not have sufficient information to formulate a response to the allegations in Paragraph 65 of the Amended Complaint, and therefore, deny same.  To the extent that the allegations refer to Walgreen and

9

Atico and their products, Defendants deny any and all such allegations in Paragraph 65 of the Amended Complaint.

66.     Defendants deny the allegations in Paragraph 66 of the Amended Complaint.

67.     Paragraph 67 does not assert a factual allegation and therefore no response is required.  However, Defendants deny the allegations of Paragraph 67 of the Amended Complaint because they call for the interpretation of legal authority and assert an erroneous legal conclusion.

68.     Defendants deny the allegation in Paragraph 68 of the Amended Complaint.

69.     This allegation is redundant of Paragraph 38 of the Amended Complaint. Nevertheless, Defendants admit that certain **components** of their asserted products, such as an interior valve, are covered by U.S. or foreign patents.  However, Defendants deny that such patents cover the entire products and/or the trade dress at issue in this lawsuit.  Defendants deny all other allegations in Paragraph 69 of the Amended Complaint.

70.     Defendants deny the allegations in Paragraph 70 of the Amended Complaint.

71.     There are no "Exhibits attached to Ex. A"; therefore, Defendants without knowledge as to the allegations in Paragraph 71 of the Amended Complaint, and therefore, deny same.

72.     Defendants deny the allegations in Paragraph 72 of the Amended Complaint.

73.     Defendants deny the allegations in Paragraph 73 of the Amended Complaint.

74.     Defendants deny the allegations in Paragraph 74 of the Amended Complaint.

75.     Defendants deny the allegations in Paragraph 75 of the Amended Complaint.

76.     Defendants deny the allegations in Paragraph 76 of the Amended Complaint.

77.     Defendants are without knowledge as to the allegations in Paragraph 77 of the Amended Complaint, and therefore, deny same.

78.     Defendants deny the allegations in Paragraph 78 of the Amended Complaint.

79.     Defendants deny that Atico was under a direct threat of suit at the time it commenced this action.  Defendants are without knowledge as to the remaining allegations in Paragraph 79 of the Amended Complaint, and therefore, deny same.

80.     Defendants deny that their conduct is improper.   Defendants are without knowledge as to the remaining allegations in Paragraph 80 of the Amended Complaint, and therefore, deny same.

## COUNT I – (Original Count I) DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF ACCUSED PRODUCTS

81.     Defendants incorporate their responses to Paragraphs 1-42 and 52-80 as set forth above and as if fully set forth herein.

82.     Defendants deny that Atico was under a direct threat of suit at the time it commenced this action.  Defendants are without knowledge as to the remaining allegations in Paragraph 82 of the Amended Complaint, and therefore, deny same.

83.     Defendants deny the allegations of Paragraph 83 of the Amended Complaint.

## COUNT II – DECLARATORY JUDGMENT OF NO TRADE DRESS

84.     Defendants incorporate their responses to Paragraphs 1-42 and 52-80 as set forth above and as if fully set forth herein.

85.     Defendants deny the allegations in Paragraph 85 of the Amended Complaint.

86.    Defendants deny that Atico was under a direct threat of suit at the time it commenced this action.  Defendants are without knowledge as to the remaining allegations in Paragraph 86 of the Amended Complaint, and therefore, deny same.

87.    The allegations in Paragraph 87 are incomplete, insufficient and incomprehensible.  Therefore, Defendants are without knowledge as to the allegations in Paragraph 87 of the Amended Complaint and, thus, deny all allegations in Paragraph 87 of the Amended Complaint.

### COUNT III – DECLARATORY JUDGMENT OF NO SECONDARY MEANING

88.    Defendants incorporate their responses to Paragraphs 1-42, 52-80 and 85-87 as set forth above, and as if fully set forth herein.

89.    Defendants deny that an actual and justiciable case or controversy existed between Defendants and Atico at the time Atico commenced this action as to whether Defendants' trade dress had acquired secondary meaning.  Defendants are without knowledge as to the remaining allegations in Paragraph 89 of the Amended Complaint, and therefore, deny same.

90.    Defendants deny the allegations of Paragraph 90 of the Amended Complaint.

### COUNT IV – DECLARATORY JUDGMENT OF FUNCTIONALITY

91.    Defendants incorporate their responses to Paragraphs 1-42, 52-80 and 85-87 as set forth above, and as if fully set forth herein.

92.    Defendants deny that an actual and justiciable case or controversy existed between Defendants and Atico at the time Atico commenced this action as to whether Defendants' trade dress is functional or primarily non-functional.  Defendants are without

knowledge as to the remaining allegations in Paragraph 92 of the Amended Complaint, and therefore, deny same.

93. Plaintiff's use of the double negative appears to make Paragraph 93 redundant of Paragraph 92. Therefore, Defendants incorporate their response to Paragraph 92 as set forth above, and as if fully set forth herein. Defendants deny all other remaining allegations in Paragraph 93 of the Amended Complaint.

94. Defendants deny the allegations in Paragraph 94 of the Amended Complaint.

95. Plaintiff's use of the double negative appears to make Paragraph 95 redundant of Paragraph 94. Therefore, Defendants incorporate their response to Paragraph 94 as set forth above, and as if fully set forth herein. Defendants deny all other remaining allegations in Paragraph 95 of the Amended Complaint

## COUNT V – DECLARATORY JUDGMENT OF NO DILUTION

96. Defendants incorporate their responses to Paragraphs 1-42, 52-80 and 85-87 as set forth above, and as if fully set forth herein.

97. Defendants admit the allegations contained in Paragraph 97 of the Amended Complaint.

98. Defendants deny that an actual and justiciable case or controversy existed between Defendants and Atico at the time Atico commenced this action as to whether Atico's products dilute Defendants' trade dress. Defendants are without knowledge as to the remaining allegations in Paragraph 98 of the Amended Complaint, and therefore, deny same.

99. Defendants deny the allegations in Paragraph 99 of the Amended Complaint.

## COUNT VI – DECLARATORY JUDGMENT OF NO FEDERAL UNFAIR COMPETITION

100.    Defendants incorporate their responses to Paragraphs 1-42, 52-80 and 85-87 as set forth above, and as if fully set forth herein.

101.    Defendants admit the allegations in Paragraph 101 of the Amended Complaint.

102.    Defendants deny that an actual and justiciable case or controversy existed between Defendants and Atico at the time Atico commenced this action as to whether Atico's products dilute Defendants' trade dress.  Defendants are without knowledge as to the remaining allegations in Paragraph 102 of the Amended Complaint, and therefore, deny same.

103.    The allegations in Paragraph 103 are incomplete, insufficient and incomprehensible.  Therefore, Defendants are without knowledge as to the allegations in Paragraph 103 of the Amended Complaint and, thus, deny all allegations in Paragraph 103 of the Amended Complaint.

## COUNT VII – (Original Count II) TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

104.    Defendants incorporate their responses to Paragraphs 1-80 as set forth above, and as if fully set forth herein.

Defendants do not answer Paragraph 105 through 110 because, pursuant to Fed.R.Civ.P. 12, Defendants have filed a motion to dismiss Count VII. Therefore, Defendants are not obligated to Answer Count VII at this time.  However, should the Court deny Defendants' motion to dismiss, Defendants hereby reserve the right to assert any and all denials and defenses that they may have against this claim.

## COUNT VIII – (Original Count III) FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. ¶¶ 501.201 TO 501.213)

111.    Defendants incorporate their responses to Paragraphs 1-80 as set forth above, and as if fully set forth herein.

Defendants do not answer Paragraph 112 through 116 because, pursuant to Fed.R.Civ.P. 12, Defendants have filed a motion to dismiss Count VIII. Therefore, Defendants are not obligated to Answer Count VIII at this time.  However, should the Court deny Defendants' motion to dismiss, Defendants hereby reserve the right to assert any and all denials and defenses that they may have against this claim.

## JURY DEMAND

117. Paragraph 117 is a demand for jury trial as to which no response is required. However, Defendants deny that Plaintiff is entitled to a trial by jury on Counts I thru VI of the Amended Complaint.  Defendants have not yet answered Counts VII and VIII and, therefore, reserve their right to contest Plaintiff's right to a trial by jury on those counts.

118. Defendants deny any and all allegations in the Amended Compliant that have not been responded to or specifically admitted.

**WHEREFORE** Defendants respectfully request that this Court dismiss Plaintiff's Amended Complaint with prejudice, award Defendants their reasonable attorney fees and any other relief that this Court deems appropriate.

## AFFIRMATIVE DEFENSES TO COUNTS I THRU VI OF
## PLAINTIFF'S AMENDED COMPLAINT

As Affirmative Defenses to the Amended Complaint, the Defendants state as follows:

### First Affirmative Defense

Atico has failed to show any operative facts showing that, prior to commencing this lawsuit, Defendants had taken any action directly against Atico and/or made any direct threat of instituting proceedings against Atico in relation to the intellectual property at issue.

### Second Affirmative Defense

Atico lacks standing to maintain its causes of action.

### Third Affirmative Defense

Atico's claims are barred by virtue of delay and/or the doctrine of laches.

### Fourth Affirmative Defense

Atico's Complaint fails to state a claim upon which relief can be granted.

### Fifth Affirmative Defense

Atico's claims are barred because Atico has acquiesced to Defendants' assertion of intellectual property rights in the trade dress at issue herein.

### Sixth Affirmative Defense

Atico's claims are barred because Atico intentionally copied Defendants' trade dress at issue herein and is, thereby, barred by the doctrine of unclean hands.

### Seventh Affirmative Defense

Atico is estopped from maintaining its asserted causes of action.

### Eighth Affirmative Defense

Atico's claims are barred by the doctrine of unclean hands.

16

**Ninth Affirmative Defense**

Upon information and belief, Atico's claims are barred because Atico is using the subject intellectual property to trade in goods that are in violation of United States regulations and are, thereby, illegal products.  Accordingly,

**Tenth Affirmative Defense**

This Court lacks subject matter jurisdiction over Plaintiff's claims.

**Eleventh Affirmative Defense**

Plaintiff has failed to join an indispensable party under Fed.R.Civ.P. 19.

**Twelfth Affirmative Defense**

Defendants reserve their rights to state additional affirmative defenses relating to Counts I thru VI in the event such counts are upheld.

Pursuant to Fed.R.Civ.P. 12, Defendants have filed a motion to dismiss Counts VII and VIII. Therefore, Defendants are not obligated to assert affirmative defenses to Counts VII and VIII at this time.  However, should the Court deny Defendants' motion to dismiss, Defendants hereby reserve the right to assert any and all defenses that they may have against Counts VII and VIII.

## COUNTERCLAIM AND THIRD PARTY COMPLAINT

Counterclaim and Third Party Plaintiffs, Luv n' care, Ltd., and Admar International, Inc. (collectively "Counterclaim and Third Party Plaintiffs") hereby sue Plaintiff and Counterclaim Defendant Atico International USA, Inc. and Third Party Defendant Walgreen Co. (collectively "Counterclaim and Third Party Defendants") and state as follows:

## JURISDICTION AND VENUE

1. This is an action for federal unfair competition, trade dress infringement, and dilution under Section 43 of the Lanham Act, 15 U.S.C. §1125; and for unfair competition, dilution, deceptive and unfair business practices under the common law and the laws of the State of Florida. This Court has jurisdiction over the federal claims of this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1338, and 15 U.S.C. 1121, and has jurisdiction over the state claims pursuant to its supplemental jurisdiction under 28 U.S.C. §1367.

2. This action arises from the Counterclaim and Third Party Defendants' unfair and deceptive business practices, including their offering for sale, sale, and distribution of products which are deceptive copies of Counterclaim and Third Party Plaintiffs distinctive product designs and  product packaging trade dress.

3. This Court has personal jurisdiction over Walgreen Co. ("Walgreen") pursuant to Fla. Stat. §48.193 because Walgreen is involved in substantial not isolated activity within this State, because Walgreen has been engaging in acts constituting the transaction of business within this State and/or has contracted to supply goods or services in this State, and has a committed tortious acts both within and without this State, including but not limited to, selling, or distributing for sale, the infringing products in this State, which has caused injury to Counterclaim and Third

18

Party Plaintiffs' property within the State and generated substantial revenue for Walgreen.

4. This Court has personal jurisdiction over Atico International USA, Inc. ("Atico") pursuant to Fla. Stat. §48.193 because Atico is involved in substantial not isolated activity within this State, because Atico has been engaging in acts constituting the transaction of business within this State and/or has contracted to supply goods or services in this State, and has a committed tortious acts both within and without this State, including but not limited to, selling, or distributing for sale, the infringing products in this State, which has caused injury to Counterclaim and Third Party Plaintiffs' property within the State and generated substantial revenue for Atico.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)-(c) and 28 U.S.C. §1400(a).

## THE PARTIES

6. Counterclaim and Third Party Plaintiff Luv n' care, Ltd. ("Luv n' care" or "LNC") is a corporation of the State of Louisiana having a principal place of business at 3030 Aurora Avenue, Monroe, Louisiana 71201.

7. Counterclaim and Third Party Plaintiff Admar International, Inc. ("Admar") is a corporation of the State of Delaware having a principal place of business at 3030 Aurora Avenue, Monroe, Louisiana 71201.

8. Admar is an affiliate of Luv n' care.

9. Third Party Defendant Walgreen is a corporation of the State of Illinois having a principal place of business at 200 Wilmot Road, Deerfield, IL 60015.

10. Counterclaim Defendant Atico is a Delaware corporation having a principal place of

19

business at 501 South Andrews Avenue in Fort Lauderdale, Florida.

11. Upon information and belief, Atico has agreed to indemnify Walgreen for any damages as a result of the conduct alleged herein and in the New York action.

<u>FACTS</u>

<u>COUNTERCLAIM AND THIRD PARTY PLAINTIFFS' INTELLECTUAL PROPERTY</u>

12. Counterclaim and Third Party Plaintiff Luv n' care is one of the leading baby product companies in the world today. It enjoys a widespread reputation throughout the United States and foreign countries as a result of the popular products that it has designed, introduced, and commercialized in interstate and international commerce for use by babies and young children.

13. Admar is the owner of United States Trademark Registration No. 2,335,700 for the trademark NUBY®, which was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO") on March 28, 2000 ("the '700 registration"). The '700 registration remains in good standing and effect.

14. Luv n' care sells goods under the NUBY® mark throughout the United States under exclusive rights from Admar.

15. Luv n' care has used the NUBY® trademark on a wide variety of children's and infants' products sold in interstate commerce, including, but not limited to, children's no-spill drinking cups, baby bottles, infant pacifiers, etc. Since commencing use of the NUBY® trademark, Luv n' care has generated hundreds of millions of dollars in revenue from the sale of goods under the NUBY® mark.

16. Luv n' care has a loyal customer-base that repeatedly purchases Luv n' care children and infant care products.

17. Counterclaim and Third Party Plaintiffs have invested significant time, funds, and effort in the design and development of esthetically appealing and attractive product designs and packaging for Counterclaim and Third Party Plaintiffs' goods.

18. Counterclaim and Third Party Plaintiffs have also invested significant sums of money, time, and effort in promoting and popularizing Counterclaim and Third Party Plaintiffs' goods among the general consuming public of the United States.

19. As a result of Counterclaim and Third Party Plaintiffs' design and promotional activities, Counterclaim and Third Party Plaintiffs' products, packaging, and trademarks have all become widely known and associated with Counterclaim and Third Party Plaintiffs throughout the United States and worldwide.

20. Counterclaim and Third Party Plaintiffs' products are among the most popular and well known products in their industry, and their line of products is famous throughout the country and the world.

21. The appearance of Counterclaim and Third Party Plaintiffs' products, packaging and trademarks are distinctive symbols which serve as trademarks and trade dress of Luv n' care's products in interstate commerce, both in the United States and worldwide.

22. Counterclaim and Third Party Plaintiffs' NUBY® trademark and Counterclaim and Third Party Plaintiffs' packaging for their high-quality products are inherently distinctive and are recognized by consumers as identifying products and services that emanate exclusively from Counterclaim and Third Party Plaintiffs.

23. The design and appearance of Counterclaim and Third Party Plaintiffs' products, their associated packaging, and the NUBY® mark have each acquired secondary meaning among

consumers and are, thus, recognized as identifying products and services that emanate exclusively from Counterclaim and Third Party Plaintiffs.

24. Counterclaim and Third Party Plaintiffs' products, packaging, and NUBY® trademark, and their associated goodwill, are all valuable assets belonging to Counterclaim and Third Party Plaintiffs.

## COUNTERCLAIM AND THIRD PARTY DEFENDANTS' ILLEGAL ACTIVITIES

25. Walgreen is a corporation that operates retail stores throughout the United States.

26. In the past, Walgreen has regularly purchased the products at issue from Luv n' care.

27. Recently, however, Walgreen has turned to Atico to secure cheap knockoffs of Counterclaim Defendants' products.

28. Upon information and belief, Atico is an international company specializing in the procurement and development of a wide range of products, including but not limited to children and infants care products.

29. Walgreen deliberately designed or commissioned the design of products and packaging that confusingly imitate the appearance of Luv n' care's products and packaging.

30. Upon information and belief, at Walgreen's direction, Atico has copied and imitated the products, packaging, and trademarks of Counterclaim and Third Party Plaintiffs without authorization.

31. Atico has offered for sale, sold and distributed the resulting false, unauthorized copies of the products at issue to Walgreen.

32. Walgreen has offered for sale, sold and distributed the resulting false, unauthorized, copies to consumers throughout the United States, under the name "WAGI."

22

33. Walgreen is using and has used those confusingly similar knock-offs to replace Counterclaim and Third Party Plaintiffs' products, which Walgreen previously stocked and sold to consumers through its retail stores.

34. Walgreen has engaged in additional, deliberate acts, in bad faith so as to mislead and confuse consumers into believing that the illegal copies are genuine Luv n' care products.

35. Walgreen's bad faith activities have caused deception and confusion in the marketplace among consumers, and extensive damage to Counterclaim and Third Party Plaintiffs and their business, goodwill and reputation.

## COUNTERCLAIM AND THIRD PARTY DEFENDANTS' INFRINGEMENT OF COUNTERCLAIM AND THIRD PARTY PLAINTIFFS PRODUCT DESIGNS AND PACKAGING TRADE DRESS

36. Photographic depictions of Counterclaim and Third Party Plaintiffs' products and packaging alongside Counterclaim and Third Party Defendants' unlawful copies are attached hereto in Exhibits A-D.  Counterclaim and Third Party Plaintiffs' original products are shown on the right-hand side and the Counterclaim and Third Party Defendants' unlawful, deceptive copies are shown on the left side of each page.

### Copying of Luv n' care "Gripper Cup"

37. Attached as Exhibit A, is an image of a Luv n' care product next to an image of Walgreen's and Atico's copy thereof.

38. The image on the right-hand side of Exhibit A depicts Luv n' care's original no-spill children's drinking cup, known as its "Gripper Cup."

39. On the left side of Exhibit A, is an image of the deceptive and confusing knock-off that Walgreen and Atico have sold, and are continuing to sell, in interstate commerce.

23

40. The overall appearance of Luv n' care's Gripper Cup is protectable, distinctive, primarily non-functional trade dress, which includes the combination and arrangement of the following elements: an oval-shaped, clear-silicone spout, resting on a circular, disc-like insert that is convex, raised above and resting on the cap, providing a ridged or rounded layered-like appearance; a custom-colored, bell-shaped cap with relief impressions along the sides; the cap is on top of a clear or custom-colored translucent cup having a hour-glass shape in front and back; the top portion of the cup possesses a hood-like design that starts at the top and extends in a fluid, curved form downward ending near the bottom of the cup; the middle portion of the cup has a series of inset wave and ripple-like grooves that extend in a concave fashion toward the interior of cup; the bottom and top of the cup have a bulbous-like shape, with the top being more round than the bottom of the cup.

41. Previously, and over an extended period of time, Luv n' care and Walgreen had a business relationship whereby Walgreen offered for sale and sold Luv n' care's Gripper Cup to consumers through its retail stores.

42. Upon information and belief, and in order to profit from Counterclaim and Third Party Plaintiffs' skill, expenditures and labor, Walgreen and Atico copied Luv n' care's Gripper Cup.

43. After copying Luv n' care's Gripper Cup, Walgreen stopped purchasing Luv n' care's Gripper Cup and gradually replaced it on its retail stores' shelves with the cheaper copy sold to it by Atico.

## Copying of Luv n' care "Gripper Cup" Packaging

44. Attached as Exhibit B, are images of Luv n' care's Gripper Cup in its packaging, next to Walgreen's and Atico's copy thereof.

45. The image on the right-hand side of Exhibit B depicts Luv n' Care's "two pack" packaging for its original Gripper Cup.

46. On the left side of Exhibit B, is an image of the deceptive and confusing copy that Walgreen and Atico have been using to sell their knock-off of Luv n' care's Gripper Cup in interstate commerce.

47. The overall appearance of Luv n' care's "two pack" packaging is protectable, inherently distinctive, primarily non-functional trade dress, which includes the combination and arrangement of the following elements: (a) a see-through, form-fitted shrink-wrapped plastic surface having (i) a colorful band positioned at the top, which encircles both of the two enclosed cups beneath their caps; (ii) relatively thick, child-like block lettering having a border and shadow effect and being centered within the colorful band and spelling out the words "No Spill Cup"; (iii) the phrase "2- pack" positioned in the upper left portion of the front of the packaging, just above the word "No" in the phrase "No-Spill Cup"; (iv) Walgreen's promotional "Wow" sticker positioned at the bottom right, next to the trademark NUBY®; and (b) a uniquely shaped cardboard insert wedged between the two cups and visible within the shrink-wrap and having: a colorful, bordered oval shape printed on its outward face wherein the trademark is centered and portrayed in large block lettering.

25

48. Previously, and over an extended period of time, Luv n' care and Walgreen had a business relationship whereby Walgreen offered for sale and sold Luv n' care's Gripper Cup in Luv n' care's two-pack packaging to consumers through its retail stores.

49. Upon information and belief, and in order to profit from Counterclaim and Third Party Plaintiffs' skill, expenditures and labor, Walgreen and Atico copied Luv n' care's two-pack packaging for use in connection with their imitation of Luv n' care's Gripper Cup.

50. After copying Luv n' care's Gripper Cup and two pack packing, Walgreen stopped purchasing Luv n' care's Gripper Cup and gradually replaced it in its retail stores' shelves with the cheaper copy provided to it by Atico.

**Copying of Luv n' care No-Spill Cup**

51. Attached as Exhibit C, is an image of another Luv n' care product, next to an image of Walgreen's and Atico's copy thereof.

52. On the right-hand side of Exhibit C, depicts Luv n' care's original no-spill drinking cup.

53. On the left side of Exhibit C, is an image of the deceptive and confusing knock-off that Walgreen and Atico have sold and are continuing to sell in interstate commerce.

54. The overall appearance of Luv n' care's no-spill cup is protectable, distinctive, primarily non-functional, trade dress, which includes the combination and arrangement of the following elements: a custom-tinted, translucent cylindrical shaped cup that gradually widens towards the top of the cup, where it opens like a flower petal to meet the cap, a custom colored and shaped cap, with the appearance of a cap sitting on a cap look, and a spout with a bulb-like base and a relatively pointy top.

26

55. Luv n' care's no-spill cup is frequently sold without outer packaging but with an interior packaging insert, which is visible from the outside of the cup, and consists of a folded paper insert having a wide, colored band across the top of it and Luv n' care's trademark near the bottom folded edge.

56. Luv n' care's no-spill cup and its packaging are distinctive and non-functional.

57. Upon information and belief, and in order to profit from Counterclaim and Third Party Plaintiffs' skill, expenditures and labor, Walgreen and Atico copied Luv n' care's no-spill cup.

58. After copying Luv n' care's no-spill cup, Walgreen stopped purchasing Luv n' care's no-spill cup and gradually replaced it on its retail stores' shelves with the cheaper copy provided to it by Atico.

## Copying of Luv n' care Comb and Brush Set

59. Attached as Exhibit D, is an image of Luv n' care's Comb and Brush Set, next to Walgreen's and Atico's copy thereof.

60. The image on the right-hand side of Exhibit D depicts Luv n' care's original design for a Comb and Brush set.

61. On the left side of Exhibit D, is an image of the deceptive and confusing copy that Walgreen and Atico have sold and are continuing to sell in interstate commerce.

62. The overall appearance of Luv n' care's Comb and Brush set is protectable, distinctive, and primarily non-functional trade dress, which includes the combination and arrangement of the following elements: a thick band around the handle of the brush; an oval band on the handle of the comb; a brightly colored band on the handle of a neutral brush/comb;

27

stacked oblong shaped thinner bands along the band on the handle of brush and comb; a series of tines on the brush alternating with a ball at end and no ball at end; character images on back of head of brush; and the particular shape and proportions of the comb and brush and its components shown.

63. Previously, and over an extended period of time, Luv n' care and Walgreen had a business relationship whereby Walgreen offered for sale and sold Luv n' care's Comb and Brush set to consumers through its retail stores.

64. Upon information and belief, and in order to profit from Counterclaim and Third Party Plaintiffs' skill, expenditures and labor, Walgreen and Atico copied Luv n' care's Comb and Brush set.

65. After copying Luv n' care's Comb and Brush set, Walgreen stopped purchasing Luv n' care's Comb and Brush set and gradually replaced it on its retail stores' shelves with the cheaper copy provided to it by Atico.

### Deceptive Manner of Sales of Walgreen's Copies

66. Attached as Exhibit E are images of an example of Walgreen's deceptive marketing of its unlawful copy of Luv n' care's Gripper Cup.

67. As shown in the exhibit, Walgreen has sold its deceptive knock-off under and above signs that advertise its copy as being a Luv n' care Gripper Cup.

68. Walgreen has likewise sold its other deceptive copies by placement in the same shelf-locations that it previously used for selling Luv n' care's original products.

69. Walgreen's deceptive sales and marketing methods are intended to deceive, and have deceived, consumers.

70. The placement of Counterclaim and Third Party Defendants' products next to Counterclaim and Third Party Plaintiffs' products on Walgreen's retail store shelving, with signage that advertises to consumers that all of the products situated in that shelf location are Luv n' care products, along with the replacement of Counterclaim and Third Party Plaintiffs' products with unlawful copies in the same shelf-locations as the original products were previously found, causes and creates consumer confusion and dilution of Counterclaim and Third Party Plaintiffs' rights, and was so intended.

## Copying of Luv n' care's Line of Products

71. As shown by Exhibits A-D, Walgreen and Atico have systematically knocked-off Luv n' care's products.

72. Counterclaim and Third Party Plaintiffs' trade dress in the product configuration and packaging of their products, both individually and collectively, is primarily non-functional and is either inherently distinctive or has acquired secondary meaning among consumers.

73. Walgreen and Atico's products, packaging, and trademark have each been designed to imitate Counterclaim and Third Party Plaintiffs' products, packaging and trademark, individually and collectively, so as to cause confusion, mistake, and deception among consumers.

74. The individual appearances of Walgreen's and Atico's products are designed to imitate the appearance of Counterclaim and Third Party Plaintiffs ' products.

75. The collective appearances of Walgreen's and Atico's products, which are offered for sale and sold by Walgreen are designed to imitate the appearance of Counterclaim and Third Party Plaintiffs' product line.

29

76. Both the copying of Counterclaim and Third Party Plaintiffs' individual product designs and packaging, and the copying of the overall appearance of Counterclaim and Third Party Plaintiffs' line of products, has been calculated to illegally trade off of Counterclaim and Third Party Plaintiffs' reputation and goodwill.

**False Designation, Confusion, Dilution by Blurring and Tarnishment**

77. The knock-offs depicted on the left side of Exhibits A-D are not authorized by Counterclaim and Third Party Plaintiffs.

78. Counterclaim and Third Party Defendants are profiting from sales of those unauthorized knock-offs.

79. The trade and consuming public are likely to be misled into believing that the unauthorized knock-offs shown in Exhibits A-D originate with or are otherwise authorized, sponsored and/or licensed by, or associated with the Counterclaim and Third Party Plaintiffs.

80. Counterclaim and Third Party Defendants are using Counterclaim and Third Party Plaintiffs' product designs and packaging to trade off of Counterclaim and Third Party Plaintiffs' reputation and goodwill and to create deception in the marketplace.

81. Defendants are also blurring and tarnishing the distinctive quality of Counterclaim and Third Party Plaintiffs' famous and extremely strong and distinctive product designs and packaging trade dress.

82. Counterclaim and Third Party Defendants' actions are part of a repeated pattern of copying Counterclaim and Third Party Plaintiffs' intellectual property, including its product designs and packaging, including, but not limited to, the products set forth in Exhibits A-D.

83. Counterclaim and Third Party Defendants, in connection with goods and containers for goods, have used in commerce words, terms, names, symbols or devices, or combinations thereof, false designations of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which: are likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, and association of Counterclaim and Third Party Defendants with the Counterclaim and Third Party Plaintiffs and as to the origin, sponsorship, and approval of Counterclaim and Third Party Defendants' goods, services and commercial activities.

84. Counterclaim and Third Party Defendants, in commercial advertising and promotion, have misrepresented the nature, characteristics, qualities and geographic origin of their goods and commercial activities.

85. Counterclaim and Third Party Plaintiffs' marks, including, its product designs, packaging and the marks thereon, are widely recognized by consumers of children and infant care products and by the general consuming public of the United States as a designation of source of Counterclaim and Third Party Plaintiffs' goods.

86. Counterclaim and Third Party Plaintiffs' trade dress in each of its products and their packaging, and in their line of products, is not functional.

87. Counterclaim and Third Party Defendants' activities are causing and likely to cause dilution of Counterclaim and Third Party Plaintiffs' trade dress and trademark, including by blurring and by tarnishment.

## Additional Misleading and Unfair Business Practices

88. Walgreen's and Atico's practices were part of a systematic attempt to engage in misleading and unfair business practices against Luv n' care.

89. Luv n' care's products generated enormously successful, unprecedented sippy cup sales at Walgreen.

90. Before Walgreen carried Luv n' care's products, its top-selling sippy cup was selling approximately 25,000 to 35,000 units per year.

91. After Walgreen began carrying Luv n' care's products, it began selling about 25,000 to 35,000 Luv n' care sippy cups **per week**.

92. Luv n' care's products increased Walgreen's sippy cup sales by approximately fifty times.

93. There was huge customer demand for and awareness of NUBY® brand sippy cups, which made Walgreen millions of dollars.

94. However, as part of a scheme to jettison Luv n' care and substitute misleading look-a-likes, Walgreen and Atico deceived Luv n' care to enable Walgreen to deceive consumers.

95. In April 2006, before Luv n' care's switched to its new price-schedule, Walgreen requested that Luv n' care immediately sell to Walgreen two more large shipments of Gripper Cups at the old pricing despite the fact that Walgreen still had a large inventory of Luv n' care Gripper Cups, which would get Walgreen through its next cycle.

96. Walgreen's explanation was that the Gripper Cup was selling so well that it was not concerned about carrying the inventory and that it wanted to save money.

32

97. Relying on Walgreen's representation, Luv n' care sold to Walgreen the two large, additional orders of Luv n' care Gripper Cups.

98. Walgreen led Luv n' care to believe that it was going to adopt Luv n' care's new pricing and continue purchasing Luv n' care's products.

99. In fact, Walgreen lied to Luv n' care as part of a scheme to guarantee that Walgreen would have enough inventory of Luv n' care's products to sufficiently stock its stores until such time as knock-offs provided by Atico were made and imported into the United States.

100. Walgreen deceived Luv n' care into providing it with inventory under false pretenses, to enable Walgreen to deceive consumers via a launch of confusingly similar knockoffs.

101. Walgreen likewise engaged in numerous meetings with Luv N' Care to gather knowledge about Luv n' care's product line, including products and packaging under development.

102. Once the unlawful copies arrived, Walgreen placed its knock-off "WAGI" products on its retail store shelves next to authentic NUBY® products, and placed signs above and below the shelves falsely identifying the knock-offs as being Luv n' care products. *See e.g.,* Ex. E (containing document bates labeled: LNC 203312).

103. Walgreen used the Luv n' care brand and promotions to draw consumers to its knockoff products, and sold similar looking knockoffs by shelving them side-by-side with Luv n' care's products under signs identifying them as coming from Luv n' care.

104. Walgreen deliberately associated the unauthorized WAGI copies with authentic Luv n' care NUBY® brand products in order to mislead consumers and transition them into buying

the cheaper knock-offs under the guise that those knock-offs came from the same source as Luv n' care's NUBY® brand products.

105. After Walgreen deceptively built-up its inventory of unlawful knock-offs of Counterclaim and Third Party Plaintiffs' products, and misleadingly conditioned consumers into believing that the unlawful knock-offs came from the same source as Luv n' care's sippy cups, Walgreen then notified Luv n' care that it would no longer be purchasing Luv n' care's cups.

106. Walgreen's true motive was to trade off the goodwill associated with Luv n' care children and infant care products, to confuse consumers into buying its cheaper knockoffs and, thereby, reap the benefits of Counterclaim and Third Party Plaintiffs' skill, expenditures and labors.

107. Upon information and belief, Walgreen has continued its practice of unlawful copying of other Luv n' care products to unjustly reap the benefit of Luv n' care's research and development without the development costs, and to continue to confuse consumers, and dilute and damage the value of Luv n' care's products, packaging, and business.

### **Safety Issues with Walgreen's and Atico's Illegal copies**

108. Counterclaim and Third Party Defendants' actions in selling the unlawful knock-offs also risk significant damage to Counterclaim and Third Party Plaintiffs' reputation.

109. Recently, for example, ABC News displayed tests of products sold by Atico and Walgreen on national television as part of an investigation on the safety of children's products.

110. In its investigation, ABC News had the Walgreen and Atico sports sipper products analyzed by an independent laboratory.  The tests indicated that the Walgreen and Atico sports sipper products contain lead.

111. Those lead-containing products are provided for use by <u>children and infants</u>.

112. Those lead-containing products are confusingly similar in appearance and packaging to certain of Luv n' care's products.  In fact, they are unlawful knock-offs of Counterclaim and Third Party Plaintiffs' products and packaging.

113. Upon information and belief, the public is highly concerned and alarmed by the presence of lead in products provided for children and infants.

114. Serious safety issues regarding the illegal copies have caused, and are likely to further cause, public alarm toward Counterclaim and Third Party Plaintiffs' products, due to confusion between Counterclaim and Third Party Plaintiffs' original products and the lead-containing, unlawful knock-offs.

115. Walgreen's sale of confusingly similar knock-offs of Luv n' care's products provided by Atico, that have known quality and safety problems, has caused and will continue to cause irreparable damage to Counterclaim and Third Party Plaintiffs' business and reputation.

## WILLFUL INFRINGEMENT

116. Counterclaim and Third Party Defendants' activities have been deliberate and willful.

117. Counterclaim and Third Party Defendants are familiar with Counterclaim and Third Party Plaintiffs' original products, and have deliberately chosen to reproduce, copy and sell the unauthorized products.

118. Walgreen deliberately requested Atico to knock-off the LNC products and then replaced them in its stores with the unlawful knock-offs.

119. Walgreen was expressly placed on notice and verbally warned by Luv n' care not to engage in copying, but Walgreen chose to disregard Counterclaim and Third Party Plaintiff's warnings and to engage in their illegal activities nonetheless.

120. Luv n' care also notified Walgreen in writing.  A copy of Luv n' care's notice letter to Walgreen is attached as Exhibit F hereto.

121. Counterclaim and Third Party Defendants' actions have caused and are causing irreparable damage to Counterclaim and Third Party Plaintiffs, their business and their reputation.

122. Counterclaim and Third Party Plaintiffs have been extensively damaged by Counterclaim and Third Party Defendants' bad faith activities and will continue to be damaged unless Counterclaim and Third Party Defendants are restrained and enjoined by this Court.

**FIRST CAUSE OF ACTION:**
**FEDERAL UNFAIR COMPETITION**
**IN VIOLATION OF SECTION 43(A) OF THE LANHAM ACT**

123. Counterclaim and Third Party Plaintiffs repeats and reallege each and every allegation contained in paragraphs 1 through 122 as if fully set forth herein.

124. Counterclaim and Third Party Defendants are intentionally using Counterclaim and Third Party Plaintiffs' distinctive, primarily non-functional product designs and packaging to trade off Counterclaim and Third Party Plaintiffs' reputation and goodwill and to create confusion among consumers.

125. Counterclaim and Third Party Defendants' unauthorized activities in selling and offering for sale confusingly similar knock-offs of Counterclaim and Third Party Plaintiffs' product designs, packaging trade dress, constitutes unfair competition, infringement, false

36

designation of origin, and false description and representations, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

126. Counterclaim and Third Party Plaintiffs have no adequate remedy at law.  As a result of Counterclaim and Third Party Defendants' aforesaid acts, the Counterclaim and Third Party Plaintiffs are suffering irreparable harm, and will continue to suffer irreparable harm, unless Counterclaim and Third Party Defendants are restrained and enjoined by this Court from continuing to commit the aforesaid acts.

127. Counterclaim and Third Party Defendants' acts were and are willful and deliberate.

128. Counterclaim and Third Party Defendants have profited from their infringing activities.

129. Counterclaim and Third Party Plaintiffs have suffered, and continue to suffer, substantial damages as a result of Counterclaim and Third Party Defendants ' bad faith activities, in an amount to be determined by this Court.

## SECOND CAUSE OF ACTION:
### FEDERAL TRADE DRESS DILUTION

130. Counterclaim and Third Party Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 122 as if fully set forth herein.

131. Counterclaim and Third Party Plaintiffs' product designs and packaging are non-functional and are widely recognized by the general consuming public of the United States as a designation of source, separate and apart from Admar's registered NUBY® mark.

132. Counterclaim and Third Party Plaintiffs' product designs and packaging qualify as famous trade dress pursuant to Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c), separate and apart from Admar's registered NUBY® mark.

37

133. Counterclaim and Third Party Defendants' actions in copying Counterclaim and Third Party Plaintiffs' famous trade dress in commerce is likely to cause dilution, and has caused and will continue to cause actual dilution, of the distinctive quality of Counterclaim and Third Party Plaintiffs' trade dress, including through blurring and tarnishment.

134. Counterclaim and Third Party Defendants have willfully intended to trade on Counterclaim and Third Party Plaintiffs' reputation and to cause dilution of Counterclaim and Third Party Plaintiffs' trade dress.

135. By reason of the foregoing, Counterclaim and Third Party Plaintiffs have been injured in an amount to be determined by this Court, and are entitled to the remedies provided for in the Lanham Act, 15 U.S.C. § 1051, *et seq*.

### THIRD CAUSE OF ACTION:
### <u>UNFAIR COMPETITION UNDER FLORIDA LAW</u>

136. Counterclaim and Third Party Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 122 as if fully set forth herein.

137. Counterclaim and Third Party Plaintiffs have invested extensive time, labor, skill and money in creating their product design and packaging trade dress.

138. Counterclaim and Third Party Defendants have misappropriated Counterclaim and Third Party Plaintiffs' investment of extensive time, labor, skill and money by creating and selling unlawful knock-offs of Counterclaim and Third Party Plaintiffs' product designs and packaging trade dress.

139. Counterclaim and Third Party Defendants have used Counterclaim and Third Party Plaintiffs' product designs and packaging trade dress in competition with Counterclaim and

Third Party Plaintiffs, gaining an unfair advantage, because Counterclaim and Third Party Defendants bore little or no burden of expense of development.

140. By using deceptive knock-offs of Counterclaim and Third Party Plaintiffs' products to compete against Counterclaim and Third Party Plaintiffs' products, Counterclaim and Third Party Defendants have misappropriated a commercial advantage belonging to Counterclaim and Third Party Plaintiffs.

141. Counterclaim and Third Party Defendants have also engaged in bad faith misappropriation of the labors of Counterclaim and Third Party Plaintiffs which is likely to cause confusion, and to deceive purchasers as to the origin of the goods, and which dilutes the value of Counterclaim and Third Party Plaintiffs' product designs and packaging.

142. Counterclaim and Third Party Defendants' actions have caused and will continue to cause significant commercial damage to Counterclaim and Third Party Plaintiffs.

143. Counterclaim and Third Party Defendants' distribution of the unlawful knock-offs in U.S. commerce is also irresponsible and potentially dangerous to the public and young children.

144. Counterclaim and Third Party Defendants' business conduct is illegal and actionable under the common law of unfair competition of the State of Florida.

145. Counterclaim and Third Party Plaintiffs have been injured by Counterclaim and Third Party Defendants' illegal actions and is entitled to the remedies provided under Florida law.

## FOURTH CAUSE OF ACTION:
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

146. Counterclaim and Third Party Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 122 as if fully set forth herein.

147. As set forth above, Counterclaim and Third Party Defendants have engaged in actions constituting unfair and deceptive trade practices in violation of Florida law.

148. As a result of Counterclaim and Third Party Defendants unfair and deceptive trade practices, the Counterclaim and Third Party Plaintiffs have suffered damages.

149. Counterclaim and Third Party Plaintiffs are entitled to recover actual damages, plus reasonable attorneys fees and costs for Counterclaim and Third Party Defendants' violation of the Florida Deceptive and Unfair trade Practices Act.

## DAMAGES

150. Counterclaim and Third Party Plaintiffs have been extensively damaged by Counterclaim and Third Party Defendants' illegal actions in an amount to be determined by this Court, including lost sales, lost profits and damage to its reputation and good will, as well as a disgorgement of Counterclaim and Third Party Defendants' profits.

151. Counterclaim and Third Party Plaintiffs request that this honorable Court assess enhanced and punitive damages against Counterclaim and Third Party Defendants in the fullest amount permissible by law, in view of the egregious, malicious, and extensive nature of Counterclaim and Third Party Defendants' bad faith activities complained of herein, and in view of the numerous violations, the willful nature of the violations, and the significant damage to Counterclaim and Third Party Plaintiffs, as set forth above.

## JURY TRIAL DEMAND

152. Pursuant to Rule 38 of the Federal Rules of Civil Procedure and all applicable law, Counterclaim and Third Party Plaintiffs request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim and Third Party Plaintiffs respectfully request a judgment from this Court that:

a)      Counterclaim and Third Party Defendants have engaged in federal unfair competition, trade dress infringement, trade dress dilution, and misrepresentation under Section 43 of the Lanham Act, 15 U.S.C. §1125;

b)      Counterclaim and Third Party Defendants have engaged in unfair competition, dilution, and deceptive and unfair business practices, in violation of the common law and the law of the State of Florida;

c)      Counterclaim and Third Party Defendants, their officers, agents, servants, employees, representatives, distributors and all persons in concert or participation with them be preliminarily and permanently enjoined from engaging in any activities that infringe Counterclaim and Third Party Plaintiffs' rights in its product designs, packaging, and trademarks;

d)      Counterclaim and Third Party Defendants, their officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be preliminarily and permanently enjoined from making, using, importing, offering for sale and selling any products or packaging that infringe

41

Counterclaim and Third Party Plaintiffs' rights in its product designs and packaging trade dress;

e)   Counterclaim and Third Party Defendants, their officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be preliminarily and permanently enjoined from selling or marketing merchandise in any way that tends to deceive, mislead or confuse consumers into believing that Counterclaim and Third Party Defendants' products originate from, are sanctioned by, or affiliated with Counterclaim and Third Party Plaintiffs and/or Counterclaim and Third Party Plaintiffs' products, packaging or trademarks;

f)   Counterclaim and Third Party Defendants, their officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be preliminarily and permanently enjoined from competing unfairly with Counterclaim and Third Party Plaintiffs;

g)   Counterclaim and Third Party Defendants, their officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be preliminarily and permanently enjoined from diluting the distinctive qualities of Counterclaim and Third Party Plaintiffs' product designs and packaging trade dress;

h)   Counterclaim and Third Party Defendants, their officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be preliminarily and permanently enjoined from engaging in deceptive

42

or unfair business practices with respect to Counterclaim and Third Party Plaintiffs, under federal law and the statutory and common laws of the State of Florida;

i)      Counterclaim and Third Party Defendants be directed to file with this Court and serve on Counterclaim and Third Party Plaintiffs within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which the Counterclaim and Third Party Defendants have complied with the injunction;

j)      Counterclaim and Third Party Defendants be required to account for and pay over to Counterclaim and Third Party Plaintiffs any and all profits derived by them and all damages sustained by Counterclaim and Third Party Plaintiffs by reason of the acts complained of in this Counterclaim and Third Party Complaint, including an assessment of interest on the damages so computed, and that the damages be trebled pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117, and all applicable law;

k)      Counterclaim and Third Party Defendants be required to account for and pay over to Counterclaim and Third Party Plaintiffs such actual damages as Counterclaim and Third Party Plaintiffs have sustained as a consequence of Counterclaim and Third Party Defendants' unfair competition, infringement, and dilution of Counterclaim and Third Party Plaintiffs' trade dress, and to account for and pay to Counterclaim and Third Party Plaintiffs all of Counterclaim and Third Party Defendants' gains, profits and advantages attributable to or derived by

43

Counterclaim and Third Party Defendants' unfair competition, infringement, and dilution of Counterclaim and Third Party Plaintiffs' federal, state and common law rights;

l)  Counterclaim and Third Party Defendants be required to account for and pay over to Counterclaim and Third Party Plaintiffs such damages as the Court deems proper under the statutory and common law of the State of Florida;

m)  Each such award of damages be enhanced to the maximum amount available under the law in view of Counterclaim and Third Party Defendants' willful violation of Counterclaim and Third Party Plaintiffs ' rights;

n)  Counterclaim and Third Party Defendants be required to deliver up for impoundment during the pendency of this action, and for destruction thereafter, all copies of the infringing materials in its possession or under its control and all materials, including any molds and master models used for making same;

o)  Counterclaim and Third Party Plaintiffs be awarded punitive damages because of Counterclaim and Third Party Defendants' willful, egregious, malicious, and tortious conduct complained of herein;

p)  Counterclaim and Third Party Plaintiffs recover the costs of this action including its expenses and reasonable attorney's fees pursuant to 15 U.S.C. §1117 and any other applicable law, because of the deliberate and willful nature of the infringing and unfair activities of Counterclaim and Third Party Defendants, which make this an exceptional case warranting such award;

44

q)     Counterclaim and Third Party Plaintiffs obtain all further relief permitted under the laws of the United States and the State of Florida; and,

r)     Counterclaim and Third Party Plaintiffs obtain all such other and further relief as the Court may deem just and equitable.

Dated: June 18, 2009                    Respectfully submitted,

                                        **FELDMAN GALE, P.A.**
                                        One Biscayne Tower, 30th Floor
                                        2 South Biscayne Boulevard
                                        Miami, Florida 33131
                                        Telephone No.  (305) 358-5001
                                        Facsimile No.  (305) 358-3309

                                        By:   /s _Susan J. Latham_____
                                            James A. Gale / Fla. Bar no. 371726
                                            jgale@feldmangale.com
                                            Susan J. Latham / Fla. Bar no. 0687391
                                            slatham@feldmangale.com
                                            *Attorneys for Defendants/Counter-Plaintiffs*

45

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of June, 2009, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record or pro se parties identified on the

attached Service List in the manner specified, either via transmission of Notices of Electronic

Filing generated by CM/ECF or in some other authorized manner for those counsel or parties

who are not authorized to receive electronically Notices of Electronic Filing.


By:   /s   *Susan J. Latham*_____
                       SUSAN J. LATHAM


## SERVICE LIST

***Atico International USA, Inc. v. Luv N' Care, Ltd.,  et al.***
Case No. 09-60397-CIV-COHN/SELTZER
United States District Court, Southern District of Florida

Alan Weisberg
aweisberg@cwiplaw.com
Jeffrey H. Kamenetsky
jkamenetsky@cwiplaw.com
Christopher & Weisberg, P.A.
200 East Las Olas Blvd., Suite 2040
Ft. Lauderdale, FL 33301
Phone: 954-828-1488
Facsimile: 954-828-9122
***Counsel for Atico International USA, Inc. and Walgreen Co.***
*Via CM/ECF*