UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ATICO INTERNATIONAL USA, INC., a
Delaware corporation,

       Plaintiff,

v.

LUV N' CARE, LTD., a Louisiana corporation,
and ADMAR INTERNATIONAL, INC., a
Delaware corporation,

       Defendants.

CASE NO.: 09-60397-CIV-COHN/SELTZER

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS VII AND VIII OF PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Atico International USA, Inc. (Atico) responds in opposition to defendants' Luv N' Care, Ltd.'s and Admar International, Inc.'s (collectively "defendants") Motion to Dismiss Count VII and VIII of Plaintiff's Complaint (Docket No. (DE) 32)[1] and respectfully requests this Court to deny Defendants' Motion.

Defendants engaged in unfair business practices that include interfering with the business relationships of other companies by asserting unenforceable or nonexistent intellectual property. *An example* includes sending a letter that Atico pleads was intended solely to interfere with its business relationship with Atico's customer, Walgreen Co. *Another example* includes defendants' lawsuit in New York. In their New York case, defendants failed to file timely offensive discovery and had no intention of prosecuting that case. The letter in which plaintiffs' counsel identified a myriad of intellectual property rights but stated "I am not accusing you of infringement…" and the failure to prosecute a litigation that plaintiffs' subsequently filed

---

[1] Walgreen Co. is no longer a plaintiff. DE 11.

support a claim for unfair business practices, even though that much detail need not be put forward at the pleading stage.  Were the evidence considered at this stage, a reasonable inference may be drawn in Atico's favor that plaintiffs' letter was intended solely to interfere with Atico's and Walgreens' business.

Despite their unfair business practices and failures to prosecute a likely sham litigation, defendants now attempt to hide behind Florida's litigation privilege doctrine to escape liability.  They cannot.  The Court should not apply this privilege to permit litigants to escape liability for abusing judicial resources in New York or any other jurisdiction.  Doing so would create in this privilege an immunity that could violate the Supremacy Clause of the United State Constitution, since the same conduct alleged by Atico can yield liability for alleged violation of Antitrust statues in this case.  Nor should it be applied to permit harassing and disruptive business letters under the guise of "intellectual property" rights.

Counts VII and VIII of Atico's Complaint also plead facts sufficient to put the defendants on notice of the claims in those Counts.  Defendants know this.  They spent many pages discussing those facts in their Motion.  They also Answered Counts I-VI, which arise out of the same allegations as Counts VII and VIII.  Rather than address the sufficiency of the pleadings, defendants essentially impose on Atico a burden to prove its claims at the pleading stage (or in response to their motion to dismiss).  But evidence is not required at this stage and defendants' motion virtually ignores the question of the sufficiency of Atico's pleading – indeed, defendants' authority is composed nearly exclusively of summary judgment decisions.  Instead, Atico should be afforded an opportunity to conduct discovery on its well-pled claims to see what other malfeasance defendants employed as part of their scheme to unfairly compete, deceive consumers, or intentionally and improperly interrupt Atico's legitimate business endeavors.

I.     **FACTUAL BACKGROUND**

On March 13, 2009, Atico filed its Complaint against defendants requesting Declaratory Judgment that it does not infringe unprotectable, unregistered trade dress that defendants use to interfere with other peoples' business. DE. 1. Accordingly, Atico also alleged defendants tortiously interfered with Atico's business relationships (Count II) and violated Florida Statutes § 501.201 *et seq*. (Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count III). *Id.* On May 29, 2009, Atico amended its Complaint. DE 31. In addition to Count I, which corresponds to original Count I (Declaratory Judgment of Non-Infringement), the Amended Complaint included new Counts II-VI that relate to Count I and are further Declaratory Judgment counts relating to the non-infringement of the products identified in the Complaint and to the unenforceability of Defendants' alleged trade dress rights. New Counts VII and VIII correspond to original Count II and II respectively.

In their Motion to Dismiss, defendants refer to less than half of Atico's alleged facts and selectively ignore pertinent facts that support Atico's properly pled counts. The ignored portion of the facts alleged by Atico demonstrates defendants' claims must fail. To support Counts VII and VIII, Atico pled that defendants filed a baseless lawsuit in New York, one that it had no intention of prosecuting and, in fact, did not prosecute. In its Amended Complaint, Atico also pled that defendants filed the New York suit because they were "unhappy with Walgreens' and Atico's successful and proper competition." DE. 31 at ¶ 51. Because defendants are "unable to compete with Atico's products that have superior quality and better consumer value," *id.* at ¶ 52, defendants "***intentionally*** filed a Complaint in New York improperly asserting that their products or designs are protected trade dress," *id.* at ¶ 73 (emphasis added), and because defendants "filed suit ***intending*** that it would damage the business relationship with Walgreens and Atico," *id.* at ¶

3

74 (emphasis added). When Atico proves these facts, it will have proved defendants *intentionally* and knowingly asserted unprotectable trade dress and filed a baseless and meritless suit solely to harm Atico's business relationships and not to redress any injury.

Atico also pled that defendants abused process in other states that affect the rights of Florida residents. *Id.* at ¶ 13. Atico further pled that defendants, whose products are sold in Florida, "marked their asserted products in the New York suit with U.S. or foreign patent numbers." *Id.* at ¶ 69. According to Atico's pleading, defendants engaged in continuous, deceptive behavior traversing multiple forms of intellectual property that traces back *before* the filing of the New York suit. Defendants know this. Now, Atico has learned of other bad acts that further confirm what Atico pled and clearly reflect defendants' conduct of impermissibly asserting unenforceable intellectual property rights that violate Florida law.

## II.   LEGAL STANDARD FOR FED. R. CIV. P. 12(b)(6)

To succeed in their motion to dismiss, defendants must meet "a very high burden." *Tapken v. Brown*, 1992 U.S. Dist. Lexis 11744, at *28-29 (S.D. Fla. Mar. 13, 1992). In fact, "the court must determine if the allegations provide for *relief on any possible theory*." *Id.* (emphasis added). In this vein, to survive a motion to dismiss, Atico need only allege facts "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Rule 12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (citing *Neitzke* v. *Williams*, 490 U.S. 319, 327 (1989)). "A well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely'." *Id.* (citing *Scheuer* v. *Rhodes*, 416 U.S. 232, 236 (1974)). "Taking the facts as true, a court may grant a motion to dismiss when, 'on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action'." *Schott v.*

4

*Ierubino*, 2009 U.S. Dist. Lexis 24102, at *3 (S.D. Fla. Mar. 24, 2009) (Cohn, J.) (citing *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

Here, defendants need not speculate as to the right of relief sought by Atico. They already know. Defendants' efforts to sidestep Atico's legitimate claims with a litigation privilege fall short of the *Twombly* standard for dismissal. Indeed, accepting Atico's allegations as true, and in view of the defendants' baseless Complaint filed in New York, Atico pled facts that will support a cause of action against defendants and no litigation privilege is available.

### III. ARGUMENT

**A. Atico's Claim for Interference With An Existing Business Relationship And its Claim for Deceptive and Unfair Trade Practice Under FDUTPA Are Not Barred By Florida's Litigation Privilege**

No "absolute litigation immunity doctrine" exists. The litigation privilege that defendants reshape to suit their argument only applies to acts occurring during or emanating from litigation. Atico concedes the litigation privilege may avail a party that prosecutes a ***legitimate lawsuit***. But the privilege simply cannot protect a party that fails to prosecute a baseless lawsuit. Atico alleged in its Amended Complaint that the New York suit was baseless and not legitimate. The U.S. Supreme Court has long held that the attempt in a lawsuit to prosecute intellectual property rights knowing those rights to be unenforceable may be liable of violating the Antitrust laws. *See, e.g.*, *Walker Process Equip., Inc., v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 176-78 (1965).[2] Defendants invite this Court to apply Florida litigation

---

[2] Some courts have extended *Walker Process* to permit antitrust claims for the anticompetitive effects of intellectual property infringement lawsuits when the antitrust claimant proves an intellectual property right was invalid, *see, e.g.,Handgards, Inc., v. Ethicon, Inc.*, 601 F.2d 986, 994-96 (9th Cir. 1979), or knew that the intellectual property was not infringed, *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 876-77 (Fed. Cir. 1985), *overruled on other grounds, Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed. Cir. 1998).

5

privilege in a manner that could render this Supreme Court precedent inoperative and violate the Supremacy Clause of the U.S. Constitution. U.S. CONST. art. VI, cl. 2.

Regardless, Counts VII and VIII of Atico's Complaint fall outside the scope of the *Levins* privilege cited by defendants. The *Levins* court did not consider a baseless lawsuit.[3] Moreover, Florida District Courts of Appeal and Federal courts in this District have not interpreted Florida's litigation privilege to be "absolute." *See, e.g.*, *Montego v. Martin*, 935 So. 2d 1266, 1270 (Fla. 4th DCA 2006) (no immunity for false imprisonment claim); *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1267 (S.D. Fla. 2006) (Gold, J.) (no litigation privilege for RICO claims "even though these claims were based on conduct during prior litigation").

Defendants cite the *Echevarria* case for the bold "self-evident" conclusion that "the filing of a lawsuit is an act occurring during the course of a judicial proceeding." DE 32 at P. 6. Yet, defendants provide no legal support for their conclusory allegation. Defendants also cite the *Boca* case. DE. 32 at P. 7. *Boca* is, however, distinguishable. There, defendants filed a lawsuit in **Florida**, rather than a foreign jurisdiction (like New York in this case). *Boca Investors Group v. Potash*, 835 So. 2d 273, 274 (Fla. 3rd DCA 2002). The *Boca* plaintiff ***could*** seek redress in accordance with Florida law in the same Florida court where the action was filed. Atico cannot. In fact, only acts "in Florida" cases appear to get this Florida privilege. Here the New York case is outside Florida. *Boca* does not apply.

---

[3] Atico notes that the certified question to the Florida Supreme Court is entirely distinguishable from the facts plead with respect to Counts VII and VIII. *Levins* examined "the origins of the immunity afforded to statements or actions taken ***during*** a judicial proceeding." *Levins, Middlebrooks v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 607 (Fla. 1994) (emphasis added). Atico pleads that defendants filed a baseless lawsuit, not that they made defamatory or statements or committed torts during litigation.

Even if it did, Judge Cope's concurrence in *Boca* shows the present case is not properly subject to the non-"absolute" litigation privilege. "If Boca Investors can establish that there is ***baseless litigation***, then Boca Investors may avail itself of any applicable remedy set forth in *Levin*…it is evident that the tort of malicious prosecution is available in a proper case." *Boca Investors Group v. Potash*, 835 So. 2d 273, 275 (Fla. 3rd DCA 2002) (Cope, J., concurring) (emphasis added).[4] The majority did not reach the question of baseless litigation. Atico pled "baseless litigation." *Boca* does not apply.

Nor could it apply the blanket absolution theory defendant espouses for "any act" related to litigation including commencement of a litigation. DE 32 at 7. If it did, no cause of action could ever be brought for malicious prosecution. Malicious prosecution lawsuits include the necessary and required element of *commencement* of baseless litigation. *Wright v. Yurko*, 446 So. 2d 1162, 1165 (Fla. 5th DCA 1984). Defendants' theory would abrogate the cause of action entirely.

In their essentially-renewed brief, defendants argue that, even if anticompetitive, their conduct of threatened or repeated threats of litigation is privileged. Br. at 7-8. They contend *McGuire Oil* and *Marco Island Cable* support their position. Neither of those cases involved nonexistent intellectual property rights. Nor does any other case defendants cite.

More significantly, however, defendants' argument sets up a straw man. Defendants did not threaten litigation or even to assert a right – their letter to Walgreen unquestionably stated "I am not accusing you of infringement at the present time." DE 1 at Ex. F. (July 18, 2006 letter

---

[4] In order to prevail in a malicious prosecution action, a plaintiff must establish that, among other things: "the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff." *Alamo Rent-A-Car v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). The previous litigation has not yet ended. Therefore, Atico has not pled malicious prosecution. It will however amend its pleadings before this Court when the New York case ends adversely to defendants.

from Cohen to Kruckman).  Since defendants did not threaten to assert a right in the July 2006 letter, *Marco Island Cable*'s ambiguous dictate that a threat to enforce a right does not apply. 2006 U.S. Dist. Lexis 45116, at *27-30.  Nor does *McGuire Oil*'s holding insofar as it relates to threats of litigation or other activities conducted in good faith to achieve a favorable outcome. 958 F.2d at 1558.  Most of defendants' arguments, like references to their conduct as "pre-suit" fail because they stated they were not accusing anyone of infringement.  See, *e.g.*, Br. at 8 ("letters leading up to the filing of the New York suit"), 12 ("pre-suit letters").

In fact, *Marco Island Cable* makes clear that threats not coupled to litigation *are not immune from anything.*  The Court there noted that "letters relating to ownership of internal wiring which did not contain reference to litigation, and therefore would not be immune under *Noerr* but which might constitute a violation of FDUTPA," for example, were not the subject of the summary judgment decision.  2006 U.S. Dist. Lexis 45116, at *31-32.  This description more closely reflects the present case, but defendants conveniently ignore that part of the opinion.

Defendants also ignore that they never asserted in litigation any other intellectual property right referred to in their letter – no patent, trademark or other rights.  Defendants' letter and business tactics will be revealed for what they are as a result of Atico's well-pled unfair competition and FDUTPA Amended Complaint:  they threaten, without asserting, rights that they know they do not have.  That is an unfair method of competition that *Marco Island Cable*, a case *defendants cite as applicable authority*, supports.   Here, Atico believes the purposes of the agreement were to interrupt business and force a higher retail price, both of which damaged Atico (not just consumers) who, for example, should have had the business sooner but for defendants' meddling.

*McGuire Oil*, although founded on Alabama law, also supports a conclusion that liability may lie in this case. There, the Eleventh Circuit articulated that the "sham litigation" exception to the *Noerr-Pennington* doctrine subjects to anti-trust liability "a defendant whose activities are 'not genuinely aimed at procuring favorable government action' at all…." 958 F.2d at 1559. Even the *Marco Island Cable* court discussed the exception. 2006 U.S. Dist. Lexis 45116, at *27. Applied here, that exception remains available at least until summary judgment since it is well pled.

Specifically, the New York action could be found to be a sham since there already exists evidence that defendants' New York suit was not aimed at procuring favorable outcome – defendants (plaintiffs in New York) failed to prosecute the action for the entire discovery period. It is as if defendants believed that just filing the case would garner their desired result of forcing a price increase on Atico's business partner, which clearly presents the ability to injure Atico, and has.

But Atico pleads more than just litigation-related conduct, such as the non-litigation related letter and the knowingly unenforceable intellectual property. Thus, this case is not *McGuire Oil* – there are "no facts to suggest that the plaintiffs' lawsuit was brought as part of an anticompetitive plan *external to the underlying litigation*." *Id*. at 1569. Finally, it was significant in *McGuire Oil* that the defendant-counterclaimant was "not one of plaintiffs' customers, nor was it a wholesale competitor of the plaintiffs," which also is not the case here – Atico being a wholesale competitor of defendants. *Id*. at 1562.

Neither the *Marco Island Cable* nor *McGuire Oil* Courts considered motions to dismiss. These cases were at the summary judgment stage and depended on *evidence – i.e*., the courts were not deciding the sufficiency of the pleadings. Thus, defendants' attempt to force Atico to

prove its claims at the motion-to-dismiss stage is unreasonable. Had those courts (including the Eleventh Circuit) faced the question present here – evidence of threats without regard to rights, Atico submits they would have held differently and not immunized the anti-competitive conduct. But those are matters for discovery in this action since the pleadings are sufficient. *See Tapken*, 1992 U.S. Dist. Lexis 11744, at *27-28 ("The obvious purpose of the 12(b)(6) motion is to test the facial sufficiency of the statement of claims for relief. And it is read along with [Fed. R. Civ. P. 8(a)] which requires 'a short and plain statement of the claim….").[5]

Defendants further argue with respect to the elements of interferences with a business relationship that "any interference is deemed privileged – or justified, rather than unjustified." DE. 32 at P. 8 fn. 9. Even if this were true, which it is not, it raises a dispositive question about the merit of the claim and is not properly before the Court in a Rule 12(b)(6) motion. Defendants' suggestion that they are free to interfere with existing business relationships because such interference would be "privileged" or "justified" is further evidence of defendants' misconduct and efforts to hide behind a litigation privilege. They cannot. To let them do so would invite companies to use litigation as a baseless tool rather than one to resolve questions of justice.

For the reasons stated above, the litigation immunity doctrine does not and should not apply in the instant case, and Counts VII and VIII should not be dismissed at this stage in the proceeding.

---

[5] The *Tapken* court observed that a motion to dismiss may be considered under Fed. R. Civ. P. 56 where it cites evidence. Defendants attempt to bootstrap allegation arguments out of a mish-mash of evidence-based arguments not appropriate in their motion to dismiss. Their arguments and the discussion here highlight fact issues regarding defendants' unfair trade practices and intentional interference – for example, when they became aware of Atico, whether the Atico-Walgreens' relationship satisfies the requirements from *finding* defendants liable for interference and so forth. Should the Court elect to consider this motion under Rule 56 motion, Atico submits the non-pre-suit letter and failure to prosecute the New York action present fact issues that merit denial of the Rule 56 motion or, at a minimum, justify conducting Rule 56(f) discovery.

10

### B. Atico Has Properly Stated a Claim That Defendants' Conduct is Actionable Under Tortious Interference With a Business Relationship

Defendants argue a "mere offer…'does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with business relationships.'" Br. at 9 (citing *Ethan Allen*). Here, Atico alleges it had a business relationship. DE 31 at ¶ 74. No more need be alleged. Defendants seek to have Atico prove its claim at the pleading stage. See, *e.g.*, Br. at 9 (failure to allege "identifiable understanding or agreement"). Again, providing proof of its claim at the pleadings stage is premature. *See Tapken*, *supra.*

Defendants argue that Atico's allegation that defendants knew of the Atico-Walgreens relationship is merely speculative. Br. at 9. The allegation is concrete and the proofs are in nonparty Walgreen's and defendants' possession. Hence the "on information and belief" pleading that defendants complain about. Br. at 9-10. Similarly, defendants argument that "it is readily apparent that Defendants could not have intended to harm Atico" is a question of fact for discovery and assessment at an appropriate time – not on a motion to dismiss, where all of the elements of Atico's claim are well pled.

Defendants cite *Romika-USA* for the proposition that a company's actions may be justified when undertaken to protect its own business. Br. at 10. Again, this is an evidence-based assertion that would only be appropriate at the summary judgment were the evidence to support that was the purpose of defendants' actions, which is not what is alleged. Indeed, the *Romika-USA* court considered a summary judgment motion, not a motion to dismiss. 514 F. Supp. 2d at 1335-36. Further, in *Romika-USA*, the interfering entity was a party to the business relationship, which the Court found precluded liability at the summary judgment stage. *Id.* at 1338. The Court went on to explain that the relevant relationship permitted, by contract, interference. *Id*. at 1340. Thus, it is no surprise that the court concluded that the interference

11

there was justifiable.  But that is not this case here where Atico alleges "both direct and intentional" interference, which the *Romika-USA* court explained was a part of a tortious interference claim.  *Id.* at 1340.  That pleading should survive the motion to dismiss and be adjudged based on the evidence.

Defendants argue "proof of damage to the plaintiff" is necessary at the pleading stage. Br. at 10-11.  Wrong.  Allegation of damages is necessary at the pleading stage – proof is necessary at the summary judgment or trial stage.  Consequently, all of the cases defendants cite turned on evidence – as their parentheticals demonstrate: *Eclipse Medical*: "no effort to demonstrate" and "no evidence to provide"; *Kisling*: "no evidence that anything"; *Am. Medical Int'l*: "the fact that." *See also Worldwide Primates*, 26 F.3d at 1091-92 (reversing sanctions award after cased dismissed subsequent to motion for summary judgment and explaining "the record shows…").

Defendants advance a similar position in their FDUTPA arguments.  Br. at 14 (citing *Nyquist*).  Even if their argument were correct, damages are properly alleged and defendants seek to have Atico prove its damages at the pleading stage.  That is not how pleadings work.

### C. Atico Has Properly Stated a Claim That Defendants' Conduct is Actionable Under FDUTPA

In Section C of their motion, defendants' arguments continue to recast Atico's claims as based exclusively on the New York suit and "pre-suit letters."  Br. at 12.  Again, that argument ignores that defendant's letter was not a "pre-suit" letter, but instead a communication that did not articulate any claim of infringement.  Defendants' arguments are therefore straw men that do not undermine the sufficiency of Atico's pleading.

As with their tortious interference arguments, defendants also invoke immunities from FDUTPA in this section that are countered by the same concerns about sham litigation and other

unprotected endeavors in business. For example, they cite *Hansen Hams*, *Yachting Promotions, In re Crown Auto Dealerships*, and *Chicken Unlimited* for the proposition that some activities that may be construed as unfair on some level may be dismissed. Br. at 12. Each of these cases involved a summary judgment determination, an after-trial assertion, or an appeal, and not a motion to dismiss. For example, the *Hansen Hams* court, upon hearing a motion for summary judgment, recognized that no *evidence* supported a contrary conclusion. 2004 U.S. Dist. Lexis 29636 at 25 & n. 13, 26, 27. In fact, the *Hansen Hams* court specifically recognized that the conduct could fall under FDUTPA's prohibitions. *Id.* at 27 n.15. Even more significantly, in *Hansen Hams*, the court *denied a motion to dismiss* earlier in the proceeding: "Because Defendant has failed to establish beyond doubt that Plaintiff can prove no set of facts in support of its claim that would entitle it to relief, Defendant cannot meet the very high standard that would warrant dismissal of the Complaint at this stage of the proceedings." *Hanson Hams, Inc. v. HBH Franchise Co., LLC*, 2003 U.S. Dist. Lexis27134, at *7-8 (S.D. Fla. Nov. 7, 2003) (Seltzer, J.). Here, defendants have failed the same heavy standard.

Defendants also cite the *Rollins* case for the proposition that Atico "has not met the standard for claiming" its conduct was improper. Br. at 12-13. The decision in *Rollins* has no applicability here since it reversed a decision to certify the class in a class action suit and did not turn on a motion to dismiss. *Rollins* is even further afield than the summary judgment decisions cited throughout the remainder of defendants' brief. Even so, the court expressly recognized that the complaint contained a claim under FDUTPA: "the Appellees' complaint asserted …: deceptive and unfair trade practices (count I)…." 951 So. 2d at 865. That is what Atico's Amended Complaint asserts. No more details of the pleading are required. In fact, *Rollins* explicitly recognizes the definitions of "deceptive" and "unfair" inure to the words in Atico's

Amended Complaint. *See id.* at 869 (explaining what "deceptive" and "unfair" mean in the context of adjudicating a FDUTPA claim. The *Yachting Promotions* (taken on appeal), *In re Crown Auto* (where the FDUTPA allegation was asserted at the conclusion of trial), and *Chicken Unlimited* (taken on appeal) courts similarly considered a lack of evidence and not sufficiency of the allegations.

Defendants' arguments that these cases involved "dismissal" in the context of the present motion is misplaced. Br. at 12. So is its use of cases that do not involve unenforceable intellectual property. In fact, it is well-recognized that the knowing assertion of unenforceable intellectual property rights, such as a patent procured by fraud, yields antitrust liability. *See Walker Process Equipment, Inc. v. FMC Corp.*, 385 U.S. 824 (1966). The absence of cited law is telling – Atico's claims should survive.

Defendants go on to again argue that certain damages are not available under FDUTPA, stringing together the *Rollins* and *Nyquist* cases. Br. at 13-14. But their own authority makes clear that FDUTPA permits recovery of "actual damages." *See*, *e.g.*, *Rollins*, 951 So. 2d at 869-70. Not only do defendants ignore all of the other damages pled in Atico's Amended Complaint (other than lost profits), they do not cite any authority excluding lost profits as a consequential damage. Indeed, where the party liable for the unfair and deceptive conduct is not a party to the business it is unfairly affecting, it could well be that their conduct yields actual damages that include lost profits.[6] Thus, cases like *Rollins*, where the parties were in contract, have little applicability in this context.

---

[6] Defendants' lost profits argument based on *Nyquist* are unavailing (Br. at 14), since that decision applied "in the instant case" and for purposes related to *Fla. Stat. Ann. § 672.715(2)(a)*, which statute is not in issue here. 819 F.2d at 1017-18. That section is not FDUTPA and this is not a contract case.

Defendants assert that "under no conception of commerce could the filing of a lawsuit and the sending of pre-suit letters be deemed 'the conduct of any trade or commerce.'" Br. At P.12.  This is simply not so.  FDUTPA expressly provides that "trade or commerce *shall* include the conduct of *any* trade or commerce, however denominated." Florida Statutes § 501.203(8)[7] (emphasis added).  FDUTPA further states that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." *Id.* at 501.204(1).  Defendants' deceptive and tortious conduct is captured by FDUTPA, and is unlawful. Allowing the defendants to argue otherwise raises a dispositive question not appropriate in a Rule 12(b)(6) motion.

Defendants argue that "FDUTPA expressly excludes claims 'for damage to property other than property that is subject of the consumer transaction.'" True, but irrelevant.  Atico does not plead "property damage" or "trademark infringement" as defendants allege.  Atico pleads facts that provide notice to the defendants that Atico has been "damaged directly and proximately by defendants' unlawful actions." DE. 31 at ¶ 111-116.  Atico need not prove its case at the pleadings stage.

With respect to Counts VII and VIII, Atico's Amended Complaint clearly pleads facts that "raise a right of relief above the speculative level", as required by *Twombly*.  Consequently, Atico has properly and sufficiently pled the counts of Tortious Interference With a Business Relationship, and FDUTPA, and defendants' motion to dismiss should be denied.

---

[7] The full text of Florida Statutes § 501.203(8) reads "[t]rade or commerce  means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity."

**IV.  CONCLUSION**

Defendants need not speculate as to the right of relief sought by Atico.  They already know.  Atico has exceeded the *Twombly* pleading standard.  The Court should reject Defendants' attempts to hide behind the Florida litigation doctrine.  Further, Counts VII and VII and the facts supporting them are sufficiently pled.  Accordingly, Atico respectfully requests that this Court deny defendants' motion to dismiss.


Dated:  July 6, 2009           By:     s/ Jeffrey H. Kamenetsky
                                       Jeffrey H. Kamenetsky, Esq. (FL. Bar # 114571)
                                       Email:  jkamenetsky@cwiplaw.com
                                       Alan M. Weisberg, Esq. (FL. Bar # 047349)
                                       CHRISTOPHER & WEISBERG, P.A.
                                       200 East Las Olas Boulevard, Ste 2040
                                       Fort Lauderdale, Florida 33301
                                       Telephone: (954) 828-1488
                                       Facsimile: (954) 828-9122

                                       *Attorneys for Plaintiff Atico International USA, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2009, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system.

s/ Jeffrey H. Kamenetsky
Jeffrey H. Kamenetsky, Esq.

162754