**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 09-60397-CIV-COHN/SELTZER

**ATICO INTERNATIONAL USA, INC.,**
**a Delaware corporation,**

    **Plaintiff,**

**v.**

**LUV N' CARE, LTD., a Louisiana corporation,**
**and ADMAR INTERNATIONAL, INC., a**
**Delaware corporation,**

    **Defendants.**

_____/

**LUV N' CARE, LTD., a Louisiana corporation,**
**and ADMAR INTERNATIONAL, INC., a**
**Delaware corporation,**

    **Counterclaim and**
    **Third Party Plaintiffs,**

**v.**

**ATICO INTERNATIONAL USA, INC.,**
**a Delaware corporation, Counterclaim Defendant**
**and WALGREEN CO., an Illinois corporation, Third**
**Party Defendant**

_____/

**THIRD-PARTY PLAINTIFFS' OPPOSITION TO WALGREEN'S MOTION TO DISMISS OR STAY THE THIRD PARTY COMPLAINT**

  Defendants and Third-party Plaintiffs Luv n' care, Ltd. ("Luv N' Care" or "LNC") and

Admar International ("Admar"), (hereinafter, collectively, the "Third Party Plaintiffs"), hereby

oppose Walgreen Co.'s motion to dismiss or stay the Third Party Complaint (D.E.# 37) and state

as follows:

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................2

   A.   COMPLIANCE WITH THIS COURT'S SCHEDULING ORDER ................................ 2

   B.   WALGREEN'S SURPRISE LITIGATION TACTICS BETWEEN NEW YORK AND FLORIDA............ 3

   C.   WALGREEN'S OPPOSITION TO THE PROPOSED AMENDED COMPLAINT IN THE NEW YORK
        ACTION IS CONTRARY TO ITS POSITION HERE ................................................ 4

   D.   LNC AND ADMAR'S MOTION TO AMEND OR TRANSFER THE NEW YORK ACTION WAS
        PROPER AND TIMELY .................................................................................... 5

   E.   WALGREEN'S OWN "CLAIM SPLITTING" BETWEEN NEW YORK AND FLORIDA .................. 6

   F.   WALGREEN KNOWS THAT ROYAL KING SETTLED THE TEXAS ACTION................................ 8

III.  ARGUMENT .......................................................................................................9

   A.   THE CLAIMS AGAINST WALGREEN ARE PROPER UNDER THE FEDERAL RULES .................. 9

   B.   THIS COURT SHOULD NEITHER DISMISS NOR STAY THE CLAIMS AGAINST WALGREEN .... 11

      1.   *The First-Filed Action Doctrine Does Not Apply to All of the Claims Asserted
           Against Walgreen*.................................................................................. 11

      2.   *The First-Filed Action Doctrine* ................................................. 12

      3.   *Compelling Circumstances Warrant Proceeding with the Claims Against Walgreen*.. 13

         i.   Walgreen concealed Atico from the New York action, preventing a fair opportunity
              for discovery and litigation on the merits among all parties ..................................... 13

         ii.   Walgreen instituted this second-filed action, which has always been based on the
              New York action .......................................................................................... 14

         iii.   Walgreen itself sought to have this action proceed without delay ............................ 15

   C.   THE THIRD PARTY COMPLAINT IS NOT BARRED BY CLAIM-SPLITTING PRINCIPLES ........... 15

IV.   CONCLUSION ..................................................................................................18

## TABLE OF AUTHORITIES

### CASES

*Bockweg v. Anderson*, 428 S.E.2d 157 (N.C. 1993)----------------------------------------------------------17

*Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*) -----------------------12

*Carneys Point Metal Processing, Inc. v. Reco Constructors*, 2006 WL 924992 (E.D.Pa.) -------10

*CNH Capital Amer., LLC v. Southeastern Aggregate, Inc.*, 2009 WL 1759572, *4 (slip copy) (S.D.Ga. June 18, 2009)------------------------------------------------------------------------------ 9

*Colorall Technologies Int'l, Inc. v. Plait,* 2005 WL 4655380, *6 (S.D. Fla. 2005) ----------------13

*Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003) -------------------------------16

*Del Pino v. AT&T Information Sys., Inc.*, 921 F.Supp. 761, 766 (S.D.Fla. 1996) ------------------16

*Delaware Valley Transplant Program v. Coye*, 722 F.Supp.1188, 1194-96 (D.N.J. 1989)-------18

*Dodd v. Hood River County*, 59 F.3d 852 (9th Cir. 1995) -------------------------------------------------17

*Elec. Detection Prods., Inc. v. Chapin*, 26 F.R.D. 121, 122( D.Mass. 1959)------------------------10

*Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp.*, 46 F.Supp.2d 1276 (M.D.Fla. 1999) ---------------------------------------------------------------------------------------------------10

*Hyplains Dressed Beef, Inc. v. EE Operating Corp.*, 142 F.R.D. 174 (D.Kan. 1992) -------------10

*Jang v. United Technologies Corp.*, 206 F.3d 1147, 1149) (11th Cir. 2000)-------------------------16

*John Alden Life Ins. Co. v. C.A. Cavendes*, 591 F.Supp. 362, 368 (S.D.Fla. 1984) ----------------16

*Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999)--------------9, 10

*Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) ---------------------12

*Marietta Drapery & Window Coverings Co., Inc. v. North River Ins. Co.*, 486 F.Supp.2d 1366, 1369 (N.D.Ga. 2007) ----------------------------------------------------------------------------------13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)---12

*Moore v. Potter*, 2006 WL 2092277, *5-6 (M.D.Fla.)-----------------------------------------------------16

*Ronson Patents Corp. v. Sparklets Devices, Inc*., 102 F.Supp. 123 (E.D.Mo. 1951)--------------10

*Supreme Intern. Corp. v. Anheuser-Busch, Inc.*, 972 F.Supp. 604, 607 (S.D. Fla. 1997) ---------12

*United Nat. Ins. Corp. v. Jefferson Downs Corp.*, 220 F.R.D. 456, 458 (M.D.La. 2003) ---------11

### RULES

Fed.R.Civ.P. 1.-------------------------------------------------------------------------------------------- 9

Fed.R.Civ.P. 13(h) -------------------------------------------------------------------------------------- 9

Fed.R.Civ.P. 14(a)-------------------------------------------------------------------------------------- 9

Fed.R.Civ.P. 8(c)(2) ------------------------------------------------------------------------ 9

Fed.R.Civ.P. 8(e) --------------------------------------------------------------------------- 9

Fed.R.Civ.P. 16(b) ------------------------------------------------------------------------- 5

Fed.R.Civ.P. 19 ----------------------------------------------------------------------------- 9

Fed.R.Civ.P. 20 --------------------------------------------------------------------- 9, 10, 11

Fed.R.Civ.P. 26(a)(1) ------------------------------------------------------------------ 3, 13

Fed.R.Civ.P. 26(a)(3) --------------------------------------------------------------------- 3

Fed.R.Civ.P. 30(b)(6) --------------------------------------------------------------------- 3

TREATISES

47 Am.Jur.2d Judgments §476 ------------------------------------------------------------16

Restatement 2d of Judgments §26(1)(a) ------------------------------------------------17

Restatement 2d of Judgments §26(1)(f) -------------------------------------------------18

Restatement 2d of Judgments §26, cmt. J-----------------------------------------------18

Wright & Miller, Fed. Practice and Procedure §1435, p. 270-271 ------------------------ 9

## MEMORANDUM

### I.      INTRODUCTION

Walgreen Co.'s ("Walgreen") motion to dismiss or stay the Third Party Complaint follows the same pattern that Walgreen established in the New York action,[1] namely: (a) misstating or omitting the applicable law; (b) omitting facts; (c) blaming LNC and Admar for Walgreen's nine-month concealment of Atico International USA, Inc. ("Atico") throughout discovery in the New York action; and (d) attempting to avoid litigation on the merits among all the parties.  Indeed, even Walgreen's chosen "do-over" theme is merely a deceptive device it is using in an attempt to divert this Court's attention from the true facts relating to the New York action and its own bad faith, surprise litigation tactics there and before this Court.

Walgreen concealed Atico throughout discovery in the New York action until after it, together with Atico, filed this Florida action; refused to respond to LNC and Admar's timely-when-served discovery requests in the New York action; and stonewalled LNC and Admar during deposition—even alleging that it is Atico, not Walgreen, that has the requested knowledge.

No deadline for amending pleadings or joining parties was ever set in the New York action.  Thus, after Walgreen finally disclosed the existence of Atico, it was entirely timely and proper for LNC and Admar to seek to amend that action to include Atico and/or transfer that case to this Court to be consolidated with the Florida action, after all the Southern District of Florida was both Walgreen and Atico's choice of forum.

Walgreen's additional mischaracterization to the effect that LNC and Admar are seeking to avoid the preclusive effect of a grant of summary judgment to Walgreen by the Southern District of New York (the "New York court") is ridiculous and counts chickens not yet hatched.  The New York court has not yet determined the parties' cross motions for summary judgment.  Thus, there is no preclusive effect to avoid.  Similarly, Walgreen's mischaracterization that LNC and Admar are seeking to grant their own motions by failing to await a ruling by the New York court and, thereby, circumvent the Federal Rules of Civil Procedure (the "Federal Rules")

---

[1]      The action referred to as the "New York action" is case no. 08-civ-4457, styled *Luv N' Care, Ltd. and Admar Int'l, Inc. v. Walgreen Co. and Kmart Corp.*  *See* D.E.# 1 and #33, Ex.s A.

1

ignores reality.  LNC and Admar's motion to amend or transfer[2] the New York action was proper under the Federal Rules.  Moreover, the New York court has not yet determined that pending motion to amend or transfer.  Therefore, LNC and Admar are not attempting to circumvent an adverse decision or any Federal Rules relating to the amendment of pleadings.

As the factual background and argument below will show, this Court should deny Walgreen's motion to dismiss or stay the Third-party Complaint because: (1)  the Federal Rules allow for the assertion of the claims against Walgreen in conjunction with the counterclaim asserted against Atico and proceeding with those claims promotes justice among *all* parties; (2) the first-filed action doctrine does not apply to all of the claims asserted against Walgreen and, even if it did, compelling circumstances justify proceeding with all claims against Walgreen, including the fact that: (i) Walgreen prevented a fair opportunity for discovery and litigation on the merits in the New York action by concealing Atico until after it had filed this case, (ii) Walgreen and Atico have always based this action upon the New York action, and (iii) Walgreen itself has asked this Court to proceed with this action without delay; and (3) the doctrine of *res judicata* and its claim-splitting principles do not apply in light of the fact that there has been no determination of LNC and Admar's motion to amend or transfer in the New York action—let alone any other determination or final judgment in that case.

## II.     FACTUAL BACKGROUND

### A.     Compliance With This Court's Scheduling Order

On April 15, 2009, this Court entered a Scheduling Order, which set a deadline of June 19, 2009 for the joinder of parties.  D.E.#20.  Accordingly, on June 18, 2009, to comply with that Order, preserve their rights as against Walgreen, and bring all parties into one proceeding (*which Walgreen has made every effort to avoid by concealing Atico in the New York action*), LNC and Admar joined Walgreen back into this action via the filing of their Counterclaim and Third Party Complaint against Atico and Walgreen.  D.E.#33.  That pleading is the subject of Walgreen's motion to dismiss or stay at issue here.  *See* D.E.#37.

---

[2]      LNC and Admar's motion to amend or transfer and reply in support thereof are NY Dkt.# 41, 85.

**B.    Walgreen's Surprise Litigation Tactics Between New York and Florida**

On March 13, 2009, Walgreen and Atico filed this lawsuit against LNC and Admar. D.E.#1.[3]  Prior to that date, Walgreen had ***never disclosed Atico in the New York action***, which had been pending for approximately ten months.  Indeed, Walgreen filed a counterclaim in the New York action on August 6, 2008, which never mentions Atico nor alleges any tortious interference with Walgreen and Atico's relationship.    NY Dkt.#12.[4]    Moreover, on November 21, 2008, Walgreen made its initial disclosures in the New York action and knowingly failed to disclose Atico as a witness therein.[5]  NY Dkt.#41, Ex. 4.  It was not until April 10, 2009, only a few weeks before the close of discovery in the New York action that Walgreen finally disclosed Atico as a witness in the New York action.  NY Dkt.#41, Ex. 5. Incredibly, Walgreen seems comfortable with its concealment and disregard for the Federal Rules, particularly Fed.R.Civ.P. 26(a)(1).  In fact, Walgreen blames LNC and Admar for not having miraculously discovered Atico without any clue from Walgreen.[6]

On May 12 and 13, 2009, LNC deposed Walgreen's buyer, Jeffrey Kruckman, in both his individual capacity and as Walgreen's Rule 30(b)(6) designee in the New York action. However, Mr. Kruckman was not prepared. NY Dkt.#81, Opp. Decl. of Cohen, ¶¶81-82, Ex. 18. Feigning ignorance, Kruckman responded "I don't know," "I don't recall," or "I don't remember" *over 400 times* to LNC's questions. NY Dkt.#74, Opp. Decl. of Malynn, ¶8. Walgreen repeatedly denied knowledge and stated that ***Atico*** has the knowledge.[7]  NY Dkt.#81,

---

[3]     On April 2, 2009, Walgreen voluntarily withdrew its claims in this action.  D.E.#10.

[4]     Docket entries for the New York action will be referred to as "NY Dkt. #__," which is consistent with Walgreen's references.  Docket entries in this case, will be referenced simply as "D.E.#__."  So as to not burden the Court with a multitude of exhibits, LNC and Admar have not attached such documents hereto.  However, LNC and Admar will gladly submit copies of any of the referenced documents upon request.

[5]     Walgreen and Atico share the same counsel.  *See* NY Dkt.#12, p. 14, and D.E.#1.

[6]     Walgreen is trying to excuse its discovery abuse by falsely asserting that it had no affirmative duty to disclose Atico under Rule 26(a)(1), claiming that Rule 26 only "requires" disclosure of witnesses and information that it may "rely upon at trial."  NY Dkt.#68, p.8 (emphasis in original).  However, Rule 26(a)(1) contains no restriction of initial disclosures to witnesses and things to be used *at trial*.  Such a reading would subvert the Rule's purpose and make Rule 26(a)(3) superfluous and unnecessary.

[7]     If this is so, it is all the more reason that Walgreen should have, at the very least, disclosed Atico in its original initial disclosures in the New York case.  However, even before such, it should have disclosed Atico to the New York court as a necessary party to its counterclaim.  Fed.R.Civ.P. 19(c).

3

Opp. Decl. Cohen ¶83, Ex. 18.  Due to Walgreen's failure to meet its discovery obligations, LNC sought permission to file discovery motions, which permission the Court denied.[8]  *Id.*, ¶85-86, Ex.14, 23.  On June 19th, the parties communicated about continuing Kruckman's deposition and Walgreen admitted that it needs to properly prepare Kruckman as its Rule 30(b)(6) designee.  *Id.*, ¶95-96; NY Dkt.#74, Opp. Decl. of Malynn ¶2-5, Ex.1-4.  Walgreen offered to be deposed again and produce three more witnesses to meet its Rule 30(b)(6) obligations. NY Dkt.#81, ¶95-96; NY Dkt.#74, Opp. Decl. of Malynn ¶2-5, Ex.1-4.  Thus, due to the misconduct of Walgreen and its Rule 30(b)(6) designee, discovery in the New York action is not truly closed and is ongoing.

### C.  Walgreen's Opposition to the Proposed Amended Complaint in the New York action is Contrary to its Position Here

In the New York action, Walgreen claims that LNC and Admar's proposed amended complaint would add "dozens of new" claims that were purportedly not raised in the original complaint, such as packaging infringement claims and claims of additional unfair conduct.  NY Dkt.#68, at p.1, 10.  Now, here, to suit its purposes for the instant motion, Walgreen claims that the Third Party Complaint (which it compares to only the proposed amended complaint in the New York action) is "virtually indistinguishable" from the claims at issue in the New York action. D.E.#37, p. 2, 5, 7.  However, the New York court has not yet decided the pending motion to amend; thus, the original complaint still controls the New York action.

Moreover, Walgreen and Atico have previously admitted that this lawsuit does **not** contain "mirroring and overlapping claims" because "The Florida case contains Florida state law claims. . ." D.E.#6, ¶11.  Now, in regard to its instant motion, Walgreen omits the fact that the claims asserted against it include two Florida state law causes of action to the effect that it engaged in certain conduct *with* Atico, a Florida company it concealed throughout discovery in the New York action, that constitutes unfair competition and deceptive practices under Florida law.  *See* D.E.#33, p. 38-40.  Therefore, pursuant to Walgreen's own admission, at the very least, LNC and Admar's state law claims against Walgreen cannot be dismissed or stayed.

---

[8]    The individual practice rules of the J. Chin in the New York action require the parties seek permission to file motions.  *See* http://www1.nysd.uscourts.gov/cases/show.php?db=judge_info&id=155.

**D.    LNC and Admar's Motion to Amend or Transfer the New York Action was Proper and Timely**

The New York court never entered a scheduling order to set the four deadlines *required* by Rule 16(b)(3).[9]  *See* NY Dkt.# 81, Opp. Decl. of Cohen, ¶3, 6.  Consequently, the parties were operating without direction or limitation as to joining parties or amending pleadings. Nevertheless, within two weeks of first learning of Atico,[10] on March 27, 2009, LNC and Admar began seeking the New York court's permission to file a motion for leave to amend. *Id*., ¶27, Ex. 5.  Moreover, on April 2, 2009, during a conference with the New York court (which Walgreen attended by telephone *from Florida*),[11] LNC and Admar again offered to amend the Complaint in the New York action. *Id*., ¶43-44; NY Dkt.#68, p.8.  Walgreen admits that Plaintiffs' request was discussed on April 2nd with the New York court.  NY Dkt.#68, p.8.[12] The result of that conference was that the New York court accelerated the discovery deadline and directed that LNC and Admar had until the dispositive motions deadline to move to amend the Complaint.  NY Dkt.# 81, Opp. Decl. of Cohen, ¶47-48, 51.

Next, on April 14, 2009, LNC and Admar sought permission to file a motion to transfer the New York action to the Southern District of Florida. *Id*., ¶55, Ex. 9.  However, on April 28th, in violation of the Second Circuit's decision in *Richardson Greenshields Securities, Inc. v. Mui-Hin Lau*, 825 F.2d 647, 650-53 (2nd Cir. 1987), the New York court refused to hold a pre-motion conference regarding a motion to transfer.  NY Dkt.#27.  Instead, the Court ordered that: "If plaintiffs wish to move to transfer, they shall do so on the summary judgment schedule; motion papers shall be submitted by June 1, 2009." *Id*.  That deadline was later extended to June 8th.  NY

---

[9]    Rule 16(b)(2)-(3) requires entry of a scheduling order (by the earlier of 120 days after any defendant has been served or 90 days after any defendant has appeared) that includes at least four deadlines: to join parties; to amend pleadings; to complete discovery; and to file motions.

[10]   Only *after* Walgreen and Atico commenced the Florida case did Walgreen serve a letter to the New York court, LNC and Admar advising them of Atico and this Florida case.  NY Dkt.# 81, Opp. Decl. of Cohen, ¶24-25.

[11]   Walgreen and Atico shared counsel reside in Florida. *See* NY Dkt.#12, p. 14 and D.E.#1.

[12]   However, Walgreen claims that the Court refused the request because discovery was set to close a few weeks later. D.E.#68, p 8.  Notably, refusal to allow Plaintiffs to file a motion to amend violates the Second Circuit's *Richardson* decision. *Richardson Greenshields Securities, Inc. v. Mui-Hin Lau*, 825 F.2d 647, 650-53 (2nd Cir. 1987) ("Absent extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation, a court has no power to prevent a party from filing pleadings, motions or appeals. . ..").

5

Dkt.#33.  Thus, Plaintiffs' motion to amend or transfer was timely filed with the New York court.  NY Dkt.#41, 85.

The New York court has not yet decided LNC and Admar's pending motion to amend or transfer.[13]  Likewise, the New York court has not yet decided the parties' cross-motions for summary judgment.  Moreover, the New York case has not yet been set for trial.

**E.     Walgreen's Own "Claim Splitting" Between New York and Florida**

When Walgreen and Atico initiated this lawsuit, they asserted claims for declaratory judgment that they were not infringing, diluting and/or tarnishing the trade dress that LNC and Admar asserted in the New York action, and that they were not unfairly competing with LNC and Admar.  D.E.# 1, Count I at ¶¶62-82.  Walgreen and Atico also asserted a claim for tortious interference with their business relationship.  *Id.*, Count II at ¶¶83-89.  Finally, Walgreen and Atico asserted a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  *Id.*, Count III at ¶¶ 90-95.

Each of Walgreen and Atico's original claims depended upon the New York action and the facts from which that lawsuit arose.  *See* D.E.# 1, ¶¶6, 7-9, 16, 35-36, 38, 41-42, 44-46, 48, 50-53, 55, 57-59, 64-72, 74, 78-80, 86, 91-2, and Ex. A.  Indeed, only *two* allegations (out of 117) vaguely mentioned two purportedly new but unidentified products[14] relating to their non-infringement claims.  D.E.# 1, ¶60-61.[15]  Moreover, other than the mere filing of the New York action, Walgreen and Atico set forth <u>no other basis</u> for their tortious interference claim.  *See* D.E.#1, ¶83-89.  Likewise, to support their claim under FDUTPA, Walgreen and Atico merely alleged that LNC and Admar's unfair or deceptive act was their filing of the New York action. D.E.#1, ¶91.

Seven months earlier, on August 6, 200<u>8</u>, Walgreen had filed a counterclaim in the New York action, which never mentioned Atico nor alleged any tortious interference with Walgreen and Atico's relationship.  NY Dkt.# 12.   Nor has Walgreen ever sought to amend its

---

[13]     Walgreen admits this fact, D.E.#37, p.5, but proceeds to ignore it.

[14]     Walgreen and Atico attached an exhibit (Ex. B) to the original complaint; however, that black and white photograph was mostly black and, thus, obscured a view of the product except for small portions of the caps.

[15]     Atico's Amended Complaint altered those two allegations and does not reference any "new products" but refers back to the original complaint, which is no longer of any effect.  D.E.#31, ¶77-78.

counterclaims in the New York action to add such a claim. Instead, Walgreen and Atico engaged in its own so-called claim splitting so that they could "control the timing and discovery" in this action. D.E.# 6, ¶10.

Walgreen and Atico cannot claim prejudice should this case proceed given that they chose to bring this second-filed action instead of asserting these claims with the counterclaim in the New York action. Moreover, Walgreen and Atico themselves expressed to this Court their desire for this action to proceed by stating that: "since discovery is a self-executing process, **discovery could proceed** while the New York court determines that any overlapping claim elements are baseless, at which point only the Florida case would survive as to Walgreens and Atico." D.E.#6, p.4, n.4 (emphasis added).

Subsequently, for unexplained reasons, Walgreen voluntarily dismissed its claims in this lawsuit, leaving its cohort Atico to carry the torch of this lawsuit against LNC and Admar. Atico amended the complaint on May 29, 2009. D.E.#31, Am. Compl. Nevertheless, Atico's Amended Complaint continues to allege many facts regarding Walgreen's beliefs, choices, practices, and sales thereby showing that Walgreen is a central figure and active participant in the transactions relating to this action and is, thus, a necessary party. *See* D.E.#31, ¶¶5, 21, 23-27,[16] 32-35,[17] 39-42, 51-52, 56-57, 59, 76-77, 81, 84-85, 88, 91, 96, 100-101, 103-108, 111, 113,[18] and Ex. A.

Atico's Amended Complaint also expanded the claims in this action from three to eight, attached the same Exhibit A, but removed Exhibit B. Compare D.E.#1 and 31. Moreover, Atico alleged **an entirely new theory and basis for its claims** by adding several allegations regarding a letter writing campaign by LNC and Admar purportedly designed to improperly assert their intellectual property rights. D.E.#31, ¶¶39-50. The rest of its allegations continue to focus on the New York action and the facts from which it arose. *See* D.E.#31, ¶¶5-7, 9-12, 19, 21, 38-39, 51-54, 56, 59, 60-69, 71-78, 81, 84-85, 88, 91, 96-97, 100-101, 104, 111 and Ex. A.

---

[16]     Atico states: "Walgreen believes its privately branded products to be of at least comparable quality to nationally branded, similar products." D.E.#37, ¶26.

[17]     Atico states: "Walgreen conducts prudent business practices." D.E.#37, ¶32.

[18]     Atico alleges: "Defendants knew or should have known that their actions were unlawful and would damage **Walgreens**." D.E.#37, ¶113.

Now, despite Walgreen and Atico's own knowledge of and arguments based on the Federal Rules, Atico unilaterally amended its Amended Complaint—without consent or leave of court, or a showing of good cause—by filing a purportedly corrected exhibit to Walgreen and Atico's original complaint (D.E.#1). D.E.#45. However, what Atico filed is not a corrected exhibit that simply provides an unobstructed view of the original, obstructed photograph in Ex. B to the original Complaint but, rather, an altogether new exhibit, which it intends to on rely for a description of products at issue. The new exhibit contains an entirely new photograph that possibly depicts entirely different products than Walgreen and Atico attempted to show in the original Complaint's exhibit. Moreover, Atico is amending an exhibit to a pleading (D.E.#1) that is no longer of any effect—after the deadline (June 19) set forth in the Scheduling Order. *See* D.E.#20.

### F.   Walgreen Knows that Royal King Settled the Texas action

In an attempt to create some sort of negative spin regarding multi-district litigation, Walgreen points to LNC and Admar's Texas case[19] against Royal King, the Thailand-based pirate that Walgreen and Atico knowingly used to manufacture the knockoffs.[20] However, the location where personal jurisdiction over Royal King could be obtained has no bearing on this motion. This is especially so since, rather than sit for a court-ordered deposition, Royal King chose to settle that case, agreeing to pay LNC and Admar approximately $900,000 including a 12% royalty on past sales of knockoffs, including products that Walgreen alleges are unprotectable. NY Dkt.#75, Opp. Decl. N.E. Hakim, ¶4. Royal King not only agreed to permanently cease manufacturing the knockoffs but also admitted that it ***was Walgreen that approached Royal King to knockoff Luv n' care's cups***. *Id.* at ¶4, 7. Thus, if the Texas case has relevance, it shows that if Walgreen was made to comply with the Federal Rules and litigate on the <u>merits</u>, the New York case and this action would end just as quickly.

While Walgreen raised each of these facts in a cursory and vague manner, LNC and Admar believe that in light of the full explanation of such facts provided above and the law set forth below, this Court should deny Walgreen's motion to dismiss or stay.

---

[19]   The Texas case is a ***closed*** case in the Eastern District of Texas, having case number 2:08-cv-163, and styled *Luv N' Care, Ltd. and Admar Int'l, Inc. v. Royal King Baby Product Co., Ltd.*.

[20]   Walgreen admits Royal King manufactures the knock-offs sold by Walgreen. D.E.#68, p. 2-3.

8

### III.   ARGUMENT

#### A.   The Claims Against Walgreen are Proper Under the Federal Rules

Walgreen argues that the Third Party Complaint against it is improper under Fed.R.Civ.P. 14(a).  D.E.#37, p. 11-12.  However, Walgreen ignored those parts of the Federal Rules that show that, regardless of the title assigned to the pleading against it, the claims are just and proper under the Rules and may be maintained.

The Federal Rules are aimed at securing not only a speedy and inexpensive determination but also a "just" determination of every action and proceeding.  Fed.R.Civ.P. 1.  Thus, pursuant to the Federal Rules, "[p]leadings must be construed so as to do justice."  Fed.R.Civ.P. 8(e).  If a counterclaim is mistakenly designated, the court should treat the pleading as though it were correctly designated.  *See* Fed.R.Civ.P. 8(c)(2).  Finally, in light of the fact that LNC and Admar's pleading is paired with a Counterclaim against Atico, it was proper for them to join Walgreen as an additional party to that counterclaim.  Fed.R.Civ.P. 13(h).

Just recently, a court within this Circuit held that although a pleading did not qualify as a third-party complaint, it was "salvageable. . .via a different classification. Pursuant to Rule 13(h), persons other than those made parties to the original action may be made parties to a counterclaim in accordance with the provisions of Rule 19 and 20."  *CNH Capital Amer., LLC v. Southeastern Aggregate, Inc.*, 2009 WL 1759572, *4 (slip copy) (S.D.Ga. June 18, 2009) (quoting Wright & Miller, Fed. Practice and Procedure §1435, p. 270-271).[21]  Rule 13(h) may only authorize the joining of parties to a counterclaim being asserted against an existing party, *CNH Capital*, 2009 WL 1759572, at *4; however, that condition is met here whereas LNC and Admar's pleading asserts a counterclaim against Atico, a preexisting party.  *See* D.E.#33, p. 18.

In *CNH Capital*, the court found that the third-party defendant was a joint tortfeasor who was an active participant in the conduct at issue in the lawsuit and was, therefore—under Eleventh Circuit precedent—a necessary party under Rule 19.  *CNH Capital*, 2009 WL 1759572, at *5 (citing *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999).[22]

---

[21]   Walgreen also relies on Wright & Miller for its argument but failed acknowledge this portion of the treatise.

[22]   The Eleventh Circuit explained that:

Accordingly, the court joined the third-party defendant as a co-defendant in the counterclaim. *Id.* (finding that the counterclaims necessarily required the court to evaluate the joined party's conduct and substantially implicated its interests).

Likewise, in *Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp.*, 46 F.Supp.2d 1276 (M.D.Fla. 1999), the court denied the third-party defendant's motion to dismiss because "the parties were properly joined as additional parties to the counterclaim pursuant to Rule 13(h). Furthermore, the Counter/Third-Party Plaintiff has clearly satisfied the requirements for permissive joinder under Rule 20." *Fla. Software*, 46 F.Supp.2d at 1281. In *Hyplains Dressed Beef, Inc. v. EE Operating Corp.*, 142 F.R.D. 174 (D.Kan. 1992), the court similarly denied a motion to drop the plaintiff's customers from the counterclaim, finding that the allegations were sufficient to allow permissive joinder of the plaintiff's customers under Rule 13(h) and 20. *Hyplains*, 142 F.R.D. at 176; *see Elec. Detection Prods., Inc. v. Chapin*, 26 F.R.D. 121, 122( D.Mass. 1959).[23]

Walgreen also argues in its footnotes that the Third Party Complaint is untimely. D.E.#37, nn. 2, 6. However, the case it relies on in note 6, *Carneys Point Metal Processing, Inc. v. Reco Constructors*, 2006 WL 924992 (E.D.Pa.), actually supports the timeliness of LNC and Admar's claims against Walgreen. Atico's May 29, 2009 amended complaint set forth new theories of liability, such as a letter writing campaign by LNC and Admar allegedly designed to improperly assert their intellectual property rights. D.E.#31, ¶¶39-50. *See Section II.E., supra.* Therefore, LNC and Admar's June 18th answer functions as an 'original' answer under

---

we held in *Haas v. Jefferson National Bank*, 442 F.2d 394 (5th Cir. 1971), that a joint tortfeasor will be considered a necessary party when the absent party emerges as an active participant in the allegations made in the complaint that are critical to the disposition of the important issues in the litigation.

*Laker Airways*, 182 F.3d at 848. Here, the allegations of the original Complaint (DE#1), the Amended Complaint (DE#31) and the Counterclaim (DE#33), among other papers submitted in this action, show that Walgreen is an active participant in the conduct at issue whose interests are substantially indicated and will need to be evaluated by this Court. Moreover, the Thailand pirate who manufactured the infringing products that Walgreen sells admitted that it was Walgreen who approached Royal King to knock-off LNC's cups. NY Dkt.#75, Opp. Decl. N.E. Hakim, ¶4, 7.

[23]   *See also Ronson Patents Corp. v. Sparklets Devices, Inc.*, 102 F.Supp. 123 (E.D.Mo. 1951), where the defendant presented an amended counterclaim seeking to add an additional claim and another party. There, despite the fact that the defendant did not present the amended counterclaim until two weeks before the scheduled trial date, the court allowed the additional claims and the new party to be joined pursuant to Rule 13(h) and to further the ends of justice. *Ronson*, 102 F.Supp. at 125-26.

Rule 14(a), making the counterclaim/third-party complaint included therewith timely. *See Carneys Point*, 2006 WL 924992, *1; *United Nat. Ins. Corp. v. Jefferson Downs Corp.*, 220 F.R.D. 456, 458 (M.D.La. 2003) ("The third and more pragmatic approach allows an answer to an amended complaint to function as an original answer, within the meaning of the rule, if the amended complaint changes the need for impleader."). Even if the June 18th pleading did not equate to an 'original' answer, equity suggests that this Court should not apply the 10-day limitation of Rule 14(a) to LNC and Admar's answer to the original Complaint because Walgreen was a Plaintiff to the original Complaint; however, it was not a party to the Amended Complaint. *Compare* D.E.#1 and 31.

Here, by initiating this second action, Walgreen demonstrated that it is an active participant with Atico in the claims at issue here. *See* Section II.E., *supra*. Moreover, Atico's Amended Complaint continues to depend on many facts regarding Walgreen's beliefs, choices, practices and sales, thereby further demonstrating that Walgreen is not merely a joint tortfeasor but, rather, an active participant in the transactions relating to this action and, thus, a necessary party. Indeed, even Royal King admitted that it ***was Walgreen that approached Royal King to knockoff Luv n' care's cups***. NY Dkt.#75, Opp. Decl. N.E. Hakim, ¶4, 7. Therefore, Walgreen must be joined in the Counterclaim pursuant to Rule 13(h) and 19. Alternatively, and at the very least, the facts show that Walgreen should be permissively joined in the Counterclaim under Rule 13(h) and Rule 20. Accordingly, LNC and Admar's claims against Walgreen are proper under the Federal Rules.

### B.  This Court Should Neither Dismiss Nor Stay the Claims Against Walgreen

#### 1.  The First-Filed Action Doctrine Does Not Apply to All of the Claims Asserted Against Walgreen

As explained in Section II.C., *supra*, Walgreen has taken the position in the New York action that LNC and Admar's proposed amended complaint would add "dozens of new" claims that were not raised in the original complaint, such as packaging infringement and claims of additional unfair conduct. NY Dkt.#68, at p.1, 10. However, since the New York court has not yet decided the pending motion to amend, the original complaint still controls the New York action and, according to Walgreen, the purported "dozens of new" claims in the allegedly equivalent Third Party Complaint here are not yet a part of the New York action. Therefore,

pursuant to Walgreen's own contentions, the New York action is **not a first-filed action** as to the packaging infringement claims and certain claims of unfair competition.

Moreover, Walgreen and Atico previously **admitted that this lawsuit does not contain "mirroring and overlapping claims"** with the New York action because "The Florida case contains Florida state law claims. . ." D.E.#6, ¶11.   Likewise, the claims that LNC and Admar have asserted against Walgreen also include two Florida state law causes of action.   Indeed, Walgreen engaged in conduct *with* Atico, a Florida company that it concealed throughout discovery in the New York action, which constitutes unfair competition and deceptive practices **under Florida law**.   D.E.#33, p. 38-40.   Therefore, at the very least, by Walgreen's own admission, LNC and Admar's Florida state law claims against Walgreen cannot be dismissed or stayed.

### 2.   The First-Filed Action Doctrine

Even if the first-filed action doctrine applies to some of the claims against Walgreen, it is well-established that, under this Circuit's controlling precedent, the court having jurisdiction over the first-filed action (the New York court) should be the one to decide which of the two pending actions should proceed.   Indeed, a*bsent compelling circumstances*, the court in the second-filed action should permit the court with the first-filed action to make that determination. *Mann Manufacturing, Inc. v. Hortex, Inc*., 439 F.2d 403, 407 (5th Cir. 1971)[24] (emphasis added).[25]   As the *Mann* court put it, "[o]nce the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to [the second court] to resolve the question of whether both should be allowed to proceed." *Id*. at 408 (emphasis added).

Instead, "the ultimate determination of whether there actually was a substantial overlap requiring consolidation of the two suits in [the first-filed court] belonged to [the first-filed court]." *Id*.   The *Mann* rule has been applied in this Court, albeit without explicit reference to *Mann. See Supreme Intern. Corp. v. Anheuser-Busch, Inc.*, 972 F.Supp. 604, 607 (S.D. Fla. 1997) ("the first-filed court. . .is the more appropriate forum in which to determine whether the first-filed case should proceed, or whether it should give way for reasons of judicial economy" to

---

[24]     The Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

[25]     A case relied upon by Walgreen, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) has also cited *Mann* for this principle.

12

a Florida court); *see also Marietta Drapery & Window Coverings Co., Inc. v. North River Ins. Co.*, 486 F.Supp.2d 1366, 1369 (N.D.Ga. 2007) (first to file rule "not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated) (quoting cases that rely on *Mann*); *Colorall Technologies Int'l, Inc. v. Plait,* 2005 WL 4655380, *6 (S.D. Fla. 2005) (Cohn, J.) ("the judge before whom the first case is assigned should decide whether the first case should be the one to proceed").

LNC and Admar have already filed a motion to transfer with the New York court seeking a transfer of that action to this Court.  NY Dkt.#41, 85.  The New York court should be permitted to decide that earlier-filed motion in the first-filed action.   Nevertheless, compelling circumstances exist that justify this Court proceeding with all claims asserted in this action against Walgreen.

3.    *Compelling Circumstances Warrant Proceeding with the Claims Against Walgreen*

i.    Walgreen concealed Atico from the New York action, preventing a fair opportunity for discovery and litigation on the merits among all parties

Despite the fact that Walgreen and Atico share the same counsel, Walgreen ***never disclosed Atico in the New York action***, until after it filed this lawsuit (*with Atico*) on March 13, 2009. D.E.#1.  At that point in time, the New York action had already been pending for approximately ten months.  During those ten months, Walgreen filed a counterclaim in the New York action on August 6, 200<u>8</u>, which does **not** mention Atico or allege any tortious interference with Walgreen and Atico's relationship.   NY Dkt.#12.   Moreover, on November 21, 200<u>8</u>, Walgreen made its initial disclosures in the New York action and knowingly failed to disclose Atico as a witness therein.  NY Dkt.#41, Ex. 4.  It was not until April 10, 2009, only a few weeks before the close of discovery in the New York action that Walgreen finally disclosed Atico as a witness in the New York action.  NY Dkt.#41, Ex. 5.

Walgreen would like both the New York court and this Court to ignore its bad faith, surprise litigation tactics and disregard for the Federal Rules, particularly Fed.R.Civ.P. 26(a)(1). Moreover, Walgreen would like the New York court and this Court to condone its position of placing blame on LNC and Admar for not having miraculously discovered Atico without any clue from Walgreen.  However, Walgreen's tactics prevented LNC and Admar from having a fair

opportunity for discovery and litigation on the merits with all the parties who actively participated in the infringement.

LNC and Admar, after learning of Atico, have ***voluntarily given up their original choice of forum*** to litigate in Walgreen and Atico's choice of forum—this Court.  *See* NY Dkt. #41, 85.  However, because Walgreen appears to believe that it can continue to evade discovery and litigation based fully on the merits in the New York court, it would like to remain solely in that forum.  This Court should not condone or enable Walgreen's practice of concealment and surprise litigation tactics or disregard for the rules of discovery.  Instead, this Court should allow the claims against Walgreen to proceed.

ii.      <u>Walgreen instituted this second-filed action, which has always been based on the New York action</u>

Walgreen is seeking to avoid litigation that it commenced in this Court.  D.E.#1.  Moreover, Walgreen is disingenuously complaining about an overlap with the New York action even though each of the claims Walgreen and Atico asserted in the Complaint depended upon the New York action and the facts from which that lawsuit arose.  *See* D.E.# 1, ¶¶6, 7-9, 16, 35-36, 38, 41-42, 44-46, 48, 50-53, 55, 57-59, 64-72, 74, 78-80, 86, 91-2, and Ex. A.

Despite the fact that Walgreen voluntarily dismissed its claims in this lawsuit, leaving its cohort Atico to carry the torch of this lawsuit against LNC and Admar, the Amended Complaint continues to focus on the New York action and the facts from which it arose.  *See* D.E.#31, ¶¶5-7, 9-12, 19, 21, 38-39, 51-54, 56, 59, 60-69, 71-78, 81, 84-85, 88, 91, 96-97, 100-101, 104, 111 and Ex. A.  Furthermore, the Amended Complaint continues to focus on Walgreen's beliefs, choices, practices, and sales—thereby showing that Walgreen is a central figure and active participant in the transactions relating to this action and is, thus, a necessary party.  *See* D.E.#31, ¶¶5, 21, 23-27, 32-35, 39-42, 51-52, 56-57, 59, 76-77, 81, 84-85, 88, 91, 96, 100-101, 103-108, 111, 113, and Ex. A.  If Walgreen truly believed the first-filed action doctrine should apply here, then it would not have initiated this suit, and it would have agreed with LNC and Admar's request to join Atico into the New York suit.  Instead, Walgreen's initiation of this second suit shows that it does not need to be protected from a second-suit and will not be unduly prejudiced should this Court allow the claims against it to proceed.

14

<u>iii.      Walgreen itself sought to have this action proceed without delay</u>

Walgreen chose to bring this second-filed action and, from inception, expressed to this Court its desire for this action to proceed without delay by stating that: "since discovery is a self-executing process, ***discovery could proceed*** while the New York court determines that any overlapping claim elements are baseless, at which point only the Florida case would survive as to Walgreens and Atico."  D.E.#6, p. 4, n. 4 (emphasis added).  Indeed, Walgreen has admitted that it commenced this action so that it could "control the timing and discovery" in this action.  D.E.# 6, ¶10.  The relation to the New York action is not new and has not arisen as a result of LNC and Admar's Counterclaim and Third Party Complaint against Atico and Walgreen.  Instead, as explained in Section II.E., *supra*, each of Walgreen and Atico's claims has from inception depended on the New York action and the facts from which that lawsuit arose.  Therefore, as Walgreen originally wished, this Court should allow all claims in this action to proceed, including the claims against Walgreen.

**C.      The Third Party Complaint is Not Barred by Claim-Splitting Principles**

Finally, Walgreen argues, with its usual hyperbole, that LNC and Admar's presentation of their Third-party Complaint in this Court without awaiting the New York court's decision on their motion to amend or transfer is an "egregious affront to the rule against claim splitting" and a discourteous effort to "pull the rug out from under the New York court."  D.E.#37, p.13.  However, in doing so, Walgreen ignores and omits two key facts and misconstrues the law.

This Court's Scheduling Order (D.E.#20) set a deadline of June 19, 2009 for the joinder of parties.  Additionally, LNC and Admar had until only June 18, 2009 to file a response to Atico's Amended Complaint.[26]  *See* D.E.#30 and 31.  Therefore, the timing of LNC and Admar's pleading against Walgreen was not a matter of discourteousness to the New York court but, rather, a matter of compliance with this Court's Scheduling Order.  Walgreen is attempting to place LNC and Admar in a catch-22.  Had LNC and Admar waited to file their claims against Walgreen in this action, Walgreen surely would scream foul by arguing delay and non-compliance with the scheduling order.

---

[26]      Plaintiffs' filed their Amended Complaint on May 29, 2009.  Per this Court's Order dated May 22, 2009 (D.E.#30), LNC and Admar were required to file their response within 20 days of Atico's filing of its Amended Complaint.  The 20th day was June 18, 2009.

Furthermore, Walgreen misconstrues the law applicable to claim-splitting. First, even Walgreen's own cited case, shows that, in this Circuit, claim-splitting exists as *a principle under the doctrine of res judicata*. *Del Pino v. AT&T Information Sys., Inc.*, 921 F.Supp. 761, 766 (S.D.Fla. 1996) ("The doctrine of res judicata precludes claim splitting"). Walgreen's other cases are non-binding and inapposite.[27]

The Middle District of Florida recently acknowledged that, under Eleventh Circuit law, "the doctrine of res judicata prohibits parties from 'claim splitting,' that is filing a set of claims based on certain theories, then subsequently filing a second set of claims asserting the same operative facts under different legal theories once the first set of claims *have proceeded to judgment*." *Moore v. Potter*, 2006 WL 2092277, *5-6 (M.D.Fla.) (citing *Davila v. Delta Air Lines, Inc*., 326 F.3d 1183, 1187 (11th Cir. 2003) and *Jang v. United Technologies Corp*., 206 F.3d 1147, 1149) (11th Cir. 2000)). Likewise, in *John Alden Life Ins. Co. v. C.A. Cavendes*, 591 F.Supp. 362, 368 (S.D.Fla. 1984), this Court applied the doctrine of res judicata to bar claim-splitting, stating: "Plaintiffs have attempted to 'split' their cause of action under the pretext of distinct legal rights and wrongs. . .Such a tactic is precluded by the doctrine of *res judicata*." *John Alden*, 591, F.Supp. at 368.

Here, the doctrine of *res judicata* cannot apply. The New York action is *still pending* and there has *not* been any determination—let alone a final one—on LNC and Admar's motion to file a first amended complaint or, alternatively, transfer that action to this Court (the jurisdiction where Walgreen and Atico sought to bring *all* parties into one dispute relating to facts already the subject of the New York action). Even if claim-splitting did not fall under the doctrine of *res judicata*, there are exceptions to the bar against claim-splitting that would apply to allow LNC and Admar's claims against Walgreen to proceed in this Court.

For example, "where a defendant consents to the separation of the plaintiff's claim into two actions, a verdict in the first action may not operate as res judicata in the second action. In other words, if the rule against claim splitting has been waived by express *or implied* consent, res judicata will not bar the subsequent suit." 47 Am.Jur.2d Judgments §476; *see also* Restatement

---

[27]     Walgreen's only other alleged support comes from cases from other jurisdictions and include facts showing that a previous court had already denied leave to amend the first action to assert the claims.

2d of Judgments §26(1)(a).  The Ninth Circuit applied this exception in *Dodd v. Hood River County*, 59 F.3d 852 (9th Cir. 1995), explaining that:

> Because a primary purpose of claim preclusion is to protect defendants from being harassed by repetitive actions based on the same claim, the rule need not be enforced where the [defendants] have ***implicitly*** consented to the splitting of the [plaintiff's] claim. . .

*Dodd*, 59 F.3d at 862 (emphasis added).

In *Dodd*, the court found implicit consent where the defendants failed to object in a situation where they were defending two simultaneous actions.  *Id*.  Similarly, in *Bockweg v. Anderson*, 428 S.E.2d 157 (N.C. 1993), the court found that the facts demonstrated that the parties intended to conduct two separate actions.  *Bockweg*, 428 S.E.2d at 163-64. There, the parties had stipulated to the voluntary dismissal without prejudice of certain claims from a previous federal court action.  Later, the plaintiff asserted the dismissed claims in state court. Rejecting the defendants' claim-splitting argument, the court held that the defendants had acquiesced to the splitting of claims by signing the stipulation of dismissal and participating in the second action without complaining that the two actions involved the same claims. *Id*. ("Notwithstanding defendants' contentions to the contrary, and notwithstanding two appeals to this Court, plaintiffs have not had their day in court on the claim. . .).

Here, Walgreen impliedly consented to the maintenance of two separate actions for the same claims or claims that could have been brought in the New York action. *See* Section II. E., *supra*.  Indeed, ***it was Walgreen that commenced this second action by surprise*** with Atico. Most of Walgreen and Atico's Complaint was based upon the New York action.  *See* Section II.E., *supra*.  Walgreen also told this Court that "***discovery could proceed*** while the New York court determines that any overlapping claim elements are baseless, at which point only the Florida case would survive as to Walgreens and Atico."  D.E.#6, p.4, n.4 (emphasis added). Thus, if Walgreen now tries to claim that its consent to separate actions is of no effect because it later withdrew from this action, then Walgreen is the one that is seeking a "do-over."

The bar against claim-splitting also does not apply where it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the failure of the prior litigation to yield a coherent disposition of the controversy.  Restatement 2d of Judgments §26(1)(f).  For example, where a party attempted to

litigate the second claim in the first action but its efforts were frustrated at every turn, the bar against claim-splitting should not apply.  *See Delaware Valley Transplant Program v. Coye*, 722 F.Supp.1188, 1194-96 (D.N.J. 1989) (finding res judicata did not bar the claims because "[a]t every turn. . .[the party's] efforts were frustrated" and, thus, the party had not elected to forego the claim in the first action).

Moreover, where a defendants' own fraud or concealment prevented the plaintiff from including part of a claim, the plaintiff is not barred from maintaining a second action for claims not included in the first action and the defendant cannot justly object.  Rstmt 2nd of Judgments §26, cmt. J.  "The result is the same when the defendant was not fraudulent, but by an innocent misrepresentation prevented the plaintiff from including the entire claim in the original action. *Id*.

Here, as the facts set forth in Sections II.B. and II.D. show, LNC and Admar were frustrated at every turn in the New York action in their attempts to litigate all claims existing between all the parties.  First, by Walgreen's concealment of Atico until after it had filed this action and until just a few short weeks before the close of discovery in the New York action. Then, by the New York court's refusal to allow LNC and Admar file discovery motions and an immediate motion to amend the complaint or transfer the action to this Court in contravention to the Second Circuit's decision in *Richardson*.[28]  *See* Sections II.B. and II.D, *supra*.  Therefore, even if claim-splitting fell outside the doctrine of *res judicata*, this Court should not apply a claim-splitting bar to LNC and Admar's claims here in light of Walgreen's and the New York court's conduct in violation of the Federal Rules and Second Circuit law.

**IV.    CONCLUSION**

In light of the facts and law set forth above, this Court should deny Walgreen's motion to dismiss or stay the claims that LNC and Admar have asserted against it.  LNC and Admar respectfully request that this Court allow their claims against Walgreen to proceed without delay, whether as a Third Party Complaint or Counterclaim.

---

[28]    *Richardson Greenshields Securities, Inc. v. Mui-Hin Lau*, 825 F.2d 647, 650-53 (2nd Cir. 1987) ("Absent extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation, a court has no power to prevent a party from filing pleadings, motions or appeals. . .").

Dated: August 4, 2009                    Respectfully submitted,

                                         **FELDMAN GALE, P.A.**
                                         One Biscayne Tower, 30th Floor
                                         2 South Biscayne Boulevard
                                         Miami, Florida 33131
                                         Telephone:  305-358-5001
                                         Facsimile:  305-358-3309

                                         By:   /s   Susan J. Latham
                                             James A. Gale / Fla. Bar no. 371726
                                             jgale@feldmangale.com
                                             Susan J. Latham / Fla. Bar no. 0687391
                                             slatham@feldmangale.com
                                             *Attorneys for Defendants/Third-party Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of August, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                              By:   /s   Susan J. Latham
                                    SUSAN J. LATHAM

## SERVICE LIST
*Atico International USA, Inc. v. Luv N' Care, Ltd.,  et al.*
Case No. 09-60397-CIV-COHN/SELTZER
United States District Court, Southern District of Florida

Alan Weisberg
aweisberg@cwiplaw.com
Jeffrey H. Kamenetsky
jkamenetsky@cwiplaw.com
Christopher & Weisberg, P.A.
200 East Las Olas Blvd., Suite 2040
Ft. Lauderdale, FL 33301
Phone: 954-828-1488
Facsimile: 954-828-9122
*Counsel for Atico International USA, Inc. and Walgreen Co.*
*Via CM/ECF*