UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-60397-CIV-COHN/SELTZER

ATICO INTERNATIONAL USA, INC.,
a Delaware corporation,

        Plaintiff,

v.

LUV N' CARE, LTD., a Louisiana corporation,
and ADMAR INTERNATIONAL, INC., a
Delaware corporation,

        Defendants.
_____/

LUV N' CARE, LTD., a Louisiana corporation,
and ADMAR INTERNATIONAL, INC., a
Delaware corporation,

        Counterclaim and
        Third Party Plaintiffs,

v.

ATICO INTERNATIONAL USA, INC.,
a Delaware corporation, Counterclaim Defendant
and WALGREEN CO., an Illinois corporation, Third
Party Defendant
_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS VII AND VIII OF PLAINTIFF'S AMENDED COMPLAINT**

    THIS CAUSE is before the Court upon Defendants' Motion to Dismiss Counts VII and VIII of Plaintiff's Amended Complaint [DE 32] ("Motion to Dismiss"). The Court has carefully reviewed the Amended Complaint [DE 31], the Motion to Dismiss, Plaintiff's Response in Opposition to Defendants' Motion to Dismiss [DE 36] ("Response"), the Defendants' Reply [DE 42], and is otherwise fully advised in the premises.

## I. BACKGROUND

Defendant Luv n' care, Ltd. holds itself out as one of the leading baby product companies in the world. Defendant Admar International, Inc. is the owner of the trademark NUBY® that Defendant Luv n' care, Ltd. uses to sell certain interstate-commercialized products. Specifically, Luv n' care, Ltd. and Admar International, Inc. (collectively "Defendants") produce and sell "sippy cups."

On May 29, 2009, Plaintiff filed an Amended Complaint. The Amended Complaint asserts eight counts: declaratory judgment on non-infringement of accused products (Count I), declaratory judgment of no trade dress (Count II), declaratory judgment of no secondary meaning (Count III), declaratory judgment of functionality (Count IV), declaratory judgment of no dilution (Count V), declaratory judgment of no federal unfair competition (Count VI), tortious interference with a business relationship ("tortious inteference") (Count VII), and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VIII).

The Amended Complaint is based upon a suit that Defendants filed against Walgreen Co. and Kmart Corp. in the United States District Court for the Southern District of New York ("the New York suit"). In the New York suit, Defendants allege that they have sustained damages because Walgreen Co. and Kmart Corp. sell sippy cups that are similar, yet inferior, to Defendants' sippy cups. Based on that conduct, Defendants' complaint in the New York suit alleges five causes of action: (1) Federal Unfair Competition and Trademark Infringement in Violation of Section 43(A) of the Lanham Act; (2) Federal Trademark Dilution; (3) Unfair Competition under New York law; (4) Violation of New York General Business Law Section 349; and (5) Violation of

New York General Business Law Section 360-1.

Because the Amended Complaint asserts only conduct related to the New York suit, Defendants filed a Motion to Dismiss Count VII (tortious interference) and Count VIII (FDUTPA). Specifically, Defendants argue that Florida's litigation privilege immunizes them from liability for any activities related to the filing of the New York suit. Defendants further argue that Plaintiff's allegations do not sustain either the tortious interference or the FDUTPA claim.

## II. DISCUSSION

### A. Motion to Dismiss Standard

The Court should grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action. Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006). Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009) (quoting Twombly, 550 U.S. at 555).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Twombly, 550 U.S. at 555. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. Accordingly, a well-pleaded complaint will survive a motion to dismiss

"'even if it appears that a recovery is very remote and unlikely.'" Id. at 556 (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

With these standards in mind, the Court will determine whether Plaintiff has set forth allegations that sustain its tortious interference and FDUTPA claims.

### B. The First Amendment Right to Petition Requires Dismissal of Plaintiff's State-Law Claims

### 1. The First Amendment Provides Immunity from Liability for a Party's Pre-Litigative and Litigative Activities

The First Amendment guarantees the right to "petition the Government for a redress of greivances." U.S. Const. amend. I. The First Amendment, therefore, provides immunity from liability for parties that petition the government to achieve anticompetitive outcomes. See, e.g., E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) (granting antitrust immunity for publicity campaign designed to spur the adoption of monopoly-facilitating legislation); United Mine Workers v. Pennington, 381 U.S. 657, 670 (1965) (noting that Noerr shielded a defendant from antitrust liability for "efforts to influence public officials ... even though intended to eliminate competition"). This constitutionally-based immunity is invoked most often in antitrust cases and referred to commonly as the Noerr-Pennington doctrine.[1]

---

[1] Noerr itself concerned efforts to achieve anticompetitive ends by securing legislative action. See McGuire Oil Co. v. Mapco, Inc., 958 F.2d 1552, 1558 (11th Cir. 1992). Subsequent court decisions, however, established that antitrust immunity extends not only to legislative action, but also to attempts to influence executive and

A form of litigation immunity akin to the immunity provided by the Noerr-Pennington doctrine applies to non-antitrust cases, such as the FDUTPA and tortious interference claims at issue in this action.  See McGuire Oil Co. v. Mapco, Inc., 958 F.2d 1552, 1561 (11th Cir. 1992) (applying First Amendment litigation immunity to bar unfair trade practices claim).[2]  In McGuire Oil, for example, the Eleventh Circuit applied the Noerr-Pennington doctrine to bar an antitrust claim based solely on allegations that the defendant threatened and then initiated litigation.  Id. at 1559-1562.  The court also

---

adjudicative governmental bodies.  Id.

[2]Although it is arguably more precise to cite the First Amendment's right to petition, rather than the the Noerr-Pennington doctrine, when precluding non-antitrust claims based on allegations of pre-litigative and litigative activities, many circuit courts have used the Noerr-Pennington doctrine to bar state-law causes of action.  See, e.g., IGEN Int'l, Inc. v. Roche Diagnostics GmbH, 335 F.3d 303, 312 (4th Cir. 2003) ("[A]lthough originally developed in the antitrust context, the doctrine has now universally been applied to business torts"); Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P., 229 F.3d 1135, 1135 (2d Cir. 2000) (affirming dismissal because "Noerr Pennington immunity is applicable to . . . state-law claims such as fraud and tortious interference"); Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 128-29 (3d Cir. 1999) (applying Noerr-Pennington doctrine to provide immunity from tortious interference and unfair competition claims); Proportion-Air, Inc. v. Buzmatics, Inc., 57 F.3d 1085, 1085 (Fed. Cir. 1995) (indicating Noerr-Pennington immunity may apply to tortious interference and unfair competition claims); Or. Nat. Res. Council v. Mohla, 944 F.2d 531, 533 (9th Cir. 1991) (affirming dismissal because Noerr-Pennington immunity applied to abuse of process and interference with business relations claims); Video Int'l Prod. v. Warner-Amex Cable Comms., Inc., 858 F.2d 1075, 1084 (5th Cir. 1988) (applying the doctrine to business tort claims); Hufsmith v. Weaver, 817 F.2d 455, 458-59 (8th Cir. 1987) (holding that Noerr-Pennington doctrine immunizes tortious interference with business claims); Havoco of Am., Ltd. v. Hollobow, 702 F.2d 643, 649 (7th Cir. 1983) (applying Noerr-Pennington doctrine to bar tortious interference claim); see also Campbell v. PMI Food Equip. Group, Inc., 509 F.3d 776, 790 (6th Cir. 2007) (noting that "[a]lthough the Noerr-Pennington doctrine was initially recognized in the antitrust field, the federal courts have by analogy applied it to claims brought under both state and federal laws, including common law claims of tortious interference").

determined that the First Amendment's right to petition precluded an unfair trade practices claim based on the exact same allegations of "pre-litigative and litigative activities." See id. at 1561-62.  Thus, a complaint that alleges only pre-litigative and litigative activities cannot state a cause of action.  See id.

### 2. Plaintiff Alleges Only Pre-Litigative and Litigative Activity

The Amended Complaint alleges only two acts that adversely affected the Plaintiff: 1) counsel for Defendant Luv n' care, Ltd. sent a letter to Walgreen Co. before commencing the New York suit ("the July 18, 2006 letter"); and 2) Defendants commenced the New York suit.[3]  Plaintiff argues that the July 18, 2006 letter was not related to litigation because it "did not threaten litigation or even assert a right." Response at 7.  The July 18, 2006 letter, however, was drafted by intellectual property counsel to Luv n' care, Ltd. and states,

> I am hereby placing you and your company on express notice of [our intellectual property] rights, and strongly advise you to bring them to your legal department's attention. . . . I am not accusing you of infringement at the present time. I am, however, expressly cautioning you against taking any action in the future which would constitute intellectual property infringement in violation of law. In conclusion, to the extent that you or your company chooses to disregard this cordial warning, you do so accepting the full potential consequences of your actions.

DE 1, Exhibit F.  The Court finds that the July 18, 2006 letter asserts rights and threatens litigation.[4]  Moreover, the Court has the benefit of hindsight: Defendants

---

[3]Plaintiff also alleges that Defendants sent similar letters to other companies, but does not allege that those letters affected Plaintiff in any way.  None of the letters, not even the July 18, 2006 letter, was sent to Plaintiff or even mentions Plaintiff.

[4]Plaintiff's Amended Complaint also alleges that the "defendants have engaged in a campaign of sending letters to business entities in the sippy cup market or submarkets *threatening suit* for violation of alleged patents and other intellectual

6

actually filed suit based on the subject matter of the July 18, 2006 letter. Thus, the letter is clearly a pre-litigative activity. See McGuire Oil Co., 958 F.2d at 1560 (holding that threatening litigation is a protected, pre-litigative activity).

The filing of a suit is a litigative activity.[5] Id. (holding that commencing litigation is a protected, litigative activity). Thus, the Amended Complaint alleges only pre-litigative and litigative activity. Id. The constitutional litigation immunity therefore bars the state-law claims asserted in the Amended Complaint, provided the pre-litigative and litigative activities were not a "sham." See id. at 1559-62.

### 3. Litigation Immunity Does Not Apply if the Underlying Litigation Is a "Sham."

Litigation immunity will not immunize a party from liability for its pre-litigative and litigative activity if the underlying litigation is a "sham." Prof'l Real Estate Investors, 508

---

property rights." Amended Complaint ¶ 43 (emphasis added). Thus, Plaintiff's own allegations undermine the argument in Plaintiff's Response.

[5]The parties, in their Motion to Dismiss, Response, and Reply, devoted most of their energy to a discussion of Florida's common-law litigation privilege. Florida's litigation privilege affords absolute immunity for all acts "related to and occurring within judicial proceedings." Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1274 (11th Cir. 2004). Under Florida law, the filing of a suit clearly relates to a judicial proceeding and therefore cannot form the basis for a state-law claim in federal court. See Perez v. Bureaus Inv. Group No. II, LLC, 2009 WL 1973476, at *3 (S.D. Fla. July 8, 2009); see also Gaisser v. Portfolio Recovery Assocs., LLC, 571 F. Supp. 2d 1273, 1280 (S.D. Fla. 2008) (holding litigation privilege requires dismissal when conduct plaintiff complains of is predicated upon the defendant's filing of an earlier case).

Neither the Florida Supreme Court, nor the Eleventh Circuit Court of Appeals, has decided whether Florida's litigation privilege bars actions premised upon a pre-suit communication from counsel that asserts rights and threatens litigation. See, e.g., Eschevarria, McCalla, Raymer, Barrett & Frappier, etc., et. al. v. Cole, 950 So. 2d 380, 383 n.1 (Fla. 2004) (declining to determine the point at which the litigation privilege may first be asserted); cf. id. at 387 (Fla. 2004) (Wells, J., concurring in part and dissenting in part) (stating that the litigation privilege should be inapplicable "when communications are separate from pending litigation and are not necessary in order to pursue future litigation").

7

U.S. at 56; see Noerr, 365 U.S. at 144 (finding Sherman Act immunity inappropriate where the exercise of the right to petition was "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor").  Although the Supreme Court has held that petitioning activity is protected "regardless of intent or purpose," Pennington, 381 U.S. at 670, the petitioning activity must be genuine.

The burden falls on the party challenging immunity to show that the underlying litigation is a "sham."  See McGuire Oil, 958 F.2d at 1560.  Plaintiff, to survive the Motion to Dismiss, must show that the allegedly tortious New York suit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  Prof'l Real Estate Investors, Inc. v. Columbia Pics. Indus., 508 U.S. 49, 57, 60 (1993) ("an objectively reasonable effort to litigate cannot be sham regardless of subjective intent").  Indeed, the Supreme Court has determined that "[w]hether applying Noerr as an antitrust doctrine or invoking it in other contexts, [the Court has] repeatedly reaffirmed that evidence of anticompetitive intent or purpose alone cannot transform otherwise legitimate activity into a sham."  Id.

### 4. The Court Must Dismiss the State-Law Claims Because Plaintiff Has Not Shown That the New York Suit Is a Sham.

Plaintiff alleges no facts in the Amended Complaint that suggest the New York suit is "sham litigation."[6]  Rather, Plaintiff alleges "[o]n information and belief, [that] the

---

[6] A court may determine on a motion to dismiss whether underlying litigation falls within the sham exception to the Noerr-Pennington doctrine.  See, e.g., Or. Nat. Res. Council v. Mohla, 944 F.2d 531, 533 (9th Cir. 1991) (affirming dismissal because Noerr-Pennington immunity applied to abuse of process and interference with business relations claims); Razorback Ready Mix Concrete Co., Inc. v. Weaver, 761 F.2d 484, 487 (8th Cir. 1985) (holding as a matter of law that the sham exception was inapplicable to the case before it); Havoco of Am., Ltd. v. Hollobow, 702 F.2d 643, 649 (7th Cir.

New York suit is baseless." Amended Complaint ¶ 75. Such a conclusory allegation is insufficient to survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Quality Foods de Centro Am., S.A. v. Latin Am. Agribus. Dev. Corp., 711 F.2d 989, 995 (11th Cir. 1983); see also Havoco of Am., Ltd. v. Hollobow, 702 F.2d 643, 649 (7th Cir. 1983) ("[A] plaintiff must do more than merely allege that defendant's petitioning activity was a sham in order to overcome the First Amendment privilege.").

Plaintiff also alleges that Defendants sued Walgreens in the New York suit "because they were unhappy with . . . proper competition" and "they are unable to compete with Atico's products that have superior quality and better consumer value." Amended Complaint ¶¶ 51-52. As demonstrated above, even if these allegations regarding Defendants' subjective intent are true, they do not render the New York suit a sham unless the New York suit is objectively meritless. See Prof'l Real Estate Investors, Inc., 508 U.S. at 57-60.

Plaintiff attached a copy of the complaint from the New York suit as an exhibit to its Amended Complaint.[7] The complaint from the New York suit asserts several claims that Plaintiff's Amended Complaint never mentions. Because Plaintiff has not even mentioned many of Defendants' claims, let alone alleged facts that show Defendants'

---

1983) (finding as a matter of law that plaintiff failed to plead sham); Suburban Restoration Co. v. ACMAT Corp., 700 F.2d 98, 102 (2d Cir. 1983) (affirming dismissal because "the filing of a single non-sham lawsuit cannot form the basis of a claim under [Connecticut's Uniform Trade Practices Act] or Connecticut's common law of tortious interference with a business expectancy").

[7]The Court may consider documents referred to by a plaintiff in a complaint which are central to the plaintiff's claim for purposes of a motion to dismiss without conversion of the motion to dismiss into a motion for summary judgment. Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1369 (11th Cir. 1997) (opinion of then United District Court Judge Stanley Marcus attached to Eleventh Circuit opinion); Smith Barney, Inc. v. Scanlon, 180 F.R.D. 444, 446 (S.D. Fla. 1998).

claims are objectively unreasonable, Plaintiff's Amended Complaint has not sufficiently alleged that the New York suit is a sham.

Based solely on the Amended Complaint and the attachments thereto, the New York suit is objectively reasonable. Consequently, the First Amendment right to petition requires dismissal of Plaintiff's claims for tortious interference with a business relationship and violation of the Florida Deceptive and Unfair Trade Practices Act.[8]

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Counts VII and VIII of Plaintiff's Amended Complaint [DE 32] is hereby **GRANTED**. Counts VII and VIII of Plaintiff's Amended Complaint [DE 31] are hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file an amended complaint by August 31, 2009.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida on this 19th day of August, 2009.

*JAMES I. COHN*
United States District Judge

Copies provided to all counsel of record on CM/ECF.

---

[8] Defendants, in their Motion to Dismiss, also argue that Plaintiff's Amended Complaint fails to state a claim for either tortious interference or a FDUTPA violation because the Amended Complaint does not allege the necessary elements of those claims. Because the Court finds the First Amendment immunizes Defendants from liability for the activities alleged in the Amended Complaint, the Court need not address Defendants' arguments that Plaintiff failed to allege adequately the elements of each claim.