UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-60397-CIV-COHN/SELTZER

**ATICO INTERNATIONAL USA, INC.,**
a Delaware corporation,

        **Plaintiff,**

v.

**LUV N' CARE, LTD.**, a Louisiana corporation,
and **ADMAR INTERNATIONAL, INC.**, a
Delaware corporation,

        **Defendants.**
_____/

**LUV N' CARE, LTD.**, a Louisiana corporation,
and **ADMAR INTERNATIONAL, INC.**, a
Delaware corporation,

        **Counterclaim and**
        **Third Party Plaintiffs,**

v.

**ATICO INTERNATIONAL USA, INC.,**
a Delaware corporation, Counterclaim Defendant
and **WALGREEN CO.**, an Illinois corporation, Third
Party Defendant
_____/

**{~~JOINT~~}[1] STATUS REPORT ON DEFENDANTS' AND PLAINTIFF'S
MEET AND CONFER REGARDING DEFENDANTS' MOTION
TO COMPEL ATICO TO PRODUCE DOCUMENTS**

---

[1] Regrettably, it became apparent this morning that the Parties were unable to reach agreement on a Joint Report. Plaintiff suggested that the Parties request an extension of this morning's deadline for the Report to conduct further a meet and confers regarding the meet and confer Report. However, in light of undersigned counsel's previous commitments and deadlines in other matters, further discussions on this discovery dispute are not immediately feasible. Thus, Defendants are regrettably forced to submit both their Report and, attached as Exhibit "B", a copy of the redline that Atico sent at 9:07 am this morning . (This was in addition to Atico's first redline which it sent only a half-hour earlier this morning). Items in {brackets} reflect changes that Defendants made to the draft they sent to Atico for review and approval yesterday at 3:00 p.m.

Pursuant to this Court's Order (D.E.# 61) of September 22, 2009, Defendants Luv n' care, Ltd. ("Luv N' Care" or "LNC") and Admar International ("Admar") {jointly with Plaintiff Atico International USA, Inc. ("Atico"),} (collectively, the "Parties"), respectfully submit this {joint} status report of the progress and outcome of the meet and confer the Parties conduced on Friday, September 25, 2009 and state as follows:

1. Counsel for the Parties met on Friday, September 25, 2009 at 10:00 a.m. at the offices of Defendants' (local) counsel, Feldman Gale, P.A. At such time, both Atico's local (Christopher & Weisberg, P.A.) and new, non-local counsel (Floyd Chapman of Wiley Rein LLP) appeared to participate in the scheduled meet and confer. After being served with the new, non-local counsel's notice of appearance, the meeting began.

2. First it was established that Atico's counsel did not bring Atico's privilege log or any non-privileged, non-confidential responsive documents with them for production despite Defendants counsel's previous express request that they do so. However, Atico did confirm that: (a) non-privileged documents exist and should be produced; (b) non-confidential documents exist and should be produced; and (c) there are confidential documents wherein there is no privilege being asserted. Atico confirmed that it has no problem with the Parties showing confidential documents to in-house counsel but objects to the sharing of "highly confidential" documents with in-house counsel.

3. As to the timing of its production of non-privileged documents, Atico stated that it would begin "rolling them out" on Tuesday, September 30, 2009. Atico stated that perhaps 100 documents would be produced on September 30th, maybe 200 documents, it could not say.

4.      Atico stated that all of its documents would be processed by the following Friday, October 2, 2009, or by Monday, October 5, 2009.

5.      Atico estimated that it had approximately 1,000 documents but less than 2,000 documents.  However, Atico admitted that it had not yet prepared a privilege log as to its documents but that counsel "thinks" that one had been begun.  Nevertheless, Atico's counsel was not willing to produce any privilege log that might have been begun by having it faxed over during the meeting.  Later in the meeting, Atico agreed to produce its privilege log by Friday, October 2, 2009.

6.      Defendants' counsel disagreed that in-house counsel should be excluded from viewing "highly confidential" documents or that the Parties should be absolutely barred from using any such documents in other cases involving the litigants but, nevertheless, agreed to treat any such designated documents as outside counsel only and only for this Florida case *until such time as a protective order is entered*.  Thus, leaving it to the Court to decide the proper scope of the protective order as to the Parties' "Highly Confidential" documents.  **This issue will need to be resolved by the Court**.

7.      Atico declined to expressly state that it was withdrawing any objections.  {On Tuesday evening, September 29, 2009, Atico expressly stated that its production of documents cannot be considered a waiver of Atico's objections.}

{8.      Also, on the evening of September 29, 2009, Atico stated that it was shipping via overnight delivery a CD-ROM with approximately 2,100 documents on it.  As Defendants were unlikely to receive such disc by the deadline for filing this report, they requested that Atico confirm whether those documents were organized and labeled in accordance with

Fed.R.Civ.P. 34(b)(2)(E)(i), which states that: "A party must produce documents as they are kept in the usual course of business **or must organize and label them to correspond to the categories in the request**;"  Atico has failed to confirm whether it complied with that Rule. Therefore, it appears likely that non-compliance with Fed.R.Civ.P. 34(b)(2)(E)(i) will be **an issue that <u>may need to be resolved by the Court.</u>}**

      9.    Next, the Parties discussed each of the specific requests in order and determined as follows:  {A summary listing of resolved and unresolved Requests is available at the Conclusion below}.

      **Request No. 1:**    Atico agreed that the 5 year time period this request and others is not unreasonable since Defendants' products were on sale at that time.  Thus, Atico agreed to produce documents dating back to June 2004 to the extent they have responsive documents, including any Walgreen's documents that may be in their possession.  Atico does not believe that there are confidential docs in this category.

      **Request No. 2:**    As it did for Request no. 1, Atico agreed to produce documents dating back to June 2004 to the extent they have responsive documents.

      **Request No. 3:**    Defendants clarified that this request calls for documents that both identify the owner and relate to the product(s) at issue.

      **Request No. 4:**    Atico agreed that it would produce: (a) any surveys involving any of the packaging at issue, (b) any surveys involving any of the products at issue, and (c) any surveys involving trademarks relating to the products at issue.  However, the Parties could not agree as to whether this Request requires Atico to produce surveys involving products that are

not at issue in this case but bear trademarks that are also related to the products at issue, *e.g.*, Wagi on baby thermometers.  **This last issue may need to be resolved by the Court.**

**Request No. 5:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Defendants agreed that this Request and any other request that employs the term "baby products" will be limited by such narrowed definition/list. Therewith, Atico agreed to produce responsive documents.

**Request No. 6:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Therewith, Atico agreed to produce responsive documents.

**Request No. 7:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Atico stated that it has no objection to this Request and is not disagreeing to this. Thus, if they have documents relating to manufacturing they will produce them.

**Request No. 8:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Atico stated that it has no objection to this Request and is not disagreeing to this. Thus, if they have documents relating to manufacturing they will produce them.

**Request No. 9:** The Parties agreed that Atico will produce responsive documents for this Request so long as they relate to the product at issue.

**Request No. 10:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell.

Additionally, Defendants agreed to narrow this Request further such that documents are responsive so long as they relate to the product at issue.

**Request No. 11:**    Atico's counsel stated that it is unlikely that Atico does any advertising but that if it has responsive document Atico will produce them. Nevertheless, it is understood that the Request covers any advertising, brochures or other promotional pieces that Atico distributes to retailers or entities like Walgreen, Target, etc. Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell.

**Request No. 12:**    Atico agreed to produce responsive documents subject to claims of privilege.

**Request No. 13:**    The Parties agreed that documents responsive to this Request must relate to the trade dress and/or packaging of the products at issue rather than trademarks. With that agreement, Atico will produce responsive documents.

**Request No. 14:**    Atico agreed to produce all non-privileged responsive documents.

**Request No. 15:**    Atico agreed to produce all non-privileged responsive documents.

**Request No. 16:**    The Parties agreed to modify the language of this Request and Atico, therewith, agreed to produce responsive documents. The modified language is as follows:

> All documents and things concerning the creation or development of any and all products at issue, or the creation, development or adoption of its packaging, including, but not limited to: (a) all communications between you and any consultant, design firm, marketing agency, advertising agency, media company, manufacturer, printer or other supplier connected with or consulted as to the development or adoption of such product and/or its packaging; (b) all case studies, reports, or market studies relating to any such product and/or its packaging; (c) all samples, specifications, mock-ups, prototypes or other examples of preliminary or intermediate designs of such product and/or its packaging; and (d) all agendas or records of meetings relating to the creation or

development or use of such products or creation, development or adoption of its packaging.

**Request No. 17:** Defendants refused to narrow the term "sippy cup." Atico agreed to produce all non-privileged documents relating to "sippy cups" but not baby bottles.

**Request No. 18:** Defendants agreed to limit the definition of the term "child care product" according to the same limitation of the term "baby products." Therewith, Atico agreed to produce responsive documents.

**Request No. 19:** Atico agreed to produce responsive documents.

**Request No. 20:** Defendants agreed to limit it this request to documents dating back through January 1, 2004. Atico agreed to produce responsive documents. However, because Atico sells at least 100,000 products, Atico's counsel wanted to table the "occupation" issue to follow-up with the client and would try to get back to us by the end of the day at 6:00 p.m. To date, Atico has not gotten back to Defendants as to this Request. **This issue may need to be resolved by the Court.**

**Request No. 21:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Defendants also agreed to limit the scope of time for this request to documents dating back to January 2004. Nevertheless, Atico would not commit to producing responsive documents. **This issue may need to be resolved by the Court.**

**Request No. 22:** Atico agreed to produce responsive documents.

**Request No. 23:** Atico agreed to produce responsive documents.

**Request No. 24:** Atico agreed to produce responsive documents.

**Request No. 25:** Atico agreed to produce any non-privileged responsive documents.

**Request No. 26:** Atico agreed to produce responsive documents.

**Request No. 27:** Atico wanted to "table" discussion of this issue and get back to the Defendants later. To date, Atico has not gotten back to Defendants as to this Request. **This issue may need to be resolved by the Court.**

**Request No. 28:** Atico agreed to produce responsive documents.

**Request No. 29:** Atico agreed to produce responsive documents.

**Request No. 30:** Defendants agreed that this request does not call for any communications about non-listed "baby products" (per narrowed definition of that term) between Atico and manufacturer but does includes general communications between Walgreens and the manufacturer. Atico agreed to produce documents regarding the products at issue but could not commit to producing documents regarding "baby products" despite the narrowed definition. **This issue may need to be resolved by the Court.**

**Request No. 31:** Defendants agreed that this request does not call for any communications about non-listed "baby products" (per narrowed definition of that term) between Atico and manufacturer but does includes general communications between Walgreens and the manufacturer. Atico agreed to produce documents regarding the products at issue but could not commit to producing documents regarding "baby products" despite the narrowed definition. **This issue may need to be resolved by the Court.**

**Request No. 32:** Defendants refused to limit this request to documents relating only to the specific products at issue. However, Defendants agreed that this request does not call for any communications about non-listed "baby products" (per narrowed definition of that term) between Atico and manufacturer but does includes general communications between Walgreens

and the manufacturer.  Atico's counsel examined the sample Wagi sippy cup on the table and asked "which one is that...that's not the Wagi."  Since the meet and confer concluded, Atico agreed to "make a reasonable effort to produce non-privileged, responsive documents relating to sippy cups."  Defendants requested that Atico check and respond as to whether Atico uses any other manufacturer other than Royal King to manufacture sippy cups.  To date, Atico has not provided an answer to that question.  **This issue may need to be resolved by the Court.**

**Request No. 33:**  Defendants refused to limit this request to documents relating only to the specific products at issue.  However, Defendants agreed that this request does not call for any communications about non-listed "baby products" (per narrowed definition of that term) between Atico and manufacturer but does includes general communications between Walgreens and the manufacturer.  Since the meet and confer concluded, Atico agreed to "make a reasonable effort to produce non-privileged, responsive documents relating to sippy cups."  Defendants requested that Atico check and respond as to whether Atico uses any other manufacturer other than Royal King to manufacture sippy cups.  To date, Atico has not provided an answer to that question.  **This issue may need to be resolved by the Court.**

**Request No. 34:**  Atico stated that it has "no issue" with this Request; although it is not sure whether it has any responsive documents.  However, if it does, it will produce them.

**Request No. 35:**  Atico agreed to produce responsive documents.

**Request No. 36:**  Atico agreed to produce responsive documents.

**Request No. 37:**  Atico agreed to produce responsive documents.

**Request No. 38:**  Atico agreed to produce responsive documents except for privileged documents.

**Request No. 39:**  Atico agreed to produce responsive, non-privileged documents.

**Request No. 40:**  Atico agreed to produce responsive documents with the understanding that the term "third party" excludes parties to this suit.

**Request No. 41:**  Atico agreed to produce responsive documents.

**Request No. 42:**  Atico agreed to produce responsive documents.

**Request No. 43:**  Atico agreed to produce responsive documents.

**Request No. 44:**  Atico agreed to produce responsive documents, if it has any.

**Request No. 45:**  Atico agreed to produce responsive documents, if it has any.

**Request No. 46:**  Atico agreed to produce samples of all the products that it thinks are at issue but that it does not know if the two-packs and three-packs are "products at issue" but that it will strive to get and produce samples of them but that some may be more difficult to get. Defendants requested that Atico check into it and clarify which samples will take longer to get and clarify whether there are any samples that Atico cannot get its hands on. To date, Atico has not made any such clarification.

**Request No. 47:**  Atico agreed to produce responsive documents, if it has any.

**Request No. 48:**  Atico agreed to produce responsive documents, if it has any.

**Request No. 49:**  Atico agreed to produce responsive documents, if it has any.

**Request No. 50:**  Atico agreed to produce responsive documents, if it has any that are not subject to privilege.

**Request No. 51:**  Atico agreed to produce responsive documents, if it has any.

**Request No. 52:**  Defendants clarified that this request calls for documents relating only to the products at issue. Therewith, Atico agreed to produce responsive documents.

**Request No. 53:**   Defendants declined to narrow this request. Nevertheless, since the meet and confer concluded, Atico has agreed to "make a reasonable effort to produce non-privileged responsive documents relating to sippy cups."

**Request No. 54:**   Defendants declined to narrow this request. Nevertheless, since the meet and confer concluded, Atico has agreed to "make a reasonable effort to produce non-privileged, responsive documents also relating to sippy cups."

**Request No. 55:**   Defendants declined to narrow this request. Nevertheless, since the meet and confer concluded, Atico has agreed to "make a reasonable effort to produce non-privileged, responsive documents also relating to sippy cups."

**Request No. 56:**   Atico agreed to produce responsive documents.

**Request No. 57:**   Atico agreed to produce responsive documents.

**Request No. 58:**   Atico agreed to produce responsive documents subject to claims of privilege.

**Request No. 59:**   Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Therewith, Atico agreed to produce responsive documents.

**Request No. 60:**   Defendants declined to narrow this request. Nevertheless, since the meet and confer concluded, Atico has agreed to "make a reasonable effort to produce non-privileged, responsive documents also relating to sippy cups."

**Request No. 61:**   Defendants declined to narrow this request. Nevertheless, since the meet and confer concluded, Atico has agreed to "make a reasonable effort to produce non-privileged, responsive documents also relating to sippy cups."

**Request No. 62:**     Atico agreed to produce responsive documents.

**Request No. 63:**     Defendants agreed to limit the Request to relate to the products at issue. Therewith, Atico agreed to produce responsive documents.

**Request No. 64:**     Atico agreed to produce responsive documents.

**Request No. 65:**     Defendants agreed to limit the Request to relate to the products at issue. Therewith, Atico agreed to produce responsive documents.

**Request No. 66:**     Atico agreed to produce responsive documents.

**Request No. 67:**     Atico agreed to produce responsive documents.

**Request No. 68:**     Atico agreed to produce responsive documents subject to claims of privilege.

**Request No. 69:**     Defendants agreed to limit the Request to relate to the products at issue and/or to the relationship between Atico and Walgreen. Therewith, Atico agreed to produce responsive documents.

**Request No. 70:**     Atico agreed to produce responsive documents subject to the work-product privilege.

**Request No. 71:**     Atico agreed to produce responsive documents with the understanding that the term "third party" excludes parties to this suit.

**Request No. 72:**     Atico agreed to produce responsive documents.

**Request No. 73:**     Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Therewith, Atico agreed to produce responsive documents.

**Request No. 74:** The Parties have not resolved their differences as to this request except for the understanding that this request does not call for documents relating to claims against LNC and/or Admar. **This issue may need to be resolved by the Court.**

**Request No. 75:** The Parties have not resolved their differences as to this request except for the understanding that this request does not call for documents relating to claims brought by LNC and/or Admar. **This issue may need to be resolved by the Court.**

**Request No. 76:** Atico agreed to produce responsive documents.

**Request No. 77:** Atico agreed to produce responsive documents.

**Request No. 78:** Atico agreed to produce responsive documents.

**Request No. 79:** Atico agreed to produce responsive documents.

**Request No. 80:** Atico agreed to produce responsive documents.

**Request No. 81:** Atico agreed to produce responsive documents.

## CONCLUSION

The Parties have worked very hard to cooperate and reach amicable resolutions where possible. The Parties have been successful in narrowing the issues for this Court's consideration. Particularly, the Parties represent that, in light of the above, at this date there are no issues for the Court to decide as to Requests no.s 1, 2, 5-9, 11-16, 18-19, 22-26, 28-29, 34-45, 47-73, and 76-81. Nevertheless, the Parties are apologetic that it took a Motion to Compel to achieve such a resolution. {To the extent that Atico has, at this point in time, failed to agree to the list of ten "baby products" that Defendants provided Atico with on Tuesday afternoon, it currently appears that some of these tentatively resolved requests may shift back into the unresolved

category.} {We will all double check this list and will submit only after we come to an agreement as to the list of "baby products."}

The Parties will continue to work together to accomplish discovery and are hopeful that this Court's continued involvement and oversight will assist in that regard. Particularly, issues remain for resolution by the Court regarding Requests no.s 3-4, 10, 17, 20-21, 27, 30-33, 46, and 74-75. {Additionally, as stated above, it appears likely that non-compliance with Fed.R.Civ.P. 34(b)(2)(E)(i) by Atico will also be an issue to be resolved by the Court.} {We will all double check this list and will submit only after we come to an agreement as to the list of "baby products."}

Dated: September 30, 2009        Respectfully submitted,

By: __/s_ *Susan J. Latham*___        {By: __/s_____}
James A. Gale / Fla. Bar no. 371726        {Jeffrey H. Kamenetsky}
jgale@feldmangale.com        jkamenetsky@cwiplaw.com
Susan J. Latham / Fla. Bar no. 0687391        {**CHRISTOPHER & WEISBERG, P.A.**}
slatham@feldmangale.com        200 East Las Olas Blvd., Suite 2040
**FELDMAN GALE, P.A.**        Ft. Lauderdale, FL 33301
One Biscayne Tower, 30th Floor        Telephone: 954-828-1488
2 South Biscayne Boulevard        Facsimile: 954-828-9122
Miami, Florida 33131        *Counsel for Atico International USA, Inc.*
Telephone: 305-358-5001        *and Walgreen Co.*
Facsimile: 305-358-3309
*Counsel for Luv n' care Ltd. and Admar International, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of September 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s Susan J. Latham
SUSAN J. LATHAM

**SERVICE LIST**
*Atico International USA, Inc. v. Luv N' Care, Ltd., et al.*
Case No. 09-60397-CIV-COHN/SELTZER
United States District Court, Southern District of Florida

Alan Weisberg
aweisberg@cwiplaw.com
Jeffrey H. Kamenetsky
jkamenetsky@cwiplaw.com
Christopher & Weisberg, P.A.
200 East Las Olas Blvd., Suite 2040
Ft. Lauderdale, FL 33301
Phone: 954-828-1488
Facsimile: 954-828-9122
*Counsel for Atico International USA, Inc. and Walgreen Co.*
*Via CM/ECF*

Floyd B. Chapman
Wiley Rein, LLP
1776 K Street, N.W.
Washington, DC  20006
Email: fchapman@wileyrein.com
Phone: 202-719-7308.
Facsimile: 202-719-7049.
*Co-counsel for Atico International USA, Inc. and Walgreen Co.*
*Via CM/ECF*