# EXHIBIT B

> **Formatted:** Font: Times New Roman Bold, 36 pt

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-60397-CIV-COHN/SELTZER

**ATICO INTERNATIONAL USA, INC.,**
a Delaware corporation,

       **Plaintiff,**

v.

**LUV N' CARE, LTD.,** a Louisiana corporation,
and **ADMAR INTERNATIONAL, INC.,** a
Delaware corporation,

       **Defendants.**
_____/

**LUV N' CARE, LTD.,** a Louisiana corporation,
and **ADMAR INTERNATIONAL, INC.,** a
Delaware corporation,

       **Counterclaim and**
       **Third Party Plaintiffs,**

v.

**ATICO INTERNATIONAL USA, INC.,**
a Delaware corporation, Counterclaim Defendant
and **WALGREEN CO.,** an Illinois corporation, Third
Party Defendant
_____/

### JOINT STATUS REPORT ON DEFENDANTS' AND PLAINTIFF'S MEET AND CONFER REGARDING DEFENDANTS' MOTION TO COMPEL ATICO TO PRODUCE DOCUMENTS

Pursuant to this Court's Order (D.E.# 61) of September 22, 2009, Defendants Luv n' care, Ltd. ("Luv N' Care" or "LNC") and Admar International ("Admar") jointly with Plaintiff Atico International USA, Inc. ("Atico"), (collectively, the "Parties"), respectfully submit this

2

joint status report of the progress and outcome of the meet and confer the Parties conduced on Friday, September 25, 2009 and state as follows:

1.  Counsel for the Parties met on Friday, September 25, 2009 at 10:00 a.m. at the offices of Defendants' (local) counsel, Feldman Gale, P.A. At such time, both Atico's local (Christopher & Weisberg, P.A.) and non-local counsel (Floyd Chapman of Wiley Rein LLP) appeared to participate in the scheduled meet and confer.

2.  As to the timing of its production of non-privileged documents, Atico stated that it would begin producing documents on Tuesday, September 29, 2009. On Tuesday, September 29, 2009, Atico produced a CDROM containing documents batestamped ATICO00000001 – ATICO00002100.

3.  Atico stated that it had made a reasonable effort to collect documents and believed it would complete processing of all collected, responsive documents by the Friday, October 2, 2009, or by Monday, October 5, 2009. The scope of many requests were being negotiated such that additional searches may be necessary. Furthermore, many of the requests are directed to documents and evidence to be generated as part of the litigation. It is entirely reasonable and expected that discovery be an on-going process.

4.  **Defendants Description re Privilege Log**: Atico admitted that it had not yet prepared a privilege log as to its documents but that counsel "thinks" that one had been begun. Nevertheless, Atico's counsel was not willing to produce any privilege log that might have been begun by having it faxed over during the meeting. Later in the meeting, Atico agreed to produce its privilege log by Friday, October 2, 2009.

3

5. **Atico's Description re Privilege Log**: Neither Defendants nor Plaintiff has produced a privilege log in this case. Atico proposed that the parties reach an agreement as to what documents should be excluded from the privilege log because with three litigations involving overlapping products, it would be overly burdensome to require all parties to log all privileged communications, especially those litigation-related communications that occurred after the complaints were filed. Defendants refused to discuss this issue. Atico requested the Parties agree to a date to exchange privilege logs. Defendants refused. Atico asked if the Defendants were ready to produce a privilege log. Defendants refused to answer, instead insisting this was a meet and confer for Defendant's motion to compel. Defendants demanded that Atico commit to a date for producing a privilege log, and Atico stated it needed to complete processing of the collected documents before it could commit to a date. Defendants continued to insist upon a date for producing a privilege log. Atico said it would not be ready to discuss such a date until it finished processing of the collected documents. Atico did agree to follow up on the privilege log by Friday October 2 and would consider producing a partial privilege log at that time. Atico contends that the sheer volume of litigation-related communications will needlessly require the parties to log thousands and thousand of communications that are so clearly privileged that it is only reasonable (and customary) to agree to exclude communications involving litigation counsel after the complaint is filed. In this case, since there are three litigations involving overlapping products and overlapping parties, it is only reasonable to exclude litigation-related communication involving litigation counsel for all three cases. Atico requests the Court adopt this guideline to be binding on both sides for the privilege logs in this case. Atico intends to brief this in great detail in its opposition brief.

4

6.  Defendants' counsel disagreed that in-house counsel should be excluded from viewing "highly confidential" documents or that the Parties should be absolutely barred from using any such documents in other cases involving the litigants but, nevertheless, agreed to treat any such designated documents as outside counsel only and only for this Florida case *until such time as a protective order is entered*. Thus, leaving it to the Court to decide the proper scope of the protective order as to the Parties' "Highly Confidential" documents. **This issue has already been presented to the Court for resolution.**

7.  The Parties have worked very hard to cooperate and reach amicable resolutions where possible. The Parties have been successful in narrowing the issues for this Court's consideration. The Parties will continue to work together to accomplish discovery and are hopeful that this Court's continued involvement and oversight will assist in that regard. Particularly, issues remain for resolution by the Court regarding Requests no.s 21, 27, 30-33, and 74-75. [We will all double check this list and will submit only after we come to an agreement as to the list of "baby products."]

8.  Below are the points of discussions for the remaining requests at issue:

**Request No. 21:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Defendants also agreed to limit the scope of time for this request to documents dating back to January 2004. Atico offered to limit this request to the products at issue. Defendants acknowledged that Atico may need greater leeway on this request because of its nature for every document concerning. Having reviewed the list of "baby products" produced September 29, Atico continues to believe it is overly burdensome by requiring Atico to produce all documents

---

- Deleted: will need to be resolved by the Court.
- Deleted: 7. . Atico declined to expressly state that it was withdrawing any objections. ¶ 8
- Deleted: .
- Deleted: Next, the Parties discussed each of the specific requests in order and determined as follows:
- Deleted: **Request No. 1:** . Atico agreed that the 5 year time period this request and others is not unreasonable since Defendants' products were on sale at that time. Thus, Atico agreed to produce documents dating back to June 2004 to the extent they have responsive documents, including any Walgreen's documents that may be in their possession. Atico does not believe that there are confidential docs in this category. ¶
**Request No. 2:** . As it did for Request no. 1, Atico agreed to produce documents dating back to June 2004 to the extent they have responsive documents. ¶
**Request No. 3:** . Defendants clarified that this request calls for documents that both identify the owner and relate to the product(s) at issue. Atico agrees to produce responsive documents are in its possession.¶
**Request No. 4:** . Atico agreed that it would produce: (a) any surveys involving any of the packaging at issue, (b) any surveys involving any of the products at issue, and (c) any surveys involving trademarks relating to the products at issue. However, the Parties could not agree as to whether this Request requires Atico to produce surveys involving products that are not at issue in this case but bear trademarks that are also related to the products at issue, *e.g.*, Wagi on baby thermometers. **This last issue may need to be resolved by the Court.**¶
**Request No. 5:** . Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Defendants agreed that this Request and any other request that employs the term "baby products" will be limited by such narrowed definition/list. Therewith, Atico agreed to produce responsive documents. ¶
**Request No. 6:** . Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Therewith, Atico agreed to produce responsive documents.¶
**Request No. 7:** . Defendants agreed to limit the definition of "baby produ... [1]

related to numerous products not at issue in this litigation. Atico renews its offer to produce (and will produce) non-privileged responsive documents relating to the products at issue. **This issue may need to be resolved by the Court.**

**Request No. 27:** Defendants seek documents related to any Atico warehouse, regardless of the products stored there. Atico wants to limit the documents to warehouses that store any products at issue. **This issue may need to be resolved by the Court.**

**Request No. 30:** Defendants agreed that this request does not call for any communications about non-listed "baby products" (per narrowed definition of that term) between Atico and manufacturer but does includes general communications between Walgreens and the manufacturer. The request calls for "all communications" regardless of subject matter. Atico contends that the communications should have some bearing to a product at issue. Atico agreed to produce non-privileged communications regarding the products at issue and for "baby products" as narrowed above. The only issue remaining is whether Atico must produce communications with the stated manufacturers, where the communications are unrelated to any product whatsoever (i.e., not related to products at issue, baby products or any other product). **This issue may need to be resolved by the Court.**

**Request No. 31:** This request, while slightly different, involves the same exact issue as 30. **This issue may need to be resolved by the Court.**

**Request No. 32:** This request, while slightly different, involves the same exact issue as 30. Defendants refused to limit this request to documents relating only to the specific products at issue. However, Defendants agreed that this request does not call for any communications about non-listed "baby products" (per narrowed definition of that term) between

6

Atico and manufacturer but does includes general communications between Walgreens and the manufacturer. Since the meet and confer concluded, Atico agreed to "make a reasonable effort to produce non-privileged, responsive documents relating to sippy cups." Defendants requested that Atico check and respond as to whether Atico uses any other manufacturer other than Royal King to manufacture sippy cups. To date, Atico has not provided an answer to that question because the answer does not resolve this dispute. **This issue may need to be resolved by the Court.**

  **Request No. 33:** This request, while slightly different, involves the same exact issue as 30. **This issue may need to be resolved by the Court.**

  **Request No. 74:** The Parties have not resolved their differences as to this request except for the understanding that this request does not call for documents relating to claims against LNC and/or Admar. Atico's contends that this request seeks information regarding other litigations that have no relation whatsoever to any product at issue or any baby product, and Defendants can just as easily run computer searches to pull information on prior litigations. Atico offered to limit this request to claims relating to any product at issue. Defendants stated that they would consider withdrawing the remainder of this request, but has not followed up. **This issue may need to be resolved by the Court.**

  **Request No. 75:** The Parties have not resolved their differences as to this request except for the understanding that this request does not call for documents relating to claims brought by LNC and/or Admar. Atico's contends that this request seeks information regarding other litigations that have no relation whatsoever to any product at issue, and Defendants can just as easily run computer searches to pull information on prior litigations. Atico offered to limit
---

Margin comments:

**Deleted:** Atico's counsel examined the sample Wagi sippy cup on the table and Defendant's contend that asked "which one is that...that's not the Wagi." Atico's counsel believes he used the term "Nuby."

**Formatted:** Not Highlight

**Deleted:** Defendants refused to limit this request to documents relating only to the specific products at issue. However, Defendants agreed that this request does not call for any communications about non-listed "baby products" (per narrowed definition of that term) between Atico and manufacturer but does includes general communications between Walgreens and the manufacturer. Since the meet and confer concluded, Atico agreed to "make a reasonable effort to produce non-privileged, responsive documents relating to sippy cups." Defendants requested that Atico check and respond as to whether Atico uses any other manufacturer other than Royal King to manufacture sippy cups. To date, Atico has not provided an answer to that question.

**Deleted: Request No. 34:** Atico stated that it will produce documents responsive to this request, has "no issue" with this Request; although it is not sure whether it has any responsive documents. However, if it does, it will produce them. ¶
**Request No. 35:** Atico agreed to produce responsive documents. ¶
**Request No. 36:** The parties agreed that "third party" does not include Walgreens. Atico agreed to produce responsive documents.¶
**Request No. 37:** Atico agreed to produce responsive documents.¶
**Request No. 38:** Atico agreed to produce responsive documents except for privileged documents. ¶
**Request No. 39:** Atico agreed to produce responsive, non-privileged documents.¶
**Request No. 40:** Atico agreed to produce responsive documents with the understanding that the term "third party" excludes parties to this suit.¶
**Request No. 41:** Atico agreed to produce responsive documents.¶
**Request No. 42:** Atico agreed to produce responsive documents.¶
**Request No. 43:** Atico agreed to produce responsive documents.¶
**Request No. 44:** Atico agreed to produce responsive documents, if it has any.¶
**Request No. 45:** Atico agreed to produce responsive documents, if it has any.¶
**Request No. 46:** Atico agreed to produce responsive documents, if [...2]

this request to claims relating to any product at issue. Defendants stated that they would consider further withdrawing the remainder of this request, but has not followed up. **This issue may need to be resolved by the Court.**

Dated: September 30, 2009                    Respectfully submitted,

By: /s _____                       By: /s _____
James A. Gale / Fla. Bar no. 371726          Floyd Chapman/Fla Bar no. 0982377
jgale@feldmangale.com                        FChapman@wileyrein.com
Susan J. Latham / Fla. Bar no. 0687391       **WILEY REIN, LLP**
slatham@feldmangale.com                      1776 K Street, N.W.
**FELDMAN GALE, P.A.**                       Washington, D.C. 20006
One Biscayne Tower, 30th Floor               Telephone: 202-719-7308
2 South Biscayne Boulevard                   Jeffrey H. Kamenetsky
Miami, Florida 33131                         jkamenetsky@cwiplaw.com
Telephone: 305-358-5001                      **CHRISTOPHER & WEISBERG, P.A.**
Facsimile: 305-358-3309                      200 East Las Olas Blvd., Suite 2040
*Counsel for Luv n' care Ltd. and Admar*     Ft. Lauderdale, FL 33301
*International, Inc.*                        Telephone: 954-828-1488
                                             Facsimile: 954-828-9122
                                             *Counsel for Atico International USA, Inc.*
                                             *and Walgreen Co.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of September 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s_____
SUSAN J. LATHAM

---

**Margin comments:**

**Deleted:** Request No. 76: . Atico agreed to produce responsive documents.¶
Request No. 77: . Atico agreed to produce responsive documents.¶
Request No. 78: . Atico agreed to produce responsive documents.¶
Request No. 79: . Atico agreed to produce responsive documents.¶
Request No. 80: . Atico agreed to produce responsive documents.¶
Request No. 81: . Atico agreed to produce responsive documents.

**Deleted:** CONCLUSION¶
The Parties have worked very hard to cooperate and reach amicable resolutions where possible. The Parties have been successful in narrowing the issues for this Court's consideration. Particularly, the Parties represent that, in light of the above, at this date there are no issues for the Court to decide as to Requests no.s 1, 2, 3, 5-9, 121-16, 18-19, 22-26, 28-29, 34-45, 47-7346-52, 56-59, 62-73, and 76-81. Nevertheless, the Parties are apologetic that it took a Motion to Compel to achieve such a resolution. [We will all double check this list and will submit only after we come to an agreement as to the list of "baby products."]¶
The Parties will continue to work together to accomplish discovery and are hopeful that this Court's continued involvement and oversight will assist in that regard. Particularly, issues remain for resolution by the Court regarding Requests no.s 3-4, 10, 17, 20-21, 27, 30-33, 46, and 74-75. [We will all double check this list and will submit only after we come to an agreement as to the list of "baby products."] ¶

**Formatted:** Right: 0.06"

**Deleted:** ----------Page Break----------

**Deleted:** 29th

**SERVICE LIST**
*Atico International USA, Inc. v. Luv N' Care, Ltd., et al.*
Case No. 09-60397-CIV-COHN/SELTZER
United States District Court, Southern District of Florida

Alan Weisberg
aweisberg@cwiplaw.com
Jeffrey H. Kamenetsky
jkamenetsky@cwiplaw.com
Christopher & Weisberg, P.A.
200 East Las Olas Blvd., Suite 2040
Ft. Lauderdale, FL 33301
Phone: 954-828-1488
Facsimile: 954-828-9122
***Counsel for Atico International USA, Inc. and Walgreen Co.***
*Via CM/ECF*

Floyd B. Chapman
Wiley Rein, LLP
1776 K Street, N.W.
Washington, DC  20006
Email: fchapman@wileyrein.com
Phone: 202-719-7308.
Facsimile: 202-719-7049.
***Co-counsel for Atico International USA, Inc. and Walgreen Co.***
*Via CM/ECF*

9

| Page 5: [1] Deleted | Author |
|---|---|

**Request No. 1:** Atico agreed that the 5 year time period this request and others is not unreasonable since Defendants' products were on sale at that time. Thus, Atico agreed to produce documents dating back to June 2004 to the extent they have responsive documents, including any Walgreen's documents that may be in their possession. Atico does not believe that there are confidential docs in this category.

**Request No. 2:** As it did for Request no. 1, Atico agreed to produce documents dating back to June 2004 to the extent they have responsive documents.

**Request No. 3:** Defendants clarified that this request calls for documents that both identify the owner and relate to the product(s) at issue. Atico agrees to produce responsive documents are in its possession.

**Request No. 4:** Atico agreed that it would produce: (a) any surveys involving any of the packaging at issue, (b) any surveys involving any of the products at issue, and (c) any surveys involving trademarks relating to the products at issue. However, the Parties could not agree as to whether this Request requires Atico to produce surveys involving products that are not at issue in this case but bear trademarks that are also related to the products at issue, *e.g.*, Wagi on baby thermometers. **This last issue may need to be resolved by the Court.**

**Request No. 5:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Defendants agreed that this Request and any other request that employs the term "baby products" will be limited by such narrowed definition/list. Therewith, Atico agreed to produce responsive documents.

**Request No. 6:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Therewith, Atico agreed to produce responsive documents.

**Request No. 7:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Atico stated that it has no objection to this Request and is not disagreeing to this. Thus, if they have documents relating to manufacturingresponsive , they will produce them.

**Request No. 8:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Atico agreed to produce responsive documentsAtico stated that it has no objection to this Request and is not disagreeing to this. Thus, if they have documents relating to manufacturing they will produce them.

**Request No. 9:** The Parties agreed that Atico will produce responsive documents for this Request so long as they relate to the product at issue.

**Request No. 10:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Additionally, Defendants agreed to narrow this Request further such that documents are responsive so long as they relate to the product at issue.

**Request No. 11:** Atico's counsel stated that it is unlikely that Atico does any advertising but that if it has responsive documents, Atico will produce them. Nevertheless, it is understood that the Request covers any advertising, brochures or other promotional pieces that Atico distributes to retailers or entities like Walgreen, Target, etc.

Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell.

**Request No. 12:** Atico agreed to produce responsive documents subject to claims of privilege.

**Request No. 13:** The Parties agreed that documents responsive to this Request must relate to the trade dress and/or packaging of the products at issue rather than trademarks. With that agreement, Atico will produce responsive documents.

**Request No. 14:** Atico agreed to produce all non-privileged responsive documents.

**Request No. 15:** Atico agreed to produce all non-privileged responsive documents.

**Request No. 16:** The Parties agreed to modify the language of this Request and Atico, therewith, agreed to produce responsive documents. The modified language is as follows:

> All documents and things concerning the creation or development of any and all products at issue, or the creation, developmentand/ or adoption of its packaging, including, but not limited to: (a) all communications between you and any consultant, design firm, marketing agency, advertising agency, media company, manufacturer, printer or other supplier connected with or consulted as to the development or adoption of such product and/or its packaging; (b) all case studies, reports, or market studies relating to any such product and/or its packaging; (c) all samples, specifications, mock-ups, prototypes or other examples of preliminary or intermediate designs of such product and/or its packaging; and (d) all agendas or records of meetings relating to the creation or development or use of such products and/or creation, development or adoption of its packaging.

**Request No. 17:** Defendants refused to narrow the term "sippy cup." Atico agreed to produce all non-privileged documents relating to "sippy cups" but not baby bottles.

**Request No. 18:** Defendants agreed to limit the definition of the term "child care product" according to the same limitation of the term "baby products." Therewith, Atico agreed to produce responsive documents.

**Request No. 19:** Atico agreed to produce responsive documents.

**Request No. 20:** Defendants agreed to limit it this request to documents dating back through January 1, 2004 but excluding visitors except for those visitors related to the products at issue. Atico agreed to produce responsive documents. However, because Atico sells at least 100,000 products, Atico's counsel wanted additional time to table the "occupation" issue to follow-up with the client and would try to get back to us by the end of the day at 6:00 p.m. To date, Atico has not gotten back to Defendants as to this Requestthe issue remains unresolved. **This issue may need to be resolved by the Court.**

| Page 7: [2] Deleted | Author |
|---|---|

**Request No. 34:** Atico stated that it will produce documents responsive to this request, has "no issue" with this Request; although it is not sure whether it has any responsive documents. However, if it does, it will produce them.

**Request No. 35:** Atico agreed to produce responsive documents.

**Request No. 36:** The parties agreed that "third party" does not include Walgreens. Atico agreed to produce responsive documents.

**Request No. 37:** Atico agreed to produce responsive documents.

**Request No. 38:** Atico agreed to produce responsive documents except for privileged documents.

**Request No. 39:** Atico agreed to produce responsive, non-privileged documents.

**Request No. 40:** Atico agreed to produce responsive documents with the understanding that the term "third party" excludes parties to this suit.

**Request No. 41:** Atico agreed to produce responsive documents.

**Request No. 42:** Atico agreed to produce responsive documents.

**Request No. 43:** Atico agreed to produce responsive documents.

**Request No. 44:** Atico agreed to produce responsive documents, if it has any.

**Request No. 45:** Atico agreed to produce responsive documents, if it has any.

**Request No. 46:** Atico agreed to produce responsive documents, if it has any to the extent it has any in its possession. Atico agreed to produce samples of all the products that it thinks are at issue but that it does not know if the two-packs and three-packs are "products at issue" but that it will strive to get and produce samples of them but that some may be more difficult to get. Defendants requested that Atico check into it and clarify which samples will take longer to get and clarify whether there are any samples that Atico cannot get its hands on. To date, Atico has not made any such clarification.

**Request No. 47:** Atico agreed to produce responsive documents, if it has any.

**Request No. 48:** Atico agreed to produce responsive documents, if it has any.

**Request No. 49:** Atico agreed to produce responsive documents, if it has any.

**Request No. 50:**   Atico agreed to produce responsive documents, if it has any that are not subject to privilege.

**Request No. 51:**   Atico agreed to produce responsive documents, if it has any.

**Request No. 52:**   Defendants clarified that this request calls for documents relating only to the products at issue. Therewith, Atico agreed to produce responsive documents.

**Request No. 53:**   Defendants declined to narrow this request. Nevertheless, since the meet and confer concluded, Atico has agreed to "make a reasonable effort to produce non-privileged responsive documents relating to sippy cups."

**Request No. 54:**   Defendants declined to narrow this request. Nevertheless, since the meet and confer concluded, Atico has agreed to "make a reasonable effort to produce non-privileged, responsive documents also relating to sippy cups."

**Request No. 55:**   Defendants declined to narrow this request. Nevertheless, since the meet and confer concluded, Atico has agreed to "make a reasonable effort to produce non-privileged, responsive documents also relating to sippy cups."

**Request No. 56:**   Atico agreed to produce responsive documents.

**Request No. 57:**   Atico agreed to produce responsive documents.

**Request No. 58:**   Atico agreed to produce responsive documents subject to claims of privilege.

**Request No. 59:**   Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Therewith, Atico agreed to produce responsive documents.

**Request No. 60:** Defendants declined to narrow this request. Nevertheless, since the meet and confer concluded, Atico has agreed to "make a reasonable effort to produce non-privileged, responsive documents also relating to sippy cups."

**Request No. 61:** Defendants declined to narrow this request. Nevertheless, since the meet and confer concluded, Atico has agreed to "make a reasonable effort to produce non-privileged, responsive documents also relating to sippy cups."

**Request No. 62:** Atico agreed to produce responsive documents.

**Request No. 63:** Defendants agreed to limit the Request to relate to the products at issue. Therewith, Atico agreed to produce responsive documents.

**Request No. 64:** Atico agreed to produce responsive documents.

**Request No. 65:** Defendants agreed to limit the Request to relate to the products at issue. Therewith, Atico agreed to produce responsive documents.

**Request No. 66:** Atico agreed to produce responsive documents.

**Request No. 67:** Atico agreed to produce responsive documents.

**Request No. 68:** Atico agreed to produce responsive documents subject to claims of privilege.

**Request No. 69:** Defendants agreed to limit the Request to relate to the Plaintiff or Walgreens and that relate to the product at issue, or the relationship between Plaintiff and Walgreens.the products at issue and/or to the relationship between Atico and Walgreen. Therewith, Atico agreed to produce responsive documents.

**Request No. 70:** Atico agreed to produce responsive documents subject to the work-product privilege.

**Request No. 71:** Atico agreed to produce responsive documents with the understaning that the term "third party" excludes parties to this suit.

**Request No. 72:** Atico agreed to produce responsive documents.

**Request No. 73:** Defendants agreed to limit the definition of "baby products" pursuant to, and by providing, a list of the types of baby products that the Defendants sell. Therewith, Atico agreed to produce responsive documents.