# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 09-60397-CIV-COHN/SELTZER

**ATICO INTERNATIONAL USA, INC.,**
**a Delaware corporation,**

        **Plaintiff,**

**v.**

**LUV N' CARE, LTD., a Louisiana corporation,**
**and ADMAR INTERNATIONAL, INC., a**
**Delaware corporation,**

        **Defendants.**
_____/

**LUV N' CARE, LTD., a Louisiana corporation,**
**and ADMAR INTERNATIONAL, INC., a**
**Delaware corporation,**

        **Counterclaim and**
        **Third Party Plaintiffs,**

**v.**

**ATICO INTERNATIONAL USA, INC.,**
**a Delaware corporation, Counterclaim Defendant**
**and WALGREEN CO., an Illinois corporation, Third**
**Party Defendant**
_____/

## THIRD-PARTY PLAINTIFFS' REPLY TO WALGREEN CO.'S OPPOSITION (D.E.# 103) TO THIRD-PARTY PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE

      Third-party Plaintiffs Luv n' care, Ltd. and Admar International, Inc., (hereinafter, collectively, "LNC"), hereby respectfully reply to Walgreen Co.'s ("Walgreen") Opposition (D.E.# 103) to LNC's Response (D.E.# 101) to this Court's order to show cause why the Court should not dismiss the Third-Party Complaint against Walgreen Co. (D.E.# 97, ¶3),, and state as follows:

# TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................... 1

II.   WALGREEN IS A NECESSARY PARTY ..................................... 2

III.  CLAIM-SPLITTING DOCTRINE IS NOT APPLICABLE ........................ 5

    A. WALGREEN CONTINUES TO MISCONSTRUE THE 'CLAIM-SPLITTING' DOCTRINE
...................................................................................................... 5

    B. EVEN IF THE 'CLAIM-SPLITTING' DOCTRINE APPLIED, WALGREEN HAS FAILED TO DEMONSTRATE THAT LNC'S CLAIMS HERE FALL WITHIN ITS PARAMETERS ..................... 6

        *1. LNC's Federal and State Claims Encompass New Sippy Cup Products Being Sold by Walgreen That Are Not At Issue In the New York Action* ....................................... 7

        *2. The New York Court Found LNC Never Made Allegations as to Comb and Brush Set Against Walgreen in the New York Action* ............................................... 8

        *3. The USPTO Has Granted LNC a Notice of Allowance for a Design Patent on the Gripper Cup; Thus, LNC Intends to Amend Its Third-Party Complaint Against Walgreen to Assert Claims for Patent Infringement* .................................... 9

    C. EVEN IF THE 'CLAIM-SPLITTING' BAR APPLIED, WALGREEN WAIVED IT
...................................................................................................... 9

IV.  CONCLUSION ................................................................. 10

## MEMORANDUM

### I.     Introduction

In its opposition, Walgreen misrepresents the law and ignores the facts.  Indeed, Walgreen's misrepresentation of the "prevailing rule" of claim-splitting ignores the decisions of this Court and the Eleventh Circuit and, instead, relies on non-binding, dicta-ridden law from other jurisdictions.  Similarly, while nakedly asserting that its initiation of this action is "irrelevant," Walgreen ignores the fact that it began this case by alleging that the facts leading to and arising in the New York case also gave rise to the "actual and justiciable case and controversy" necessitating this action.

Although it is clear that Walgreen would like to continue to use Atico as its proxy before this court, the limited discovery provided by Walgreen in this action so far shows that LNC cannot adequately defend this action and prosecute its counterclaim against Atico without the joinder of Walgreen.  Indeed, the facts as thus far developed, already indicate that Walgreen is not just a key witness but also an active—and indeed a primary—participant in the conduct that is at issue in this action.  For example, Walgreen: (1) is an active participant in an acknowledged relationship between Walgreen, Royal King, and Atico; (2) ███████████████████████████████ ██████████████████████████████████████████████████;  (3) ███████████ ████████████████████████████████████████████████████████████ ██████████████████████████████;  (4) ████████████████████████ ████████████████████;  (5) ██████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████;  (7) ████████████████████ ████████████████████████;  and (8) ██████████████████████████ ████████████████████.

Furthermore, Walgreen ignores the fact that the claims and counterclaims in this action involve new infringing designs that Atico only just recently disclosed by nonchalantly filing a "corrected" exhibit.  Likewise, Walgreen ignores the New York court's finding that LNC's comb and brush set were never at issue against Walgreen in the New York action.  Finally, even if the present claims against Walgreen in this action were not viewed as significantly distinct from those presently being litigated in New York, the USPTO has recently granted a notice of

1

allowance of design patent registration for LNC's Gripper Cup.  Thus, LNC intends, upon issuance of the design patent, to bring patent infringement claims against Walgreen in this action. Accordingly, this Court should permit LNC to maintain its claims against Walgreen as a necessary party to this action, which is distinct from the action pending in New York.

## II.    Walgreen is a Necessary Party

Walgreen tries to wiggle out of this action by asserting that LNC never objected to Walgreen's voluntary withdrawal.  D.E.# 103, p. 5; *see* D.E.#10.  This contention is a mere distraction and must be rejected.  The Federal Rules of Civil Procedure did not require that LNC immediately object and, in fact, Fed.R.Civ.P. 41(a)(1) does not provide a defendant with the right to object to a voluntary dismissal where it had not yet answered the complaint, as was the case here. Fed.R.Civ.P. 41(a)(1); *see* D.E.#10.  Moreover, under the Rules, LNC's objection that a necessary party is missing from the case cannot be deemed to have been waived or to have been made at too late.  *See* Fed.R.Civ.P. 12(b)(7) and 12(h)(2)(C).  Thus, LNC's joinder of Walgreen back into this case was timely and proper.  *See* D.E.# 33.

Walgreen is also misguided in its opinion that it is not a necessary party to this action because the "active participant" exception (to the usual characterization of joint tortfeasors as permissive parties rather than necessary parties) discussed in the Eleventh Circuit's *Laker* decision does not apply.  D.E.#103, p. 2.  In support of that bare assertion of opinion, Walgreen cites to only an unreported case and the mere fact that *Laker* was an anti-trust case.[1]

First, the case Walgreen cites, *Axiom Worldwide, Inc. v. Becerra*, 2009 WL 1347398 (M.D.Fla.) (not reported in F.Supp.2d), cannot abrogate Eleventh Circuit precedent. Additionally, in *Axiom*, the entity that the defendants sought to join was the manufacturer of the allegedly infringing goods.  However, under the Lanham Act, it is not the mere manufacture of goods that supports an infringement action but, rather, the offer or sale of such goods in commerce.  Here, neither Walgreen nor Atico are the manufacturer of the subject goods.[2] Instead, Walgreen *is* the entity that ███████████████████████████████████

---

[1]  Walgreen entirely ignored the other case LNC cited in its Response (DE# 101), which is *CNH Capital Amer., LLC v. Southeastern Aggregate, Inc.*, 2009 WL 1759572, *4 (S.D.Ga. June 18, 2009), where the court joined the entity *sua sponte* to a fraud and conspiracy counterclaim.

[2]  The actual manufacturer is located in Asia.

2

███████████████████████████████████████████. *See* Exhibit "A" (████████████████

████████████ filed under seal). Thus, Walgreen's attempt to use the factually inapposite,

unreported *Axiom* decision as a free-pass must fail.

Secondly, Walgreen's citation to the mere fact that *Laker* was an anti-trust case is of no

importance. The Eleventh Circuit did not expressly or impliedly limit the "active participant"

exception to application in only that particular cause of action. *See Laker Airways, Inc. v. British

Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999). Moreover, the case from which the *Laker*

court derived the active participant exception was a pre-1981 (and, thus, binding) Fifth Circuit [3]

decision that was ***not*** an anti-trust case but, rather, a case for an injunction and damages for a

bank's failure to issue shares of common stock to the plaintiff. *Haas v. Jefferson National Bank

of Miami*, 442 F.2d 394, 398 (5th Cir. 1971). Furthermore, several courts have expressly applied

the "active participant" exception outside of the anti-trust context. *See* e.g., *Freeman v.

Northwest Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985) (action for conversion of gravel);

*CNH Capital Amer., LLC v. Southeastern Aggregate, Inc.*, 2009 WL 1759572, *4 (S.D.Ga. June

18, 2009) (joined by the court sua sponte as to a fraud and conspiracy counterclaim); *Creative

Trade Group, Inc. v. Int'l Trade Alliance, Inc.*, 2010 WL 1541308, *4 (N.D.Ill.) (slip copy)

(action for conversion of money).

Here, it is readily apparent that Walgreen is more than a key witness and is, instead, an

active—and indeed primary—participant in the matters at issue in this action. First, Walgreen is

not simply a customer but, rather, an active participant in an acknowledged relationship between

Walgreen, Royal King,[4] and Atico. Exhibit "B" (WDSF 000327, email dated 5/22/2008 filed

under seal). Indeed, Walgreen's baby products category manager, ██████████████████████

████████████████████████████████████████████. Exhibit "C" (████████

████████, filed under seal). Likewise, Walgreen's baby products category manager ██████████

████████████████████████████████████████. Exhibit "D" (████████████████

████, filed under seal).

---

[3]   The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

[4]   Royal King is the Thailand manufacturer of allegedly infringing products.

3



        It is Walgreen who dictated and had to approve the packaging of the products at issue and set the pricing, thus, controlling the profit margin.  *See* Exhibit "F" (WDSFL 000287 and 000297-303, filed under seal).  Last, but not least, it is also Walgreen ███████████ ████████████████████████████████████████████████████.  *See* Ex. "A" (████████████████████████████████████ filed under seal).

        Walgreen's initial Complaint in this action also indicated this active participation and Atico's Second Amended Complaint continues to rely on allegations relating to Walgreen's central role.  For example, Walgreen (and now Atico alone) alleged the relationship between Atico and Walgreen (DE#1, ¶18-20; DE#51-2, ¶21-23); Walgreen's purchases of sippy cups (DE#1, ¶21; DE#51-2, ¶24); the reason why Walgreen chose Atico's products (over Luv n' care's) (DE#1, ¶22; DE#51-2, ¶25); Walgreen's beliefs as to the quality of its products (DE#1, ¶23; DE#51-2, ¶26) and the value of those products (DE#1, ¶24; DE#51-2, ¶27); the success of Walgreen's sales of the infringing products versus Luv n' care's original products (DE#1,¶30; DE#51-2, ¶33); what Walgreen attributes that success to (DE#1, ¶31; DE#51-2, ¶34); whether Walgreen's decision to sell the infringing products was a "prudent business decision" (DE#1, ¶32; DE#51-2, ¶35); the communications between Luv n' care and Walgreen (DE#51-2, ¶39, 41); whether Walgreen sells cheap knock-offs (DE#1, ¶39; DE#51-2, ¶42); the alleged "reason" why Luv n' care sued Walgreen in the New York suit (DE#1, ¶35-36; DE#51-2, ¶51,52); and more regarding Walgreen and the New York suit.

        Jointly represented by the very same counsel, it is apparent that Atico and Walgreen would not be prejudiced by both appearing before this Court.  Instead, Atico is acting as Walgreen's proxy here: it makes dozens of allegations here regarding Walgreen –on Walgreen's behalf–while Walgreen maneuvers from the sidelines.  By keeping one of the essential parties out of both suits, Walgreen and Atico try to isolate Luv n' care from fully and fairly pursuing its causes of action here, and from obtaining the full and fair relief it deserves.

Accordingly, in light of such active participation in the infringement, unfair competition, and deceptive and unfair trade practices at issue in this case, LNC could not be accorded complete relief in Walgreen's absence and, thus, Walgreen must be joined in this action pursuant to Rule 13(h) and 19.

## III.   Claim-Splitting Doctrine Is Not Applicable

### A.   Walgreen Continues to Misconstrue the 'Claim-Splitting' Doctrine

Despite clear authority from this Court, Walgreen continues to rely on non-binding [5] decisions from other jurisdictions to misconstrue the doctrine of claim-splitting.  *See* D.E.# 103, p. 3-4.  For example, Walgreen purports to set forth the "prevailing rule" from other circuits by relying upon a single circuit court of appeals case, *Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen*, 296 F.3d 982, 987 n.1 (10th Cir. 2002), which, as explained below, has been directly contradicted by a more recent decision from that circuit. [6]  *See* D.E.# 103, p. 3.

According to Walgreen, the Tenth Circuit's decision in *Hartsel* stands for the proposition that application of the claim-splitting bar does not require a final judgment.  D.E.# 103, p. 3.  However, the footnote in *Hartsel* upon which Walgreen relies merely sets forth that court's dicta which, in turn, is based upon dicta in various, non-binding state and federal authority—*i.e.*, double-dicta.  *See Hartsel*, 296 F.3d at 987, n. 1.

More importantly, however, Walgreen failed to apprise this Court that the more recent decision in *Hatch v. Boulder Town Council*, 471 F.3d 1142 (10th Cir. 2006) directly contradicted the *Hartsel* dicta by explaining that the Tenth Circuit had long-ago adopted the Restatement's "general rule concerning 'claim splitting'" that:

---

[5]  Many of such cases are unreported.  For example, *Zephyr Aviation III, L.L.C. v. Keytech Ltd.*, 2008 WL 759095 (M.D.Fla.) (not reported in F.Supp.2d.) for which Walgreen relies on dicta in footnote 4 and in the adopted magistrate's order—for which the court cites to non-binding cases from other circuits.  Walgreen also relies on unreported cases from the District of Delaware and the Northern District of Illinois.

[6]  Other than that Tenth Circuit case, *Hartsel*, Walgreen attempts to lengthen its string cite and give the impression of authority by citing to several reported and unreported decisions from district courts such as the District of Kansas, the District of Delaware, Southern District of California, and Northern District of Illinois.  All of which are, at the very least, non-binding and ridden with mere dicta.  D.E.# 103, p. 4.

5

> (1) When a valid and <u>final judgment</u> rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar. . .the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*Hatch*, 471 F.3d at 1145-46 (quoting Restatement Second of Judgments § 24) (emphasis added).[7] Furthermore, Walgreen entirely ignored the fact that a case that it previously cited (but now has seemingly abandoned) shows that, in <u>*this*</u> Court, claim-splitting exists as ***a principle under the doctrine of res judicata***.  *See* D.E. # 37, p. 12.  Indeed, this Court's *Del Pino* decision explained that claim-splitting bar exists as a principle of the doctrine of res judicata.  *Del Pino v. AT&T Information Sys., Inc.*, 921 F.Supp. 761, 766 (S.D.Fla. 1996) ("The doctrine of res judicata precludes claim splitting").

Thus, there are not two distinct and separate claim-splitting doctrines—one defined under the doctrine of res judicata and some other amporhous doctrine that Walgreen can bend for its current purpose.  Instead, because (*inter alia*) the New York action has not proceeded to a final judgment—let alone been set for trial—the claim-splitting bar does not apply, and LNC's action against Walgreen may proceed.

## B.     Even if the 'Claim-Splitting' Doctrine Applied, Walgreen Has Failed to Demonstrate that LNC's Claims Here Fall Within Its Parameters

Aside from demonstrating that Walgreen deceptively misstated the "prevailing rule," the *Hatch* court's decision also shows that Walgreen has failed to show that LNC was somehow obligated under the doctrine of claim-splitting (if it applied, which it does not) to bring the claims (asserted against Walgreen in this Court) in the New York action instead.  Indeed, the *Hatch* court considered the question of a plaintiff's responsibility to add *all* available claims to the prior suit and resolved it by stating:

> a claim should not be precluded merely because it is based on facts that arose prior to the entry of judgment in the previous action. . .'New' claims arising after the complaint has been filed, but before judgment, may be excluded from this transactional nexus, and thus be litigated in a subsequent action.

---

[7]  The *Hatch* court explained that the Tenth Circuit adopted this Restatement position on claim-splitting via the 1999 decision (well before Hartsel) of *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999).  *Hatch*, 471 F.3d at 1149.

*Hatch*, 471 F.3d at 1149-50.

Moreover, it is well established that parties have a right to sue separately upon distinct causes of action and it is a mistake to construe the words "which might have been raised" as applying to a cause of action other than the cause of action embraced in the previous suit. *U.S. v. The Haytian Republic*, 154 U.S. 118, 14 S.Ct. 992, 995 (1894); *see Rawe v. Liberty Mutual Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006) (following majority rule that the opportunity to file a supplemental complaint to allege ongoing alleged wrongdoing is not an obligation.).

Walgreen argues that LNC's position requires this court to find a complete uniformity among all causes of action between the New York case and this case before it can consider barring LNC's third-party complaint against Walgreen; however, that is not what LNC has suggested or requested. *See* D.E.#101. Instead, LNC has highlighted the significant differences between the New York and Florida actions, with only one such difference being LNC's state law claims. Yet, the significant differences between the New York action and this Florida action do not end with the mere fact that there are Florida state law claims present here. As shown further below, the basis for both the federal and state law claims is significantly different here than in the New York action due to different infringing product designs and packaging being at issue. Accordingly, LNC's claims against Walgreen involve distinct causes of actions and facts that are not at issue in the New York action and, thus, are appropriately maintained before this Court.

1. *LNC's Federal and State Claims Encompass New Sippy Cup Products Being Sold by Walgreen That Are Not At Issue In the New York Action*

For example, on July 30, 2009, Atico nonchalantly filed a Notice of Filing Corrected Exhibit (D.E.# 45). The purpose of providing the "corrected" exhibit was to *substitute it* for Exhibit B to D.E.# 1, which showed "new product designs" that Atico is supplying to Walgreen. *Id.*; D.E.# 1, ¶ 60 ("Atico is offering to Walgreens a new product design shown in Ex. B"); D.E.# 51-2, at ¶ 77 ("Atico is offering and has sold or is selling to Walgreen product designs shown in DE 1 at Ex. A & Corrected Ex. B filed on July 30 2009, as DE 45"). Those new product designs are not at issue in the New York action.

Notably, until Atico filed that corrected exhibit, LNC was unaware of what those new designs were. Indeed, Atico did not make those new designs known until July 30, 2009—well

after the New York case was underway and after LNC had sought leave (unsuccessfully) to amend its New York claims.  *See* D.E.# 45.  Nevertheless, LNC's third-party complaint against Walgreen here alleges that Atico and Walgreen were engaging in additional acts of misleading and unfair business practices by continuing their practice of unlawful copying of Luv n' care products.  D.E.# 33 at ¶¶ 107, 117, 122, 123-129.  Therefore, LNC's claims against Walgreen encompass the new sippy cup products that Atico recently admitted to selling to Walgreen.

Likewise, as explained below, LNC's federal and state law claims are based on Walgreen and Atico's unfair competition in relation to LNC's Comb and Brush Set, which also is not at issue in the New York action.

2.    *The New York Court Found LNC Never Made Allegations as to Comb and Brush Set Against Walgreen in the New York Action*

Contrary to Walgreen's assertion, the New York court found that no allegations had been made against Walgreen in the New York action regarding Luv n' care's Comb and Brush Set either before or during its request for amendment of the pleadings.  NY Dkt.# 102, at p. 5, n. 2.  However, even if the New York court had not expressly made that finding, Walgreen's argument that LNC's mere raising of facts relating to Walgreen's infringement of the Comb and Brush Set after its initial filing of the New York action should somehow bar this Florida action must fail.

Indeed, the Eleventh Circuit has considered "whether the discussion of a related but distinct cause of action in briefs amounts to the *actual assertion* of that claim in the first proceeding" thus barring (pursuant to res judicata) the assertion of that claim in a second action.  *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1357 (11th Cir. 1998) (emphasis in original).  There, the Eleventh Circuit found that, in order to be barred by res judicata, the claim, *inter alia*, must have actually been asserted in a supplemental pleading entered pursuant to Fed.R.Civ.P.15(d), raised in an amendment to the pleadings entered at trial pursuant to Fed.R.Civ.P. 15(b), or asserted in a pretrial order entered pursuant to Fed.R.Civ.P. 16(e).  *Id*. at 1357-58.  Accordingly, the Eleventh Circuit found that even though the plaintiff had learned of additional violations of her rights during the first action and had argued facts relating to those additional, similar violations in briefs throughout the first action, she was not barred from asserting those claims in the second action by the doctrine of res judicata.  *Id*.

8

Accordingly, the fact that LNC may have raised facts concerning Walgreen's infringement of the Comb and Brush Set in briefs seeking leave to amend its pleadings, does not abrogate LNC's right to sue separately and subsequently on that and other distinct claim(s).  *See id*.  There are no pleadings or other amendments entered under Rules 15(b), 15(d) or 16(3) in the New York action through which LNC established claims against Walgreen based on the Comb and Brush Set.  Likewise, the fact that LNC raised claims as to the Comb and Brush Set against a separate and distinct party in the New York action (*i.e.*, Kmart) also does not abrogate LNC's right to enforce its rights in the Comb and Brush Set against Walgreen here.  *See id*.  Accordingly, LNC's federal and state law claims against Walgreen in this Court may proceed, at the very least as to the Comb and Brush Set.

3. *The USPTO Has Granted LNC a Notice of Allowance for a Design Patent on the Gripper Cup; Thus, LNC Intends to Amend Its Third-Party Complaint Against Walgreen to Assert Claims for Patent Infringement*

On March 5, 2010, while this case was stayed, the United States Patent and Trademark Office granted LNC's principal, Nouri Hakim, a design patent for the Gripper Cup, the trade dress for which is currently at issue in this action.  Exhibit "G" (Notice of Allowance); *see* D.E.# 33 and 51-2.  Thus, upon receipt and processing of the issuance fee, a patent will be issuing, for which LNC will be the exclusive licensee of rights in that patent.  Accordingly, LNC intends, upon issuance of that patent, to amend or seek leave to amend its third-party complaint against Walgreen and its counterclaim against Atico.[8]  Therefore, this Florida action will include even further significant differences from the New York action where there are no patent claims.

**C.      Even if the 'Claim-Splitting' Bar Applied, Walgreen Waived It**

Even if claim-splitting did apply in a non-res judicata context such as we have here (which it does not), the Restatement shows that there are various exceptions to it, including an agreement (or waiver) through terms or effect, and a statutory scheme[9] that provides the sense

---

[8]  Currently, the parties have agreed among themselves to stand down on litigation activity until after the mediation currently scheduled for May 7, 2010.  Should that mediation be unsuccessful, LNC intends to amend its claims in this Florida action.

[9]  Even if Walgreen had not waived the claim-splitting doctrine through its initiation of this action, the Lanham Act (15 U.S.C. § 1051, et seq.) and Florida's Deceptive and Unfair Trade

that the plaintiff should be permitted to split his claim.  Restatement Second of Judgments §
26(1)(a), (d).

Walgreen argues that its initial filing of this action is "irrelevant" and does not show that
Walgreen has, in effect, waived the claim-splitting doctrine [D.E.# 103, p. 5].  However,
Walgreen's argument disingenuously ignores the fact that Walgreen and Atico's entire basis for
filing their declaratory judgment claims before this court was LNC's conduct in bringing the
New York action.  Otherwise, there was no actual and justiciable case or controversy.  *See*
D.E.#51-2, at ¶82, 86, 89, 92, 98 and 102.

Undoubtedly, Walgreen could have asserted its declaratory judgment claims, along with
Atico (who is no stranger to the Southern District of New York)[10] as a counterclaim in the New
York action but chose to bring a second action in this Court.  Thus, in light of the above, it
remains clear that, even if a claim-splitting doctrine applied (which it does not), Walgreen
waived the claim-splitting doctrine it now seeks to disingenuously apply for its current purposes.

## IV.    Conclusion

In light of the above, along with their initial response (D.E.# 101), Third-Party Plaintiffs
respectfully request that this Court order that their Third Party Complaint against Walgreen shall
not be dismissed and, therefore, may proceed.

Dated: April 26, 2010                          Respectfully submitted,

By:   /s/ _Susan J. Latham_        _____
                                               James A. Gale / Fla. Bar no. 371726
                                               jgale@feldmangale.com
                                               Susan J. Latham / Fla. Bar no. 0687391
                                               slatham@feldmangale.com
                                               **FELDMAN GALE, P.A.**
                                               One Biscayne Tower, 30th Floor
                                               2 South Biscayne Boulevard
                                               Miami, Florida 33131
                                               Telephone:  305-358-5001

---

Practices Act, which underlie the claims here, are tailored to the protection of consumer interests
and, thus, provide a scheme under which LNC should be permitted to maintain its claims against
Walgreen for the protection of Florida consumers.  *See* Restatement, § 26.

[10]  *See* Exhibit "H",  *Kaz, Inc. v. Atico Int'l USA, Inc*., case no. 05-cv-8583-Preska, U.S. District
Court, Southern District of New York.

Facsimile:  305-358-3309

and

Morris Cohen
MorrisC@pczlaw.com
Pearl Cohen Zedek Latzer LLP
1500 Broadway, 12th Floor
New York, New York 10036
Telephone: 646-878-0811
Facsimile: 646-878-0801

***Attorneys for Defendants/Third-party
Plaintiffs***

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of April 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  /s/ *Susan J. Latham*
SUSAN J. LATHAM

## SERVICE LIST

*Atico International USA, Inc. v. Luv N' Care, Ltd.,  et al.*
S.D.Fla. Case no. 09-60397-CIV-COHN/SELTZER

Alan Weisberg
aweisberg@cwiplaw.com
Jason Buratti
jburatti@cwiplaw.com
Jeffrey H. Kamenetsky
jkamenetsky@cwiplaw.com
Christopher & Weisberg, P.A.
200 East Las Olas Blvd., Suite 2040
Ft. Lauderdale, FL 33301
Phone: 954-828-1488
Facsimile: 954-828-9122
*Counsel for Walgreen Co. and Atico Int'l USA, Inc.*
*Via CM/ECF (redacted copy)*
*Via U.S. mail & E-mail (unredacted)*

Floyd B. Chapman
Wiley Rein LLP
1776 K Street, NW
Washington, DC  20006
Email: fchapman@wileyrein.com
Phone: 202.719.7308
Facsimile: 202.719.7049
*Co-counsel for Atico International*
*USA, Inc. and Walgreen Co*.
*Via CM/ECF (redacted copy)*
*Via U.S. mail & E-mail (unredacted)*